UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-61983-WPD

CATHERINE KUEPPERS and KATHLEEN SUMMY,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

ZUMBA FITNESS, LLC,

      Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFFS' PUTATIVE CLASS ACTION COMPLAINT

      Defendant, Zumba Fitness, LLC ("**Zumba**"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss, Plaintiffs', Catherine Kueppers ("**Kueppers**") and Kathleen Summy ("**Summy**") (collectively "**Plaintiffs**"), putative Class Action Complaint ("**Plaintiffs' Complaint**") [ECF No. 1], and states:

### INTRODUCTION

      Plaintiffs, on behalf of a purported putative class, filed this lawsuit against Zumba seeking alleged damages and injunctive relief under the Video Privacy Protection Act ("**VPPA**"), 18 U.S.C. § 2710.  The VPPA prohibits the disclosure of personally identifiable information ("**PII**"), which the VPPA defines to include "information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3), (b) (emphasis supplied).  In this regard, the fundamental requirement for liability under the VPPA is the disclosure of information that identifies a *specific* person as obtaining or viewing *specific* video content.  *See In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) (under the VPPA, PII "is information that must link 'a specific, identified person and his video habits.'"), *affirmed in part and reversed in part*, *In re Nickelodeon*

*Consumer Priv. Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016).  For the reasons addressed *infra*, Plaintiffs' Complaint should be dismissed by this Honorable Court.

In this action, Plaintiffs allege Zumba engages in the purported practice of knowingly disclosing Plaintiffs' and its other customers' identities and the identities of the prerecorded video materials to which they purchased access on Zumba's website, www.zumba.com (the "**Website**"), to third parties in violation of the VPPA.  [ECF No. 1 at ¶ 1].  Plaintiffs claim, over the last two years, Zumba has transmitted its customers' personally identifying video viewing information to at least two companies (Meta Platforms, Inc. ("**Meta**") and Pinterest, Inc. ("**Pinterest**")), using snippets of code called tracking pixels.  [*Id*. at ¶¶ 2-3].  Plaintiffs allege the tracking pixels purportedly installed by Zumba "capture and disclose to [these] respective third parties information that reveals the specific video materials that a particular person requested or obtained on" Zumba's Website.  [*Id*. at ¶ 4].

Specifically, Plaintiffs claim (without any specificity as to the titles of any videos) they purchased a video on-demand Zumba Instructor Training Course from Zumba's Website, which provided them with access to prerecorded video materials, and they provided their names, email addresses, and home addresses in association with the alleged purchase of these materials.  [*Id*. at ¶¶ 10-11, 20-21].  To that end, Plaintiffs claim Zumba has installed and programmed tracking pixels from Meta and Pinterest on the Website and uses these pixels to transmit private video information of its customers to those third parties in purported violation of the VPPA.  [*Id*. at ¶ 71].[1]  Plaintiffs purport Zumba discloses to Meta via the Meta Pixel the customer's Facebook ID ("**FID**")[2] and the identity of specific prerecorded video material that each of its consumers

---

[1] A tracking pixel is a piece of JavaScript code added to a website as a graphic element that is loaded when a user arrives at the website hosting the pixel.  [*Id*. at ¶ 65].  When a user visits a website which has tracking pixels enabled, an instance of the tracking pixel loads in the HTML code of the page on the user's web browser.  [*Id*. at ¶ 66].  Sometimes, a cookie corresponding to the tracking pixel already exists in the browser, and the cookie contains a unique ID that follows the user of the internet browser from web page to web page, and that cookie connects with the tracking pixel.  [*Id*. at ¶ 67].  In other cases, a cookie corresponding to the tracking pixel does not exist on the browser, and a unique ID is created and saved in a cookie.  [*Id*. at ¶ 68].  After identifying the corresponding cookie, the tracking pixel's embedded URL points to a third party's designated tracking URL and reports to the third party the user's activity for the duration of the visit, along with the unique ID stored in the cookie which identifies the specific web user.  [*Id*. at ¶ 69].

[2] An FID is a unique sequence of numbers linked to a specific Meta profile.  [*Id*. at ¶ 74].

requested or obtained through a purchase made on the Website. [*Id*. at ¶ 73]. Plaintiffs also claim Zumba intentionally discloses Plaintiffs' and its other customers' private video information to Pinterest by purportedly installing and maintaining the Pinterest Tag tracking pixel on the Website. [*Id*. at ¶ 123].

As courts have consistently held, however, a well-pled VPPA claim requires plaintiff to identify "*specific* video materials or services" which means the title of "*particular* videos . . . watched" or information that "would, with little or no extra effort, permit an ordinary recipient to identify a particular person's viewing habits." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 284-85 (emphasis supplied). A plaintiff must also allege facts showing "that the video-service provider actually knew that it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—i.e., that the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Here, Plaintiffs fail to state a VPPA claim, and Plaintiffs' Complaint should, respectfully, be dismissed, as: **1)** the alleged disclosures by Zumba are <u>not</u> PII, and Plaintiffs fail to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched; **2)** Plaintiffs fail to plausibly allege that the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify Plaintiffs' video-watching habits; and **3)** Plaintiffs fail to plausibly allege Zumba disclosed (let alone knowingly disclosed) Plaintiffs' PII to any third-party.

<h2 style="text-align:center;"><u>LEGAL MEMORANDUM</u></h2>

**I.     <u>LEGAL STANDARD TO DISMISS CASE PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). To that end, a plaintiff has an obligation to provide the grounds of his entitlement to relief, and "that obligation requires more than labels and conclusion or a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). If the court can only infer "the mere possibility of misconduct" from the complaint, the plaintiff has not shown entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere conclusory allegations,

however, are not entitled to an assumption of truth. *Ashcroft*, 556 U.S. at 663. Therefore, a court should grant a motion to dismiss when, "on a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

II.  **LEGAL ARGUMENT**

   A. **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A DISCLOSURE OF PII BY ZUMBA**

The VPPA does not prohibit the disclosure of "personally identifiable information" in the abstract. Rather, it bars the disclosure of "personally identifiable information" that "identifies a [customer] as having requested or obtained specific video materials or services from [the] video tape service provider." 18 U.S.C. § 2710(a)(3),(b)(1). Plaintiffs' allegations, however, fail to state a VPPA claim, and Plaintiffs' Complaint should, respectfully, be dismissed, as: **1)** the alleged disclosures by Zumba are <u>not</u> PII, and Plaintiffs fail to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched; and **2)** Plaintiffs fail to plausibly allege that the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify Plaintiffs' video-watching habits.

   1. **The Alleged Disclosures by Zumba Are Not PII, and Plaintiffs Fail to Plausibly Allege that Zumba Disclosed PII Connecting *Plaintiffs* to Any *Specific* Video Materials Obtained, Purchased, or Watched.**

Plaintiffs' allegations fail to state a VPPA claim, as the alleged disclosures by Zumba are not PII. The VPPA applies only to a disclosure that "without more, itself link[s] an actual person to actual video materials." *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *10. As courts have consistently held, a well-pled VPPA claim requires plaintiff to identify "specific video materials or services" which means the title of "particular videos . . . watched" or information that "would, with little or no extra effort, permit an ordinary recipient to identify a particular person's viewing habits." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 284-85. To that end, to violate the VPPA, there must be a disclosure "connecting" a specific person "to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095. Plaintiffs' allegations do not meet this standard.

Plaintiffs allege that (1) Zumba's purported use of the Meta Pixel and Pinterest Pixel results in two snippets of data (the customer's FID/user ID and the URL of prerecorded video material

requested or obtained) and (2) from these two snippets of data, any ordinary person can purportedly learn the identity of the person to whom the FID/user ID corresponds and the identity of the specific prerecorded video material that the person requested and obtained. [ECF No. 1 at ¶¶ 116, 126, 142]. It is critical to note, however, that, while Plaintiffs generally allege that the tracking pixels purportedly installed by Zumba transferred a URL identifying the prerecorded video materials Plaintiffs allegedly obtained or purchased, the specific allegations in the Complaint <u>do not demonstrate the title of any video Plaintiffs purportedly obtained or purchased</u>. Nowhere in the Complaint are any allegations asserted that contain the identity of any specific video materials Plaintiffs allegedly requested or obtained. Here, Plaintiffs do not sufficiently allege Zumba disclosed the titles of any videos obtained or purchased *by Plaintiffs*. Further, the screenshot images superimposed into Plaintiffs' Complaint *only* show: 1) a sample of the on-demand instructor training course videos available for purchase [*id*. at ¶ 59]; 2) a sample of workout classes available for purchase [*id*. at ¶ 63]; 3) a sample of the checkout process [*id*. at ¶ 96]; and 4) the name of a video purportedly purchased by "Frank Hedin" (not either of the Plaintiffs) [*id*. at ¶ 102].

Further, while Plaintiffs, again, generally allege tracking pixels purportedly installed by Zumba transferred a URL identifying the prerecorded video materials they allegedly purchased, the specific allegations of the Complaint do not demonstrate that, in fact, the title of any specific video material obtained *by Plaintiffs* is in the purported information transferred to either Facebook or Pinterest. And because the title of the video itself is not transferred, nothing about the transfer of information at issue contains "the identity of 'specific video materials'" that Plaintiffs allegedly "requested or obtained." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095. Indeed, Plaintiffs' "sample" of training course videos demonstrates that the "Zumba Basic 1" on-demand course is not a video itself, but instead contains 16 different video modules. *See* [ECF No. 1 at ¶¶ 59-61]. Plaintiffs do not allege that any third parties learned which "specific" videos Plaintiffs purportedly may have obtained or watched, or even that any third party's system could discern whether a user actually watched videos on a particular page or instead selected other content. This lack of "specific video" information is grounds to dismiss Plaintiffs' VPPA claims. *See Gonzalez v. Cent. Elec. Coop., Inc.*, Nos. 08-6236-HO, 08-6240-HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009) (deeming VPPA not violated when hotel disclosed that a guest watched one of 15 available in-room movies, without identifying the title).

Plaintiffs' VPPA claim fails because the alleged disclosure to Facebook and Pinterest does not allege the disclosure of any specific video materials or services and, thus, fails to satisfy the statutory definition of PII. The VPPA defines PII as information that identifies a person as having "requested or obtained *specific video materials* or services." 18 U.S.C. 2710(a)(3) (emphasis supplied). "Specific" means "definite; explicit; of an exact or particular nature." *Specific*, Black's Law Dictionary (6th ed. 1990). To constitute PII, the information must identify the exact video a person requested or obtained. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) ("'personally identifiable information' . . . identifies an individual as having watched certain videos"). Because Plaintiffs do not sufficiently allege facts showing that any specific video viewing information *of Plaintiffs* was disclosed, Plaintiffs cannot state a VPPA claim. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095 (recognizing that "[t]he point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos"). Because Plaintiffs cannot even support that the title of any video they purportedly obtained or purchased was transmitted to any third party, Plaintiffs cannot establish any claim that there was any transmission of Plaintiffs' "identity; the video material's identity; [or] the connection between them." *Id*. at 1095.

The United States District Court for the Southern District of New York also recently dismissed a VPPA claim under similar circumstances where the plaintiff alleged that the Facebook pixel on the defendant's website transmitted information indicating that he "requested or obtained" specific videos on that website but where the name of the webpage allegedly sent to Facebook was not the name of any specific video on that page. *See Martin v. Meredith Corporation*, 2023 WL 2118074 (S.D. N.Y. 2023). The *Martin* court concluded that "disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page" and, so, dismissed the plaintiff's complaint for failure to state a claim under the VPPA. *Id*. at *3-4.

That is the also the case here, as the URL for a web page with an imbedded video is not an indication that the video on that page was requested or obtained but, rather, indicates only that a user visited a page where a video can be found. *See id*. ("[S]ending a URL of a [] webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services. And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have

merely reviewed an article on the page or opened the page and done nothing more."). The basis for Plaintiffs' claims is Zumba's purported use of the Facebook and Pinterest pixels; however, Plaintiffs' Complaint concedes the pixels only send the FID/Pinterest ID and the URL of the webpage accessed. To that end, simply disclosing the name of a webpage and an associated FID/Pinterest ID "leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; [and] (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor . . . ." *Martin*, 657 F.Supp.3d at 284. Simply disclosing to a third party the title of the webpage does not reveal the title of a video on the page itself. *Id*. at 284-85. Indeed, Plaintiffs' own Complaint only superimposes images that show a description of training courses, but not titles to any specific videos purportedly obtained or requested *by Plaintiffs* [ECF No. 1 at ¶¶ 59, 61-62] or titles of videos but no specific information as to which specific video material was purportedly obtained or requested *by Plaintiffs*. [*Id*. at ¶¶ 63-64]. Again, simply sending a URL "which may or may not include a video does not show that a person requested or obtained specific video materials or services," and "even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page . . . ." *Martin*, 657 F.Supp.3d at 285. On this additional basis, Plaintiffs fail to state a claim under the VPPA, and the Complaint should be dismissed.

   2. **Plaintiffs Fail to Plausibly Allege that the Disclosure of Their Purported PII Would, With Little or No Extra Effort, Permit an *Ordinary Person* to Identify a Particular Person's Video-Watching Habits.**

Again, Plaintiffs allege that (1) Zumba's purported use of the Meta Pixel and Pinterest Pixel results in two snippets of data (the customer's FID/user ID and the URL of prerecorded video material requested or obtained) and (2) from these two snippets of data, any ordinary person can purportedly learn the identity of the person to whom the FID/user ID corresponds and the identity of the specific prerecorded video material that the person requested and obtained. [ECF No. 1 at ¶¶ 116, 126, 142]. Plaintiffs' theory appears to be that the mere existence of the two snippets of data somewhere in a Facebook or Pinterest database is enough to make out a VPPA disclosure violation. However, it is not. Unless the "simultaneous disclosure" arrived (or at some point turned into) something tying specific video URLs to specific Facebook or Pinterest users, it is simply not plausible to call it "a disclosure[] of information that would, with little or no extra

effort, permit an ordinary recipient to identify a particular person's video-watching habits." *In re Nickelodeon*, 827 F.3d at 284.

*Hulu* is instructive on this point. The facts were analogous: Hulu, like Zumba, purportedly used Facebook Pixel on its website. This resulted in Hulu allegedly sending cookies of Facebook IDs and Hulu video URLs to Facebook when Facebook users watched Hulu videos, an alleged VPPA violation. *Id*. at 1092-94. The *Hulu* court closely examined the text and purpose of the VPPA and determined that, for this specific Facebook Pixel disclosure to violate the VPPA, the plaintiff needed to show that Facebook actually "read" the two pieces of information "together . . . ." *Id*. at 1097. If the plaintiff could not show this, "then there cannot be a VPPA violation." *Id*. For "even if both elements were sent to Facebook, they did not necessarily disclose a user 'as having requested or obtained specific video materials' unless Facebook combined the two pieces of information." *Id*. at 1096. Applying this standard, the *Hulu* court ruled that because the plaintiff did not point to any facts showing "that Facebook combined the" information it received from Hulu into something that would "yield 'personally identifiable information'" under the VPPA, Hulu was entitled to summary judgment. *Id*. at 1097.

Here, Plaintiffs' Complaint does not allege facts plausibly showing that the purported tracking pixels on Zumba's Website "readily permit[s] an ordinary person to identify" Plaintiffs' video-watching behavior. *In re Nickelodeon*, 827 F.3d at 267. In this action, Plaintiffs fail to allege any facts suggesting that either Zumba or Facebook (or Pinterest) "combined" the relevant pixel data points from which an ordinary person could then tie Plaintiffs to the specific Website videos Plaintiffs purportedly watched. Consequently, there could be no disclosure of "personally identifiable information" under the statute, and dismissal for failure to state a claim must likewise follow.

Further, and specific to any Pinterest related claims, Plaintiffs allege Zumba intentionally discloses Plaintiffs' and its other customers' Private Video Information to Pinterest by installing and maintaining the Pinterest Tag tracking pixel on the Website. [ECF No. 1 at ¶ 123]. Plaintiffs allege Pinterest assigns each account holder with a user ID, which is found in the "s_a" cookie that is an <u>encrypted</u> value identifying only one particular person's Pinterest account as they navigate non-Pinterest websites. Plaintiffs claim that a Pinterest users first and last name, age, gender, email address, country, region, and preferred language are directly linked to a persons s_a <u>encrypted</u> value, thereby purportedly directly allowing Pinterest to identify one particular person

per s_a cookie. The cookie Plaintiffs identify (which Plaintiffs admit is an encrypted value), however, does not constitute PII under the VPPA. In *Bernadino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *8 (S.D. N.Y. Aug, 11, 2017), *report and recommendation adopted*, No. 17-CV-4570 (LAK), 2017 WL 3726050 (S.D. N.Y. Aug. 28, 2017), plaintiff argued Facebook's fr cookie constituted PII under the VPPA. The *Bernadino* court disagreed, denying plaintiff's requested injunction, and finding specifically with respect to the Facebook fr cookie that there was no binding precedent to support the plaintiff's interpretation of PII.

Moreover, and beyond *Bernadino*'s holding, that encrypted cookies and browser identifiers do not constitute PII, Plaintiffs do not (and cannot) explain how the encrypted cookies and browser identifiers enable an ordinary person to identify a specific Zumba Website visitor. If a cookie is encrypted, as Plaintiffs admit here, it would not be decipherable by an ordinary person because only those with the encryption key could unencrypt it. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Lit.*, No. 14-MD-2452 (VSB) (SLC), 2022 WL 1082087, at *13 (S.D. N.Y. Apr. 11, 2022) ("The computers Keurig issued to its employees were encrypted, meaning they could only be accessed using an encryption key."). Critically, Plaintiffs do not allege that an ordinary person could decipher these user IDs, which are encrypted. *See Robinson v. Disney Online*, 152 F. Supp. 3d 176, 178, 184 (S.D. N.Y. 2015) (dismissing a VPPA action where the plaintiff alleged that the defendant transmitted a "hashed serial number associated with the user's Roku device" to a third party, emphasizing that "Disney has also not disclosed a 'correlated look-up table' that would enable Adobe to link the hashed serial number of Robinson's Roku device and his viewing choices to his identity."). Indeed, "information which is not otherwise PII [cannot] somehow become PII because of the potential, however remote, of a third party to 'reverse engineer' a disclosure using data gathered from other sources." *Disney*, 152 F. Supp. 3d at 183 (alteration in original).

**B. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ZUMBA DISCLOSED (LET ALONE KNOWINGLY DISCLOSED) PLAINTIFFS' PII TO ANY THIRD-PARTY**

As mentioned *supra*, a plaintiff asserting a VPPA claim must also allege facts showing "that the video-service provider *actually knew* that it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—i.e., that the given user

had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095 (emphasis supplied). Indeed, to state a claim under the VPPA, Plaintiffs must plead that a "video tape service provider . . . *knowingly disclose[d]* . . . personally identifiable information." 18 U.S.C. § 2710(b) (emphasis supplied). Here, Plaintiffs fail to plausibly allege Zumba disclosed (let alone *knowingly disclosed*) Plaintiffs' PII to any third-party.

Plaintiffs assert that, after identifying the corresponding cookie (with its unique ID), the tracking pixel's embedded URL points to a third party's (e.g. Meta, Pinterest) designated tracking URL and reports to the third party the user's activity for the duration of the visit, along with the unique ID stored in the cookie which identifies the specific web user. [ECF No. 1 at ¶ 69]. To that end, Plaintiffs allege that "[w]henever a person with a Meta account purchases a prerecorded video [] on the Website, [Zumba] transmits" customer information, event data, the user's FI, and the URLs of webpages where the video is available for sale to Meta through the operation of the Meta pixel [*Id*. at ¶ 106] and, separately, "[w]henever a person logged into their Pinterest account requests or obtained prerecorded video materials from [Zumba's] Website," Zumba uses the Pinterest pixel to transmit the user ID as well as the URL of the page where the person requested or obtained the prerecorded video materials to Pinterest. [*Id*. at ¶ 126].

Plaintiffs' allegations align with how cookies generally work. For example, *In re Facebook, Inc. Internet Tracking Litig.*, explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's [FID], and they capture, collect, and compile the referrer headers from the web pages visited by the user" and "continued to capture information after a user logged out of Facebook and visited other websites." 956 F. 3d 589, 596 (9th Cir. 2020); *Mount v. PulsePoint*, No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D. N.Y. Aug. 17, 2016) ("Persistent cookies, commonly called 'tracking cookies,' are designed to remain after the user moves on to a different website or even after the browser is closed."). A "cookie" is defined by Merriam-Webster's dictionary as "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited January 6, 2025). The dictionary definition of a "cookie" and case law on third-party cookies make clear that Plaintiffs' FID/Pinterest user IDs are stored on Plaintiffs' computers—not by Zumba—and subsequently transmitted to Facebook or

Pinterest by Plaintiffs' own browsers.  Therefore, even if this Court were to find that FIDs/Pinterest user IDs are PII, Zumba is not the one that transfers (or discloses) same to Facebook or Pinterest.

Plaintiffs' theory of improper disclosure is that their Facebook IDs/Pinterest user IDs were sent to Facebook and/or Pinterest along with the URLs of certain videos viewed on Zumba's Website.  But even if true, and even assuming that this information can qualify as PII (which it does not as argued above), the allegations do not give rise to a VPPA violation for a simple reason: Plaintiffs do not plead that *Zumba ever possessed or had access to Plaintiffs' Facebook IDs/Pinterest user IDs, let alone that Zumba transmitted or sent those Facebook IDs/Pinterest IDs to anyone*.  Thus, as a matter of logic and the plain statutory text, Zumba did not "disclose" PII.  That defect is fatal here. The VPPA bars video tape service providers from "disclos[ing]" PII—here, the claimed disclosure is that certain Facebook IDs/Pinterest user IDs accessed certain URLs on Zumba's Website.  But Plaintiffs do not plead that Zumba knew or had access to users' Facebook IDs/Pinterest user IDs, let alone sent them to any third party.  Zumba cannot "disclose" something it does not have.  Indeed, "it would be impossible to disclose information without sending, transmitting, communicating, or distributing it." *Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C.*, 2020 WL 4370941, at *3 (W.D.N.C. July 8, 2020), *report and recommendation adopted*, 2020 WL 4369446 (W.D.N.C. July 30, 2020).

The Complaint makes clear that Zumba did not send, transmit, communicate, or distribute anyone's Facebook ID/Pinterest user ID to any third party.  Rather, critically, "the tracking pixel's embedded URL points to a third party's [] designated tracking URL and reports to the third party the user's activity for the duration of the visit, along with the unique ID stored in the cookie which identifies the specific web user."   [ECF No. 1 at ¶¶ 69, 94, 124].  Not once does the Complaint allege that the pixels access Zumba's servers in order to transmit Facebook IDs/Pinterest user IDs to any third party or that Zumba ever had access to or possession of any customers' Facebook ID/Pinterest user ID.  Thus, to the extent Plaintiffs allege any "disclosure," it was *Plaintiffs*—not Zumba—who disclosed their Facebook IDs/Pinterest user IDs via *their own web browsers* to Facebook/Pinterest.  Nor can Plaintiffs prevail by contending that, even if Zumba itself did not send users' PII, Zumba installed tracking pixels that caused a disclosure of PII.  Congress could have written the VPPA to bar a defendant from "causing" disclosure of PII, but the VPPA does not state same.  Rather, it imposes liability only where the defendant knowingly "discloses" protected

information. Thus, because it was *Plaintiffs* (through their web browsers) who made the disclosure, the Complaint must be dismissed.

That said, even if Plaintiffs adequately pled that Zumba disclosed PII, they have not pled that Zumba did so "knowingly." The VPPA requires "actual knowledge." *Hulu*, 86 F. Supp. 3d at 1095. As the *Hulu* court held, "[f]or there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a customer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *Id*. *First*, critically absent from the Complaint is any allegation that Zumba ever knew any customers' Facebook ID/Pinterest user ID. *Second*, Plaintiffs also have failed to plausibly allege that Zumba knowingly disclosed Plaintiffs' identities in connection with any *specific* video material they purportedly obtained, purchased, or viewed. As the *Hulu* court observed, a VPPA plaintiff must show that the defendant "connect[ed]" her identity "and that of the video material" she viewed online. *Id*. at 1096. Here, Plaintiffs fail to do so. Plaintiffs do not plead that, when a given user accesses a Zumba video, Zumba knows if the user has an active Facebook or Pinterest cookie that will send the user's Facebook ID/Pinterest user ID to Facebook or Pinterest. Thus, taking Plaintiffs' allegations on their face, at the time a Zumba user's device makes the supposed disclosure, Zumba has *no knowledge* that a given user's Facebook ID/Pinterest user ID is sent along with the URL of a video on Zumba's Website. For Plaintiffs to plead a VPPA claim, Zumba had to *know* that Facebook or Pinterest "forg[ed]" (or would forge) the connection between a Facebook ID (or Pinterest user ID) and the fact that a user "requested or obtained specific video materials." *Id*. at 1096. Plaintiffs have not made this allegation. Thus, Plaintiffs have not sufficiently pled that Zumba made a *knowing* disclosure in violation of the VPPA.

Plaintiffs' claims that Zumba knowingly installed tracking pixels on the Website is also not sufficient to demonstrate that Zumba knowingly disclosed any PII. Again, a defendant in a VPPA case must have known not only that it was disclosing "a user's identity" and "the identity of the video material," but also "the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *Hulu*, 86 F. Supp. 3d at 1097. Plaintiffs have not sufficiently pled whether the user's identity was transmitted separately or together with any video information allegedly transmitted by a tracking pixel. Satisfying this connection element is necessary, because if the user's identity and that of the video material are transmitted separately, there could be no knowing disclosure. *See Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181,

183 (S.D.N.Y. 2015). Again, the test is whether an ordinary person could use the user ID and video materials allegedly disclosed to identify the individual users, not whether Facebook/Pinterest could do so or whether Zumba knew Facebook/Pinterest could do so. *See Stark v. Patreon*, 635 F.Supp.3d 841, 853 (N.D. Cal. 2022).

## CONCLUSION

At bottom, Plaintiffs fail to state a VPPA claim, and Plaintiffs' Complaint should, respectfully, be dismissed. *First*, the alleged disclosures by Zumba are not PII, and Plaintiffs fail to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched—indeed, the Complaint does not demonstrate the title of any video Plaintiffs purportedly obtained or purchased, and there are no allegations asserted that contain the identity of any *specific* video materials Plaintiffs allegedly requested or obtained. *Second*, Plaintiffs fail to plausibly allege that the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify Plaintiffs' video-watching habits. *Last*, Plaintiffs fail to plausibly allege Zumba disclosed (let alone *knowingly* disclosed) Plaintiffs' PII to any third-party.

WHEREFORE, Defendant, Zumba Fitness, LLC, respectfully requests this Court dismiss Plaintiffs' Complaint, and award any and all other relief this Court deems just and proper in light of the foregoing.

CASE NO.: 24-cv-61983-WPD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of January 2025, a true and correct copy of the foregoing has been filed and furnished to all counsel of record.

**COLE, SCOTT & KISSANE, P.A.**
Counsel for Defendant, Zumba Fitness, LLC
110 Tower, 110 SE 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
Telephone (954) 703-3720
Facsimile (954) 703-3700
Primary e-mail: barry.postman@csklegal.com
scott.bassman@csklegal.com
matthew.green@csklegal.com

By: _____s/ Matthew A. Green_____
BARRY A. POSTMAN
Florida Bar No.: 991856
SCOTT A. BASSMAN
Florida Bar No. 232180
MATTHEW A. GREEN
Florida Bar No.: 1019717