# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CATHERINE KUEPPERS; and KATHLEEN
SUMMY, *individually and on behalf of all others
similarly situated*,

                    Plaintiffs,

    v.

ZUMBA FITNESS, LLC,

                 Defendant.

Case No. 24-cv-61983-WPD

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S
# MOTION TO DISMISS

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  LEGAL AND FACTUAL BACKGROUND .......................................................1

     A.   Video Privacy Protection Act ...................................................................1

     B.   Factual Background ...................................................................................2

III. LEGAL STANDARD............................................................................................4

IV.  ARGUMENT .......................................................................................................5

     A.   The Complaint Alleges Defendant Disclosed Plaintiffs' Personally
          Identifiable Information ............................................................................5

          i.   Defendant Disclosed Information Showing the Plaintiffs
               Requested or Obtained "Specific Video Materials" ...........................5

          ii.  The Complaint Alleges Disclosure of Personally Identifiable
               Information Under Both the "Ordinary Person" and "Reasonable and
               Foreseeable" Standards.....................................................................11

     B.   The Complaint Alleges That Defendant "Knowingly" Made the
          Disclosures.............................................................................................14

V.   CONCLUSION...................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Pages(s)**

*Adams v. Am.'s Test Kitchen, LP*,
   680 F. Supp. 3d 31 (D. Mass. 2023) ...................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................4

*Belozerov v. Gannett Co.*,
   646 F.Supp.3d 310 (D. Mass. 2022) ...................................................................15

*Collins v. Pearson Educ., Inc.*,
   721 F. Supp. 3d 274 (S.D.N.Y. 2024) ............................................................10, 14

*Czarnionka v. Epoch Times Ass'n, Inc.*,
   No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)...........................14

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ..........................................................................13

*Erickson v. Pardus*,
   551 U.S. 89 (2007)...........................................................................................5

*Feldman v. Star Trib. Media Co. LLC*,
   659 F. Supp. 3d 1006 (D. Minn. 2023)......................................................9, 14, 15

*Frawley v. Nexstar Media Grp. Inc.*,
   No. 3:23-CV-2197-L, 2024 WL 3798073, (N.D. Tex. July 22, 2024)...........................7, 8, 15

*Ghanaat v. Numerade Labs, Inc.*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023) ...................................................................8

*Gonzalez v. Cent. Elec. Co-op, Inc.*,
   No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009)..................................10, 11

*Golden v. NBCUniversal Media, LLC*,
   688 F. Supp. 3d 150 (S.D.N.Y. 2023) ......................................................9, 10, 11

*Harris v. Pub. Broad. Serv.*,
   662 F.Supp.3d 1327 (N.D. Ga. 2023) ..............................................................7, 11, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ................................................15

*In re Hulu Privacy Litigation*,
    No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ......................................13

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022) ..............................................11, 15

*Li v. Georges Media Grp. LLC*,
    No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023) ...............................................12

*Lombard's, Inc. v. Prince Mfg., Inc.*,
    753 F.2d 974, 975 (11th Cir. 1985) ....................................................5

*In re Nickelodeon Consumer Privacy Litigation*,
    827 F.3d 262, 284 (3d Cir. 2016).........................................................1, 13

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
    711 F.2d 989 (11th Cir. 1983) ...................................................5

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) .............................................12, 13

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ...............................................4, 15

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016)...............................................11, 12

**Statutes**

18 U.S.C. § 2710, *et. seq.*.......................................................... *passim*

## I.     INTRODUCTION

This case is about Defendant Zumba Fitness, LLC's ("Defendant") systematic and routine violation of consumers' privacy rights as established by the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA"). Over the past two years, Defendant has regularly disclosed its consumers' "personally identifiable information" to (i) Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta") and (ii) Pinterest, Inc. ("Pinterest"). *See* 18 U.S.C. § 2710(b)(1); [DE 1 ¶¶ 2, 3]. This personally identifiable information includes the identities of the consumers and the identities of the specific videos that the consumers "requested or obtained" from Defendant. *See* 18 U.S.C. § 2710(a)(3). The allegations presented in the Class Action Complaint (the "Complaint") state a claim under the VPPA and Defendant's Motion to Dismiss (the "Motion") should be denied.

## II.     LEGAL AND FACTUAL BACKGROUND

Plaintiffs bring this cause of action to remedy Defendant's violations of consumers' privacy rights as established by the VPPA.

### A.  The Video Privacy Protection Act

The United States Congress passed the VPPA in 1988. President Ronald Reagan signed the legislation into law that same year. The law is designed to protect the privacy interests of consumers who request or obtain video materials from commercial providers of such services. It was enacted in response to a newspaper's publication of then-Supreme Court nominee Robert Bork's video rental history. *See generally, In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines a "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4).

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]." 18 U.S.C. § 2710(b). Sub-section

(c) of the VPPA states that consumers may enforce the substantive privacy right through civil litigation. 18 U.S.C. § 2710(c)(1). The remedies available to consumers include statutory damages of $2,500 per violation, punitive damages, attorneys' fees and litigation costs, and equitable relief. 18 U.S.C. § 2710(2)(A)-(D).

### B. Factual Background

Plaintiffs' Complaint alleges that Defendant is a "video tape service provider." [DE 1, ¶¶ 57-64]. It details how Defendant operates the website www.zumba.com (the "Website") where it "sells access to prerecorded video materials to consumers." *Id*. at ¶ 57. The Complaint states that these video materials include two categories of video content. First, Defendant sells access to "on-demand Zumba instructor training courses." *Id*. at ¶ 57; *see also id*. at ¶¶ 59-62. Second, Defendant sells access to videos of "workout classes hosted by Zumba instructors." *Id*. at ¶ 58; *see also id*. at ¶¶ 63-64.

The Complaint further alleges that Defendant disclosed Plaintiffs' and its other consumers' "personally identifiable information." It states that Plaintiffs each have Facebook accounts and corresponding Facebook IDs. *Id*. at ¶¶ 23, 19. It explains how each person with a Facebook account is assigned a unique, numerical Facebook ID by Meta. *Id*. at ¶¶ 73, 74. These Facebook IDs are personally identifying, according to the Complaint, because they are each indexed to an individual's Facebook account, which includes the individual's name and other personally identifying information. *Id*. at ¶¶ 74-77 (explaining how possessing a Facebook ID "allows anyone to look up the user's unique Meta profile and thus identify the user by name").[1] When a person with a Facebook account accesses Defendant's Website, the website sends the person's Facebook ID to Meta along with other information about the individual's activity on the page, including the page's URL, which identifies the video on the page. *Id*. at ¶¶ 79-92.

The Complaint alleges that Defendant knowingly installed the Meta Pixel (and a similar tracking pixel developed by Pinterest called the Pinterest Tag) and used them to disclose to the respective developers of those tracking pixels its consumers' identities (in the case of Meta, their Facebook IDs; in the case of Pinterest, their "s_a" cookies) and the identities of the videos those

---

[1] The Complaint provides the example of Meta Chief Executive Officer Mark Zuckerberg's Facebook ID, which is reportedly the number 4. Thus, typing www.facebook.com/4 into a web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck, and all of the additional personally identifiable information contained therein. *Id*. at ¶¶ 79 n.24.

consumers requested or obtained. *See, e.g.*, [DE 1 at ¶¶ 72-129]. The Complaint shows in detail how those disclosures are made to Meta and Pinterest. *Id.* at ¶¶ 95-129. It does so across two different types of prerecorded videos offered for sale on Defendant's website: (1) Zumba instructor training courses and (2) Zumba workout classes.

For example, when a consumer purchases access to prerecorded Zumba instructor training course videos, Defendant uses the "Event Data" capabilities of the Meta Pixel to send the consumer's selections about what type of course they are purchasing to Meta along with the consumer's Facebook ID. *See* [DE 1 at ¶¶ 98-100]. Defendant also transmits the consumer's name and billing address to Meta using the "Event Data" function along with the name of the instructor training course videos that the person purchased. *See id.* at ¶¶ 90-91. Even more egregiously, when the transaction for a prerecorded instructor training course video is complete, Defendant sends to Meta and Pinterest the URL of a free-standing, publicly accessible webpage that displays the consumer's name and the title of the instructor training course that the person purchased. *See id.* at ¶ 102. An example of one such page is reproduced in the Complaint and pictured below:



*Id.* (emphasis added).  As shown above and in the Complaint, these "You're All Set" pages openly state the name of the person who purchased the prerecorded video Zumba instructor course (e.g., Frank Hedin) and the title of the prerecorded video instructor course (e.g., Zumba Basic 1) the person purchased.  *Id.*  These pages remain live for "several weeks after they are initially created at the end of the checkout flow." *Id.* at ¶ 104.  As stated in the Complaint, "That means any person with the URL for any one of these pages can simply enter the URL into an internet browser, reach the page, and determine exactly what video materials the consumer requested or obtained, as the pages are publicly accessible." *Id.*  Neither Meta, nor Pinterest, nor anyone else needs to do any investigating to determine who purchased which videos after receiving one of these URLs.

The Complaint further alleges that Defendant transmits personally identifiable data to Meta and Pinterest when a consumer purchases a prerecorded video of a workout class.  *See id.* at ¶¶ 106-108.  These videos are designed for 'participants' in Zumba classes, not people seeking to become Zumba instructors.  *See id.*  They also have a different checkout flow and, once purchased, are accessible on a different website from the instructor training courses.  *See id.*  As further alleged in the Complaint, each workout class video is hosted on a "dedicated webpage where only that video is available for viewing."  *See id.* at ¶ 107.  When consumers reach those pages after purchasing access to the videos hosted on them, "Defendant transmits the page URL (which uniquely identifies the video hosted on that page) and the user's FID to Meta through the operation of the Meta Pixel." *Id.*; *see also id.* at ¶¶ 123-129 (similar allegations for the Pinterest Tag).

### III.   LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions.  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## IV.   ARGUMENT

Plaintiffs have stated a claim for a violation of the VPPA by pleading facts that plausibly establish each element of an offense. Defendant attacks two elements of Plaintiffs' VPPA claim. First, Defendant argues that the Complaint fails to state a claim because it does not allege a disclosure of "personally identifiable information" within the meaning of the statute. *See* [DE 12 at 4]. Under that element, Defendant argues that the Complaint does not allege a disclosure of information tying Plaintiffs to the "specific" video requested or obtained. *Id*. Defendant then argues that Plaintiffs have not pled facts supporting a plausible inference that an ordinary person could identify them based upon the information disclosed. *Id*. Second, Defendant argues that the Complaint does not allege a "knowing" disclosure. *Id*. As shown below, these arguments run contrary to well-established case law and the well-pled allegations of the Complaint. Defendant's Motion should be swiftly denied.

### A.   The Complaint Alleges Defendant Disclosed Plaintiffs' Personally Identifiable Information

The Complaint plausibly alleges that Defendant disclosed Plaintiffs' and the putative class members' "personally identifiable information" to Meta and Pinterest within the meaning of the VPPA. The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). As courts around the country and within this Circuit regularly find with respect to analogous allegations, Plaintiffs have met the pleading standard for the "personally identifiable information" element.

#### i.   Defendant Disclosed Information Showing the Plaintiffs Requested or Obtained "Specific Video Materials"

The Complaint alleges that Defendant disclosed "specific video materials" within the meaning of the VPPA. 18 U.S.C. § 2710(a)(1). Specifically, the Complaint alleges that each

Plaintiff purchased "a video on-demand Zumba Instructor Training Course" from Defendant's website.  [DE 1 at ¶¶ 10, 20].  It explains that these "on-demand (e.g., prerecorded) Zumba instructor training course videos [] are available for purchase on Defendant's Website."  *Id.* at ¶ 59.  It provides the following screenshot from Defendant's website describing the on-demand (e.g., prerecorded) video training courses:



*Id.*   As shown, Defendant's website provides the titles of the various training courses and summarizes their contents.  For example, the "Zumba Basic 1" course is an "introductory training" that provides "the tools you need to lead your own Zumba class."  It covers the "Zumba formula, our four basic rhythms, and more!"  *Id.* at ¶ 60.

When a consumer purchases access to one of these pre-recorded video training courses, Defendant sends the title of the course the consumer purchased and the consumers' Facebook ID and name to Meta.  *Id.* at ¶¶ 95-101.  It does in two ways.  First, through the operation of the 'Event

Data' functionality of the Meta Pixel. *See id*. The 'Event Data' function of the Meta Pixel sends the name of the instructor course selected by the consumer, the consumer's name, and their address to Meta during the 'check out' process. *Id*. This information is bundled together with either the consumer's Facebook ID. *Id*. Second, upon completion of the purchase, Defendant sends Meta and/or Pinterest the consumer's Facebook ID or "s_a" cookie and a URL to a publicly-accessible webpage which displays the name of the consumer and title of the specific prerecorded instructor training course that the consumer purchased. *Id*. at ¶¶ 102-104; 123-129.

This is not a difficult case. Defendant sends the titles of the prerecorded video training courses purchased by its consumers to Meta. Defendant does so through (1) the operation of the "Event Data" capabilities of the Meta Pixel, *see id*. at ¶¶ 98-101, and (2) the transmission of the URL to the webpage containing the consumer's name and the title of the video training course they purchased, *see id*. at ¶¶ 102-104. For at least the second of these two, the same is true for Pinterest. *Id*. at ¶¶ 123-129. There is no doubt that the Complaint alleges that Defendant discloses to third parties the titles of the on-demand (e.g., prerecorded) video training courses requested and obtained by its consumers through the operation of tracking pixels. *See Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) (plaintiff adequately alleged disclosure of personally identifying information by alleging the defendant "sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.").

Defendant also transmits its consumers' personally identifiable information to Meta and Pinterest when they purchase prerecorded workout classes. These allegations more closely resemble typical tracking pixel-based data privacy litigation. The Complaint alleges that when a consumer accesses a prerecorded video workout class on the website, Defendant sends the consumers' Facebook ID and the URL of the webpage containing the video to Meta. [DE 1 at ¶¶ 106-108]. It also alleges that "The URL of each webpage containing a prerecorded video workout class on Defendant's Website is sufficient to identify the video on that page." *Id*. at 109.

Courts around the country routinely find that analogous allegations meet the pleading standard for the disclosure of personally identifiable information. For example, in *Frawley v. Nexstar Media Grp. Inc.*, the defendant argued that the plaintiff had not identified "any specific videos that he viewed, when he viewed them, or how he viewed them." No. 3:23-CV-2197-L, 2024 WL 3798073, at *3 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024). There, the defendant pointed out

that "the information allegedly disclosed did not contain any reference to specific video content watched." *Id*. The court even took judicial notice of the fact that not all of the URLs transmitted to Meta contained the title of the video displayed on the relevant webpage. *Id*. Nevertheless, the court found that the Plaintiff "is not required to allege the specific videos he watched to state a claim under the VPPA." *Id.* at *6 (citing *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *3 (N.D. Cal. July 28, 2023)). And the court found that "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." *Id*. at *7 (quoting *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023)). It held that the plaintiff had plausibly alleged the disclosure of personally identifying information. *Id*. The same is true here.

Defendant argues that the disclosures alleged in the Complaint do not identify the "specific" videos requested or obtained by the Plaintiffs.[2] But Defendant ignores the plain-stated allegations of the Complaint, which do allege that Defendant disclosed the "specific video materials" which Plaintiffs both "requested" and "obtained." Instead, Defendant relies heavily upon *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). [DE 12 at 6-7]. *Martin* only bolsters the fact that personally identifiable information has been plausibly alleged here, however. In *Martin*, the Southern District of New York wrote: "Thus, simply disclosing the name of a webpage and an associated Facebook ID leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor; and (4) whether the website visitor 'requested or obtained' any videos at all, or instead merely read an article on the webpage." 657 F. Supp. 3d at 284. Unlike the complaint in *Martin*, each of those elements weighs in Plaintiffs' favor here.[3] First, the Complaint alleges that each page contains a video. *See* [DE 1

---

[2] In various locations, Defendant's brief refers to whether videos were "watched" by the Plaintiffs and putative class members. *See, e.g.*, [DE 12 at 5, 6, 8]. But disclosure of videos actually *watched* by a consumer is not a required element of a VPPA claim. On the contrary, the statute prohibits the disclosure of personally identifiable information, which is defined as "information which identifies a person as having *requested* or *obtained* specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added).

[3] These factors are reviewed herein only with respect to the prerecorded workout class videos offered for sale by Defendant. As shown above, there is no question that the titles of the instructor

at ¶¶ 107-108].  Second, each page contains the name of the video hosted on the page.  *See* [DE 1 at ¶¶ 108-109].  Third, there is only one video per page.  *See* [DE 1 at ¶ 107] (describing "a dedicated webpage where only that video is available for viewing").  Fourth, the Complaint alleges that the consumers of the workout class specifically requested and obtained access to the individual videos which they purchased, e.g., they bought the videos *a la carte.  See* [DE 1 at ¶¶ 63, 64, 107].  Even under the factors articulated in *Martin*, the disclosure of the URLs containing the workout class videos, as described in the Complaint, plausibly alleges the transmission of information identifying "specific video materials."

The Southern District of New York revisited the precise question of whether a URL alone is enough to identify "specific video materials" in *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 n.10 (S.D.N.Y. 2023).  In that case, it distinguished *Martin* on facts very similar to those presented here.  It wrote:

> First. . . . regardless whether the "title" of the viewed videos were disclosed, the FAC plausibly alleges that the disclosure of the URL identifies the subject matter of the viewed video.  Second, as the case law above overwhelmingly holds, a complaint need not allege the disclosure of specific video titles; rather, the disclosure together of the user's Facebook IDs and the URLs of the videos the user accessed suffices.

*Id.*; *see also Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) ("connecting a Facebook ID to a specific person, a URL to a particular video, and the specific person to the particular video is a reasonably straightforward exercise.").  This language from *Golden* is directly on-point.  It shows that an allegation of the transmission of a video's title is not required when there is an allegation that the URL itself sufficiently identifies the "specific video materials" requested or obtained by the consumer.  *See also Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 288 (S.D.N.Y. 2024).

---

training course videos are disclosed by Defendant to third parties, which is sufficient to identify those "specific video materials."  With respect to the workout classes, the question is not whether the *titles* of the videos are transmitted necessarily (although that would be sufficient, as it is with the instructor training courses), but whether information transmitted is sufficient to convey the "specific video materials" requested or obtained by the consumer. 18 U.S.C. § 2710(a)(1) (emphasis added).  Given that the URLs of the pages hosting the videos are sufficient to identify the videos, and that those videos are sent to Meta along with the users' Facebook IDs, that question must be resolved in Plaintiffs' favor with respect to the workout class videos, as well.

Defendant's citation to *Gonzalez v. Cent. Elec. Co-op, Inc.*, is wholly inapposite. *See* [DE 12 at 5 (citing No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009))]. That case did not involve VPPA claims. *See generally Gonzalez*, 2009 WL 3415235. It did not involve the Meta Pixel or any similar technology. *See id*. On the contrary, it involved claims under the Employee Retirement Income Security Act, claims for breach of contract, unpaid compensation, defamation, breach of fiduciary duty, fraud, and a claim under Section 659A.230 of the Oregon Revised Statutes. *Id*. at *1. The VPPA is only mentioned in the opinion because one of the parties moved for a protective order to prevent certain evidence from being entered into the on the basis of 18 U.S.C. § 2710(d), a provision of the VPPA which addresses how personally identifiable information can be "received in evidence in any trial, hearing, arbitration, or other proceeding . . . ." *Id*. at *10-*11. The court found that "evidence indicating that plaintiff purchased one of fifteen movies does not constitute personally identifiable information." *Id*. at *11. But that is not what is alleged here. Here, the Complaint alleges that the workout videos are hosted on webpages which contain the name of the video and only host one video per page. *See* [DE 1 at ¶¶ 107-109]. There is no ambiguity about which video the consumer purchased. Defendant transmitted both the URL of the webpage hosting the individual workout videos and purchased by the members of the putative class, as well as their Facebook IDs (or, in the case of Pinterest, their "s_a" cookies) to Meta. *Id*. at ¶¶ 79-92.[4]

Consistent with the "overwhelming[]" weight of case law cited in *Golden*, 688 F. Supp. 3d at 160 n.10, and the well pled allegations in the Complaint, the Court should find that Plaintiffs have plausibly alleged disclosure of personally identifiable information for both the instructor courses and the workout classes. Defendant's motion to dismiss should be denied.

---

[4] Again, with respect to the instructor training course videos, Defendant sends Meta and Pinterest a URL to standalone webpage which *itself* identifies both the consumer by name and the name of the instructor training videos purchased by the consumer. *See* [DE 1 at ¶ 102]. To the extent there is any ambiguity about the title of the videos "requested or obtained" with respect to the workout class videos—and there is none—there is even less regarding the instructor training videos due to the Complaint's allegations regarding these standalone "You're All Set" webpages. *See id*.

ii.   The Complaint Alleges Disclosure of Personally Identifiable Information Under Both the "Ordinary Person" and "Reasonable and Foreseeable" Standards

Whether this court applies the "ordinary person" or "reasonable and foreseeable" standard to the meaning of the statutory term "personally identifiable information" as that term is used in the VPPA, Plaintiffs have stated a claim.

Defendant attempts to evade liability asserting that its disclosure of Plaintiffs' personally identifiable information should be ignored because, though the parties to whom it disclosed the information – Meta and Pinterest – are able to personally identify Plaintiffs through the disclosures, an "ordinary person" other than Meta or Pinterest would not be able to do so.  *See* [DE 12 at 7-9].  However, this "ordinary person" standard has *not* been adopted by the Eleventh Circuit and, even if it had been, Plaintiffs' Complaint, specifically alleges that an ordinary person could determine Plaintiffs' identities using the information transmitted to Meta and Pinterest.  *See* [DE 12, ¶ 70].  Under either the "ordinary person" or the "reasonable and foreseeable" standard, Plaintiffs' have sufficiently alleged that the information disclosed by Defendant was personally identifiable under the VPPA.

To begin, federal courts, including in this Circuit, have consistently held that Facebook IDs are personally identifying.  For example, in *Lebakken v. WebMD, LLC*, the court found that the plaintiff "adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII." 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022).  Similarly, in *Harris* the court found allegations that the defendant "sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook" sufficient to allege personally identifying information.  662 F. Supp. 3d at 1334.  Courts in other districts regularly find the same under both the "ordinary person" and the "reasonable and foreseeable" standards.  *See Golden*, 688 F. Supp. 3d at 159 ("The FAC's allegations here satisfy either standard.") (collecting cases).

This Court need not apply the "ordinary person" standard.  That standard has not been adopted by the Eleventh Circuit or any other binding authority.  The First Circuit has articulated a different test that is more consistent with the language of the VPPA and the Congressional aims underlying it.  *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir.

2016).  In *Yershov*, the First Circuit (with retired Justice Souter sitting by designation) held that the term "personally identifiable information" encompasses "information *reasonably and foreseeably* likely to reveal which . . . videos [a person] has obtained." *Id*. (emphasis added).  It noted that the phrase "personally identifiable information" is "awkward and unclear" and that its statutory definition "adds little clarity beyond training our focus on the question [of] whether the information identifies the person who obtained the video." *Id*.  Nevertheless, it wrote, "the language reasonably conveys the point that [personally identifiable information] is not limited to information that explicitly names a person," and it gave a succinct and persuasive reading of the term's broader scope through textual analysis, legislative history, and colloquial sports analogies. *Id*.

The First Circuit gives more consideration to the receiving party's awareness of an individual's identity. *Id*.  Expanding on an earlier analogy concerning the numbers on football players' jerseys, the court wrote that "when Gannett makes such a disclosure to Adobe, it knows that Adobe has the 'game program,' so to speak, allowing it to link the GPS address and device identifier information to a certain person by name, address, phone number, and more." *See also Robinson v. Disney Online,* 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015) (stating that allegations of a "correlated look-up table" that would "enable Adobe to link the hashed serial number of [the plaintiff's] Roku device and his viewing choices to his identity" would satisfy the personally identifiable information pleading standard.).  Consistent with this approach, Plaintiffs have alleged Meta's ability to easily link Facebook IDs to individual identities, as well as Defendant's knowledge thereof.  *See, e.g.*, [DE 1, ¶ 3] ("[t]o create a Meta account, a person must provide, *inter alia*, his or her first and last name, birth date, gender, and phone number or email address."); ¶ 51 (quoting Meta's developer guide as stating that "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'"); ¶ 59 ("Defendant intentionally programmed its Website to include the Meta Pixel code in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta."); *see also Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, *4 (E.D. La. Nov. 3, 2023) ("many courts have found that FIDs constitute PII under the statute. At the very least, Meta can easily 'link' the FID to a specific user.").

Even if this Court does adopt the "ordinary person" test, Defendant's argument still fails because Plaintiffs sufficiently allege that the disclosure of their Facebook IDs and the URLs

12

containing the video titles would readily permit an ordinary person to identify them and the videos they requested or obtained. The "ordinary person" test assumes that the VPPA views disclosure from the perspective of the disclosing party, rather than the receiving party. The Third Circuit first adopted the standard in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016). In that case, the court held that a unique IP address does not qualify as "personally identifiable information." *Id*. The court reasoned that the statutory term includes only information that "readily permit[s] *an ordinary person* to identify a [particular individual as having requested or obtained certain videos]." *Id.* (emphasis in original). The Ninth Circuit also adopted the "ordinary person" standard in *Eichenberger v. ESPN, Inc.*, where it held, consistent with the *Robinson* court, that a Roku device's serial number was not personally identifying. 876 F.3d 979, 985 (9th Cir. 2017).

Neither *Nickelodeon* nor *Eichenberger* involved disclosures of Facebook IDs. On the contrary, both decisions expressly indicated that Facebook IDs are personally identifying. In *Nickelodeon,* the Third Circuit wrote: "We note, however, that even a numeric identifier might qualify as personally identifiable information, at least in certain circumstances." 827 F.3d at 289 n.174. It proceeded to a discussion of *In re Hulu Privacy Litigation* and its holding that Facebook IDs are personally identifying, using that as an example of a circumstance where numeric identifiers would meet the statutory definition. *Id*. (citing No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)) ("Hulu would transmit that coded information to Facebook . . . in such a way that Facebook could easily identify an account holder's video preferences."). Similarly, in *Eichenberger*, the Ninth Circuit wrote that "A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." 876 F.3d at 985. Defendant urges the Court to dismiss the Complaint based upon each of these cases but never mentions these passages carving out Facebook IDs from the opinions' holdings regarding personally identifiable information. *See* [DE 12, 6-8].

Regardless, Plaintiffs' Complaint specifically alleges that an ordinary person could determine Plaintiffs' identities with access to their Facebook IDs. It states:

> With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on its Website—all of which Defendant knowingly provides to Meta on a systematic basis—any **ordinary person** could learn the identity of the person to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased (and thus requested and obtained). This can be

accomplished simply by accessing the URL www.facebook.com/[insert the person's FID here]/.

[DE 1, ¶ 116] (emphasis added).  The Complaint also alleges that the Plaintiffs and putative class members have Meta accounts, Facebook profiles, and corresponding Facebook IDs, thereby tying their accounts to these allegations. *Id*. at ¶¶ 9-14, 19-24.  It further alleges that Plaintiff Summy's Facebook account was "set to public status when she purchased the prerecorded video materials, enabling anyone in possession of her Facebook ID to easily ascertain her identity. *Id*. at ¶ 26. Further still, an ordinary person would certainly be capable of entering the URLs of the "You're All Set" pages—which are provided by Defendant to Meta and Pinterest—into a web browser and thereby see the consumers' names and the titles of the instructor courses they purchased. *See, e.g., id*. at ¶ 102.  These allegations are more than enough to survive a motion to dismiss, even under the "ordinary person" standard.  *See, e.g.*, *Collins*, 721 F. Supp. 3d at 287 ("Courts applying the ordinary-person test developed by the First Circuit have consistently held that a Facebook ID readily permits an ordinary person to identify the particular user accessing or requesting a specific video.") (collecting authorities); *see also Feldman*, 659 F. Supp. 3d at 1021.

Because the Complaint plausibly alleges that Defendant disclosed Plaintiffs' and the putative class members' personally identifiable information under either the "ordinary person" or "reasonable and foreseeable" standard, Defendant's motion to dismiss should be denied.

**B.  The Complaint Alleges That Defendant Knowingly Made the Disclosures**

The Complaint plausibly alleges that Defendant's disclosures of Plaintiffs' and the putative class members' "personally identifiable information" to Meta and Pinterest was committed knowingly.  Defendant's second argument under Rule 12(b)(6) runs up against both the allegations in the Complaint and the overwhelming weight of case law.  Defendant asserts that Defendant did not "knowingly" disclose their information.  *See* [DE 12 at 15].  This argument is routinely turned away by courts considering analogous allegations.  Defendant's Motion should be denied.

Courts regularly find that allegations of scienter equivalent to those stated in the Complaint meet the pleading standard.  For example, in *Czarnionka v. Epoch Times Ass'n, Inc*., the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be PII or knew it was transmitted[.]"  No. 22 CIV. 6348 (AKH), 2022 WL 17069810, *3 (S.D.N.Y. Nov. 17, 2022).  The court soundly rejected this argument based on the complaint's allegations that the defendant programmed the Meta Pixel

14

into its website code and knew that it would transmit video titles and Facebook IDs to Meta. *Id*. Other courts considering the issue have consistently reached the same conclusion. *See, e.g., Lebakken*, 640 F. Supp. 3d at 1342-43 (denying motion to dismiss); *Frawley*, 2024 WL 3798073 at *9 (same); *Li*, 2023 WL 7280519, at *4 (same); *Feldman*, 659 F. Supp. 3d at 1021-1022 (same); *Harris*, 662 F. Supp. 3d at 1336 (same); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 315 (D. Mass. 2022) (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (same), *appeal dismissed sub nom. Adams v. Am.'s Test Kitchen, Inc.*, No. 23-1592, 2024 WL 3515257 (1st Cir. July 17, 2024).

Defendant's reliance on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 595 (9th Cir. 2020), is entirely unavailing. *See* [DE 12]. That case did not involve claims under the VPPA. *See generally id*. Nor did it involve allegations concerning the Meta Pixel (nor any other tracking pixel). *Id*. It is neither factually nor legally apposite, unlike the many cases considering the knowledge element of VPPA claims in the context of pixel-based disclosures. *See e.g.*, *Frawley*, 2024 WL 3798073 at *9.

The Complaint sufficiently alleges that Defendant knowingly disclosed its consumers' Facebook IDs and URLs identifying and containing the names of the videos the consumers requested or obtained to Meta. Plaintiffs allege that Defendant installed the Meta Pixel on its website knowing that it would transmit the personally identifiable information to Meta. For example, the Complaint states:

- Plaintiffs bring[] this action to redress Defendant Zumba Fitness, LLC's ("Defendant") practice of **knowingly disclosing** Plaintiffs' and its other customers' identities and the identities of the prerecorded video materials to which they purchased access on Defendant's www.zumba.com website (the "Website") to third parties in violation of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. [DE 1 at ¶ 1] (emphasis added).

- "[T]he Meta Pixel technology that Defendant **intentionally installed** on its Website transmits the customer's personally identifying information and detailed Private Viewing Information (revealing the specific titles of the prerecorded video material that he or she purchased) to Meta . . . ." *Id*. at ¶ 76 (emphasis added).

- "Defendant **intentionally programmed its Website to include the Meta Pixel code** in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta." *Id*. at ¶ 112.

- "With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on its Website—**all of which Defendant knowingly provides to Meta on a systematic basis** . . . ." *Id*. at ¶ 116 (emphasis added).

- Defendant knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to Meta via the Meta Pixel technology because **Defendant intentionally installed and programmed the Meta Pixel code on its Website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers** (including [Facebook IDs]). *Id*. at ¶ 141 (emphasis added).

Any one of these allegations, standing alone, would be sufficient to allege Defendant's knowing disclosure of personally identifiable information. Taken together, they paint a comprehensive picture of how Defendant intentionally and knowingly utilized the Meta Pixel to disclose its consumers' personally identifiable information to Meta to improve its own marketing and advertising abilities. The Court should find the Plaintiffs have plausibly alleged that Defendant knowingly disclosed their personally identifiable information. Defendant's Motion should be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. In the event that the Court grants the Motion, Plaintiffs request leave to amend.

Date: February 26, 2025                    Respectfully submitted,

                                           /s/ *Tyler K. Somes*

                                           Tyler K. Somes (*pro hac vice*)
                                           HEDIN LLP
                                           1100 15th Street NW, Ste 04-108
                                           Washington, D.C. 20005
                                           Telephone: (202) 900-3332
                                           Facsimile: (305) 200-8801
                                           tsomes@hedinllp.com

                                           Elliot O. Jackson
                                           Florida Bar No. 1034536
                                           1395 Brickell Ave, Suite 610
                                           Miami, Florida 33131
                                           Telephone: (305) 357-2107
                                           Facsimile: (305) 200-8801
                                           ejackson@hedinllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

                                           /s/ *Tyler K. Somes*

17