**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 24-cv-61983-WPD**

CATHERINE KUEPPERS and KATHLEEN SUMMY,
individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ZUMBA FITNESS, LLC,

Defendant.
_______________________________________________/

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' PUTATIVE CLASS ACTION COMPLAINT**

Defendant, Zumba Fitness, LLC ("**Zumba**"), pursuant to Local Rule 7.1(c) of the Local Rules for the Southern District of Florida, hereby files this reply brief to Plaintiffs', Catherine Kueppers ("**Kueppers**") and Kathleen Summy ("**Summy**") (collectively "**Plaintiffs**"), Opposition to Zumba's Motion to Dismiss ("**Plaintiffs' Opposition**") [ECF No. 15], and states:

## INTRODUCTION

On January 13, 2025, Zumba filed its Motion to Dismiss, arguing Plaintiffs fail to state a cause of action under the Video Privacy Protection Act ("**VPPA**"), 18 U.S.C. § 2710, as: **1)** the alleged disclosures by Zumba are not of personally identifiable information ("**PII**"), and Plaintiffs fail to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched; **2)** Plaintiffs fail to plausibly allege that the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify Plaintiffs' video-watching habits; and **3)** Plaintiffs fail to plausibly allege Zumba disclosed (let alone knowingly disclosed) Plaintiffs' PII to any third-party. Ultimately, Plaintiffs' Opposition does not change what is apparent from the Complaint and as argued by Zumba's Motion to Dismiss—Plaintiffs do not plausibly state a claim for relief under the VPPA, and Plaintiffs' Complaint should, respectfully, be dismissed.

## LEGAL ARGUMENT

The fundamental requirement for liability under the VPPA is the disclosure of information that identifies a *specific* person as obtaining or viewing *specific* video content. *See In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443, 2014 WL 3012873, at *10 (D. N.J. July 2, 2014) (under the VPPA, PII "is information that must link 'a specific, identified person and his video habits.'"), *affirmed in part and reversed in part*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016). A plaintiff must allege facts showing the defendant "actually knew it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Here, Plaintiffs fail to satisfy the pleading burden required to state a cause of action for a purported violation of the VPPA and, therefore, the Complaint should be dismissed.

### I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A DISCLOSURE OF PLAINTIFFS' PII BY ZUMBA

Within its Motion to Dismiss, Zumba argues: **1)** the alleged disclosures by Zumba are not of PII, and Plaintiffs fail to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched; and **2)** Plaintiffs fail to plausibly allege that the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify Plaintiffs' video-watching habits.

#### A. Plaintiffs' failure to plausibly allege Zumba disclosed PII connecting *Plaintiffs* to any *specific* video materials obtained or watched.

Based on Plaintiffs' Opposition, it appears Plaintiffs misconstrue Zumba's argument in this regard. Zumba's Motion does not dispute that Plaintiffs allege (albeit without any specificity whatsoever as to the titles of any videos) they purchased an on-demand Zumba Instructor Training Course from Zumba's website, which provided them with access to prerecorded video materials. *See* [ECF No. 12 at 2, citing Pls.' Compl. at ¶¶ 10-11, 20-21]. Zumba's Motion also notes Plaintiffs allege Zumba discloses to Meta and Pinterest (albeit denied), via tracking pixels, the identity of specific prerecorded video material that customers requested or obtained through a purchase on Zumba's website. *See* [*id*. at 2-3, citing Pls.' Compl. at ¶¶ 73, 123]. Notwithstanding these bare-bones allegations, Zumba contends the Complaint does not demonstrate the title of any video Plaintiffs themselves purportedly obtained or purchased. Nowhere in the Complaint are any

allegations asserted that contain the identity of any specific video materials Plaintiffs allegedly requested or obtained—to that end, the on-demand Zumba Instructor Training Course does not reflect the title of any particular video but instead, as Plaintiffs' own Complaint concedes, is a training course comprising 16 modules (note, Plaintiffs' Complaint does not (as it cannot) make any allegation that these modules entirely comprise of videos). *See* [Pls.' Compl. at ¶ 61]. Plaintiffs' Complaint asserts that the purported video materials made available by Zumba's website fall into two categories: 1) on-demand Zumba instructor training courses; and 2) workout classes hosted by Zumba instructors. [*Id*. at ¶ 58]. However, Plaintiffs do not claim to have purchased anything beyond the on-demand Zumba instructor training course, ***which again is not a video in and of itself***. Accordingly, Plaintiffs do not sufficiently allege Zumba disclosed the titles of any videos purportedly obtained or purchased *by Plaintiffs*.

Simply put, while Plaintiffs generally allege tracking pixels purportedly installed by Zumba transferred a URL identifying the prerecorded video materials they allegedly purchased, the specific allegations of the Complaint do not demonstrate that, in fact, the title of any specific video material obtained *by Plaintiffs* (or any consumer for that matter) is in the purported information transferred to either Facebook or Pinterest. Because Plaintiffs do not sufficiently allege facts showing that any specific video information *of Plaintiffs* was disclosed, Plaintiffs cannot state a VPPA claim and, in turn, stand as representatives of a putative class asserting such a claim.

As mentioned within the Motion to Dismiss, Plaintiffs' own Complaint only superimposes images that show either (i) a description of training courses, but not titles to any specific videos purportedly obtained or requested *by Plaintiffs*; or (ii) titles of videos but no specific information as to which specific video material was purportedly obtained or requested *by Plaintiffs*. *See* [ECF No. 15 at 6 ("When a consumer purchases access to one of these pre-recorded video training courses, Defendant sends the *title of the course* the consumer purchased . . . .")] (emphasis supplied). Indeed, even within Plaintiffs' Opposition, the image superimposed on Page 3 of the same is for an individual named "Frank Hedin" (who is not one of the Plaintiffs but is instead one of their lawyers). Further, the image superimposed on Page 5 of Plaintiffs' Opposition draws no connection between the same and either of the Plaintiffs. Thus, while Plaintiffs' Opposition asserts that the Complaint alleges Zumba discloses to third parties the titles of the on-demand video training courses requested and obtained by its prospective instructors, the Opposition does not

fully address Zumba's argument that the Complaint is silent as to specific video viewing or purchasing information *of Plaintiffs* (as the putative class representatives) purportedly disclosed. Contrast this with Plaintiffs' cited case *Harris v. Pub. Broad. Serv.*, where the plaintiff alleged that the defendant sent "*the content name of the video the digital subscriber watched*." 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (emphasis supplied). That did not happen here.

Plaintiffs' cited case, *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073 (N.D. Tex. July 22, 2024), is also distinguishable. In *Frawley*, the court found that plaintiff had sufficiently "stated in his complaint that the *video title and URL* are transmitted to the third party." *Id.* at *7 (emphasis supplied). Here, in contrast, the screenshot images superimposed into Plaintiffs' Complaint only show: 1) a sample of the on-demand instructor training course videos available for purchase; 2) a sample of workout classes available for purchase; 3) a sample of the checkout process; and 4) the name of a video purportedly purchased by "Frank Hedin" (not either of the Plaintiffs). Since Plaintiffs have not set forth the title of any specific video they purportedly obtained or purchased (or watched), their pleading deficiencies are fatal and their claims must fail. *Contrast with* Plaintiffs' cited case *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D. N.Y. 2023) (not addressing this same argument, as it was not raised by the defendant).

Moreover, Plaintiffs attempt to distinguish but, tellingly, also attempt to rely upon Zumba's cited case, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D. N.Y. 2023). *Martin* stands for the proposition that simply disclosing the name of a webpage and an associated FID "leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; [and] (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor . . . ." *Id*. at 284. To that end, Plaintiffs' own Complaint only superimposes images that show a description of training courses, but not titles to any specific videos purportedly obtained or requested *by Plaintiffs*. *Contrast with* Plaintiffs' cited case *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023) (connecting a Facebook ID to a specific person and a URL *to a particular video*). Within the Opposition, Plaintiffs claim that the disclosure of URLs containing the pre-recorded workout class videos plausibly alleges the transmission of information identifying "specific video materials" [ECF No. 15 at 9]; however, there are no allegations in the Complaint that Plaintiffs purchased these particular workout class videos or that

the URL allegedly disclosed specifically states the title of any video materials. In short, *Martin* held, because visiting a URL is not the same as watching a video found there, disclosing that a person visited a webpage does not indicate that person "requested or obtained specific video materials on that webpage." 657 F. Supp. 3d at 284. Both the *Collins* and *Sellers* decisions cited by Plaintiffs make this exact distinction, finding *Martin* inapposite because not all webpages on the *Martin* defendant's website (just as Zumba's website) included videos, and even if they had, the disclosed URL would not reveal whether a user had actually accessed the video materials on that webpage. *See Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274 (S.D. N.Y. 2024); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023). Moreover, Plaintiffs' Complaint fails to identify any purported URL that necessarily corresponds to or includes the title of any purported video materials Plaintiffs allegedly accessed, obtained, or purchased. *Contrast with* Plaintiffs' cited cases *Golden*, 688 F. Supp. 3d 150 (the plaintiff alleged the URL itself clearly identified the video content being watched along with un-anonymized viewer's information); *Sellers*, 2023 WL 4850180 (the plaintiff had alleged the defendant disclosed the content name of the video plus the URL and the defendant's FID); *Ghanaat v. Numerade Labs, Inc.*, 689 F.Supp.3d 714, 720 (N.D. Cal. 2023) (the plaintiff alleged that the URL "containe[d] the name of the video and readily enable[d] the average person to view the video.").

Here, Plaintiffs simply rely upon generalized allegations that the identity of a website visitor and the titles of the videos they obtained or purchased are shared with Facebook or Pinterest. However, a review of Plaintiffs' Complaint and the superimposed images therein reveals the information purportedly disclosed does not actually include the title of any video obtained or purchased *by Plaintiffs*. Accordingly, Plaintiffs fail to state a VPPA claim, and the Complaint should, respectfully, be dismissed. *See Meredith*, 657 F. Supp. 3d at 285; *see also* Plaintiffs' cited case, *Mollet v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) (affirming dismissal of VPPA claim, finding disclosures did not violate the VPPA).

**B. Plaintiffs' failure to plausibly allege the disclosure of their purported PII would, with little or no extra effort, permit an *ordinary person* to identify a particular person's video-watching habits.**

In the Opposition, Plaintiffs claim this Court "need not apply the 'ordinary person' standard" and this "ordinary person" standard has not been adopted by the Eleventh Circuit. [ECF No. 15 at 11]. However, it is Plaintiffs' own Complaint that asserts that "*any ordinary person* can


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

purportedly learn the identity of the person to whom the FID/user ID corresponds and the identity of the specific prerecorded video material that the person requested and obtained. [ECF No. 1 at ¶¶ 116, 126, 142] (emphasis supplied). To that end, Zumba asserts this Court should apply the "ordinary person" standard. In this regard, Plaintiffs' theory appears to be that the mere existence of the two snippets of data somewhere in a Facebook or Pinterest database is enough to make out a VPPA disclosure violation. It is not. Here, Plaintiffs' Complaint does not allege facts plausibly showing that the purported tracking pixels on Zumba's website "readily permit[s] an ordinary person to identify" Plaintiffs' video-watching behavior. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016). In this action, Plaintiffs fail to allege any facts suggesting that either Zumba or Facebook (or Pinterest) "combined" the relevant pixel data points from which an ordinary person could then tie Plaintiffs to the specific website videos Plaintiffs purportedly watched, obtained, or purchased. Consequently, there could be no disclosure of "personally identifiable information" under the statute, and dismissal for failure to state a claim must likewise follow.

Simply put, it would require multiple steps for an ordinary person to link any videos purchased or obtained by a specific person, including, but not limited to, the ordinary person having to know that the unidentified string of numbers is an FID, the ordinary person would need to know to append the unidentified string of numbers to facebook.com, and the ordinary person would need to be able to identify the video title in the jumbled string of code. Additional information and tools would be required to decipher this information and attempt to link it to a specific person. While *Eichenberger v. ESPN, Inc.*, 876 F. 3d 979 (9th Cir. 2017), *In re Nickelodeon Consumer Priv. Litig.*, and *Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D. N.Y. 2015), did not involve FIDs, their conclusions are still instructive here. Indeed, information cannot simply become PII because of the potential, however remote, of a third party to reverse engineer a disclosure using data gathered from other sources. Since Plaintiffs have not plausibly alleged that an ordinary person could use any of the allegedly disclosed identifiers to identify them-much less any video content they consumed, they fail to allege the information allegedly disclosed constitutes PII.

As to any Pinterest related claims, Zumba's Motion to Dismiss argues that the cookie Plaintiffs identify (which Plaintiffs admit is an encrypted value), does not constitute PII under the VPPA. *See Bernadino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017



**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

WL 3727230, at *8 (S.D. N.Y. Aug, 11, 2017), *report and recommendation adopted*, No. 17-CV-4570 (LAK), 2017 WL 3726050 (S.D. N.Y. Aug. 28, 2017). Zumba's Motion to Dismiss also argues Plaintiffs do not (and cannot) explain how the encrypted cookies and browser identifiers enable an ordinary person to identify a specific Zumba website visitor. If a cookie is encrypted, as Plaintiffs admit here, it would not be decipherable by an ordinary person because only those with the encryption key could unencrypt it. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Lit*., No. 14-MD-2452 (VSB) (SLC), 2022 WL 1082087, at *13 (S.D. N.Y. Apr. 11, 2022) ("The computers Keurig issued to its employees were encrypted, meaning they could only be accessed using an encryption key."). Critically, Plaintiffs do not allege that an ordinary person could decipher these user IDs, which are encrypted.

That said, and as Plaintiffs' Opposition points out, the First Circuit has held PII must be "reasonably and foreseeably likely to reveal . . . videos [a specific person] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). However, the *Yershov* court cautioned that, at some point, "the linkage of information to identity [can] become [] too uncertain . . . too dependent on too much yet-to-be-done, or unforeseeable detective work" to allow a plausible VPPA claim. *Id*. at 486. The Third and Ninth Circuits have adopted a narrower test—the ordinary person test referenced above. Regardless, Plaintiffs' claims would fail under either test. As mentioned in the Motion to Dismiss, Plaintiffs' Complaint does not allege facts suggesting Facebook or Pinterest "combined" relevant pixel data points and then tied them to a specific video obtained or purchased by Plaintiffs. Further, even assuming Plaintiffs were signed into their Facebook accounts when visiting the Zumba website, the complaint contains no allegation as to what information was actually included on their profiles, such as their names or birthdays. The Complaint only offers threadbare recitals that Plaintiffs' profiles included personally identifiable information. *See* Plaintiffs' cited case*, Ghannat*, 689 F. Supp. 3d at 720 (finding "plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses. Accordingly, the complaint does not adequately allege that their FIDs result in the sharing of any personal information.").

At bottom, Plaintiffs' Complaint does not allege facts plausibly showing that any alleged pixels "readily permit[s] an ordinary person to identify" Plaintiffs' video behavior, *In re Nickelodeon*, 827 F.3d at 267, or how a third-party can do that without "unforeseeable detective

work," *Yershov*, 820 F.3d at 486. *See Edwards v. Learfield Comms., LLC*, 697 F.Supp.3d 1297, 1307-08 (Fla. N.D. 2023) (finding the plaintiffs' VPPA claim failed under both tests).

## II. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ZUMBA DISCLOSED (LET ALONE KNOWINGLY DISCLOSED) PLAINTIFFS' PII TO ANY THIRD-PARTY

The VPPA makes clear that claims may only be brought against a defendant "who *knowingly* discloses" PII (18 U.S.C. § 2710(b)(1) (emphasis supplied))—*i.e.*, the defendant must be the party doing the disclosing. Here, Plaintiffs fail to plausibly allege Zumba disclosed Plaintiffs' PII. As argued by Zumba's Motion to Dismiss, Plaintiffs' FID/Pinterest User IDs are stored on Plaintiffs' computers—*not by Zumba*—and subsequently transmitted to Facebook or Pinterest by *Plaintiffs' own browsers*. To that end, Zumba does not transfer or disclose any PII of Plaintiffs to Facebook or Pinterest. Indeed, Plaintiffs do not plead that Zumba ever possessed or had access to Plaintiffs' Facebook IDs/Pinterest User IDs, let alone that Zumba transmitted or sent those user IDs to any third-party.

VPPA bars video tape service providers from "disclos[ing]" PII; however, "it would be impossible to disclose information without sending, transmitting, communicating, or distributing it." *Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C.*, No. 19-cv-126, 2020 WL 4370941, at *3 (W.D. N.C. July 8, 2020) (internal quotation marks omitted), *memorandum and recommendation adopted*, 2020 WL 4369446 (W.D. N.C. July 30, 2020). Here, the alleged personal identifier—the piece of information that purportedly identifies Plaintiffs to Facebook or Pinterest—is Plaintiffs' own User IDs. But this information only exists on a user's browser, where it is placed by Facebook or Pinterest when the user is logged into these applications, and is not transmitted to or collected by Zumba. Nowhere does the Complaint allege Plaintiffs provided an FID or Pinterest User ID to Zumba—and, certainly, Zumba cannot disclose what it does not possess.

At most, Plaintiffs allege Zumba caused their browsers to make a purported disclosure of PII—but VPPA imposes liability *only* on a party that "discloses" PII, not a party that merely "causes" a disclosure of information it does not possess by some third-party. If Congress had wanted to extend VPPA liability to those who merely *cause* disclosure, it could have crafted the statute that way as it has done so before. *See, e.g.*, 15 U.S.C. § 6821 (prohibiting any person to "*cause to be disclosed* . . . customer information of a financial institution") (emphasis supplied); 18 U.S.C. App. 3 § 5 ("defendant reasonably expects to disclose *or to cause the disclosure* of

classified information") (emphasis supplied); 10 U.S.C. § 949p-5 ("accused reasonably expects to disclose, *or to cause the disclosure of*, classified information") (emphasis supplied). In this case, Plaintiffs' theory that Zumba's purported actions caused the disclosure of PII is insufficient to support a VPPA claim.

Moreover, even if Zumba disclosed PII to Facebook or Pinterest (which it did not), such a disclosure was not done "knowingly." To violate the VPPA, a defendant must "knowingly disclose[]" PII. 18 U.S.C. § 1710(b)(1).. As explained in *In re Hulu Privacy Litig.*, "'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code." 86 F. Supp. 3d at 1095. As argued by the Motion to Dismiss, critically absent from the Complaint is any allegation that Zumba ever knew any customers' Facebook ID/Pinterest user ID. Moreover, Plaintiffs also have failed to plausibly allege that Zumba knowingly disclosed Plaintiffs' identities in connection with any *specific* video material they purportedly obtained, purchased, or viewed. For Plaintiffs to plead a VPPA claim, Zumba had to *know* that Facebook or Pinterest forged (or would forge) the connection between a Facebook ID (or Pinterest user ID) and the fact that a user "requested or obtained specific video materials." Indeed, Plaintiffs' Complaint fails to demonstrate how knowledge that a pixel code had been installed or programmed equates to specific knowledge that Facebook or Pinterest was receiving the names of specific video materials obtained or purchased by consumers. Accordingly, even if the information disclosed by these pixels is determined to be PII, the pixel's transmission of the information to Facebook or Pinterest does not qualify as a *knowing* disclosure of PII by Zumba. *In re Hulu Priv. Litig.,* 86 F. Supp. 3d at 1095 (observing that it is "not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or he is doing'").

That said, Plaintiffs' Opposition attempts to rely upon *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D. N.Y. Nov. 17, 2022), for the proposition that "[c]ourts regularly find that allegations of scienter equivalent to those stated in the Complaint meet the pleading standard." [ECF No. 15 at 14]. *Czarnionka*, however, engages in no statutory analysis to explain why the purported installation or programming of the Meta Pixel code satisfies the disclosure element under VPPA—indeed, Zumba respectfully contends the *Czarnionka* decision stretched the intended scope of VPPA well beyond the statute's plain meaning. To that end, Plaintiffs' other cited cases in support of this proposition are also readily distinguishable. *See, e.g., Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335 (N.D. Ga. 2022) (only argument as to lack

of knowing disclosure was that defendants did not know Facebook would combine FID information and viewing information); *Feldman*, 659 F. Supp. 3d 1006 (same); *Belozerov v. Garnett Co.*, 646 F.Supp.3d 310 (D. Mass. 2022) (decision was based on a bare recitation of the elements of the claim); *Adams v. Am's Test Kitchen, LP*, 680 F. Supp. 3d 31 (D. Mass. 2023) (did not consider whether disclosure of PII can be made "knowingly" if a user's identity is disclosed by his own browser, not the defendant).

For the reasons set forth above and in Zumba's Motion to Dismiss, this case should be dismissed.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March 2025, a true and correct copy of the foregoing has been filed and furnished to all counsel of record.

**COLE, SCOTT & KISSANE, P.A.**
Counsel for Defendant, Zumba Fitness, LLC
110 Tower, 110 SE 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
Telephone (954) 703-3720
Facsimile (954) 703-3700
Primary e-mail: barry.postman@csklegal.com
scott.bassman@csklegal.com
matthew.green@csklegal.com

By: s/ Matthew A. Green
BARRY A. POSTMAN
Florida Bar No.: 991856
SCOTT A. BASSMAN
Florida Bar No. 232180
MATTHEW A. GREEN
Florida Bar No.: 1019717