**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 24-cv-61983-WPD**

CATHERINE KUEPPERS and WATANYA BROWN,
individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ZUMBA FITNESS, LLC,

Defendant.
_______________________________________/

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant, Zumba Fitness, LLC ("**Zumba**" or "**Defendant**"), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, hereby submits this Motion for Judgment on the Pleadings as to Plaintiffs', Catherine Kueppers and Watanya Brown (collectively "**Plaintiffs**"), Second Amended Class Action Complaint [ECF No. 45]:[1]

**INTRODUCTION**

Plaintiffs, on behalf of a purported class, filed this lawsuit against Zumba seeking alleged damages and injunctive relief under the Video Privacy Protection Act ("**VPPA**"), 18 U.S.C. § 2710. This case involves the alleged disclosure of Plaintiffs' and putative class members' personally identifiable information ("**PII**") to third-parties, via tracking pixels, based on Plaintiffs'/putative class members' purported purchase/subscription to access an on-demand instructor **training course** offered by Zumba on its website. *See* [ECF No. 45 at ¶ 232 (Plaintiffs "**purchased access to prerecorded video material** or purchased prerecorded video material from Defendant's Website"); ¶ 233 (Defendant transmitted PII "because it identifies Plaintiffs and the Class members to third parties as individuals who purchased, and thus 'requested or obtained,' specific prerecorded video materials or **a subscription to access prerecorded video materials**

---

[1] The Second Amended Complaint dropped former Plaintiffs, Kathleen Summy and Ashton Higginbotham, from this case.

from Defendant via its Website."); ¶ 236 (Defendant transmitted "to third parties URLs containing the titles of the specific prerecorded video materials its customers viewed **after purchasing subscriptions** to Defendant's Website coupled with its customers' unique identifiers (including FIDs).")] (Emphasis added). Of note, within the Second Amended Complaint, Plaintiffs claim Zumba "sells access to prerecorded video materials to consumers" on its website and these prerecorded videos "fall into two primary categories: (1) on-demand Zumba instructor training courses and (2) workout classes hosted by Zumba instructors." [*Id.* at ¶¶ 56-57]. However, Plaintiffs could not possibly represent any putative class pertaining to the purchase of prerecorded workout classes hosted by Zumba instructors, as there are no allegations Plaintiffs purchased "workout videos hosted by Zumba instructors" only that Plaintiffs purchased "on-demand Zumba instructor training courses"—therefore, this case is focused solely on on-demand Zumba instructor **training courses**.[2]

That said, the VPPA prohibits the disclosure of PII, which the VPPA defines to include "information which identifies a person as having requested or obtained ***specific video materials or services*** from a video tape service provider." 18 U.S.C. § 2710(a)(3), (b) (Emphasis added).[3] Indeed, "PII is information which **must**, without more, itself link an actual person to **actual video materials**." *In re Nickelodeon*, 2014 WL 3012873, at *10 (Emphasis added). However, the VPPA **does not cover the simple disclosure of Plaintiffs' (or any putative class members') purchase of purported access or subscription to video materials on a website**—simply put, such information does not qualify as disclosure of PII under the VPPA. To sufficiently plead a claim under the VPPA, Plaintiffs must allege that specific video materials purchased, accessed, and/or obtained were disclosed—not just an alleged purchase or subscription to access videos. *See Benson v. SimpleNursing, LLC*, No. 24-1118-GBW, 2026 WL 1045614, at *4 (D. Del. Apr. 17, 2026) ("The Court agrees with [the defendant] that a specific video—**not just a subscription to**

---

[2] As noted by Plaintiffs, Zumba's instructor training course is offered via three (3) different means: (1) live in-person training; (2) live online training; and (3) prerecorded online training.

[3] The fundamental requirement for liability under the VPPA is the disclosure of information that identifies a *specific* person as obtaining or viewing *specific* video content. *See In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) (under the VPPA, PII "is information that must link 'a specific, identified person and his video habits.'"), *affirmed in part and reversed in part*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016) (quoting *In re Hulu Priv. Litig.*, Nol C 11-03764 LB, 2014 WL 1724344, at * 12, 14 (N.D. Cal. Apr. 28, 2014)).

**access videos**—must be disclosed.") (Emphasis added), *on appeal with the United States Court of Appeals for the Third Circuit*.

In the instant case, as demonstrated by Plaintiffs' own allegations and superimposed images, **Zumba did not disclose or convey the titles of any specific video materials and/or a URL for the webpages containing any actual videos or video titles**. Plaintiffs' Second Amended Complaint does not allege Zumba disclosed to any third party the *specific* video materials Plaintiffs (or any putative class members) requested or obtained through their purchase or subscription of **<u>access to</u>** an on-demand instructor **training course**. Indeed, Plaintiffs' own allegations establish what was purchased was a subscription/access to a "training course" and not specific video material. *See* [ECF No. 45 at ¶¶ 232, 233, 236]. To that end, **Plaintiffs' allegations of a mere purchase/subscription to access prerecorded video materials is insufficient to identify any consumer behavior related to *specific* video materials, as is required to state a VPPA claim**. Indeed, as noted by the *SimpleNursing* court, the Plaintiffs' "attempt to characterize the VPPA as broadly covering a subscription providing access to videos fails." 2026 WL 1045614, at *4. Simply stated, the VPPA does not apply to the disclosure of an alleged subscription or purchase confirmation webpage that does not identify any specific video content (including the specific title of any video). The VPPA "unambiguously require[s] **disclosure of a specific video**." *Id*. at *5 (Emphasis added). Because the Plaintiffs' purported subscription/purchase of access to a prerecorded training course does not identify any specific videos obtained or requested, it does not constitute PII under the VPPA. Therefore, as a matter of law, Zumba must be granted judgment on the pleadings.

**<u>THE VIDEO PRIVACY PROTECTION ACT</u>**

The VPPA was born out of a very specific incident in American history. During Judge Robert Bork's Supreme Court confirmation hearings, a newspaper obtained and published, without Judge Bork's consent, a list of films that Judge Bork had rented from a local video store. S. Rep. No. 100-599, at 5 (1988). This invasion of privacy prompted Congress to enact a law with the goal of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audiovisual materials." *Id*. at 9. To that end, and as mentioned above, the VPPA prohibits the disclosure of PII, which the VPPA defines to include "information which identifies a person as having requested or obtained ***specific video materials or services*** from a video tape service provider." 18 U.S.C. § 2710(a)(3), (b) (Emphasis added). "Specific" means "definite;


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

explicit; of an exact or particular nature." Black's Law Dictionary (6th ed. 1990). As is clear from a plain reading of the VPPA statute, the statute was intended to be construed "quite narrow[ly]." *In re Nickelodeon Consumer Priv. Litig.*, 827 F. 3d 262, 284 (3d Cir. 2016).

Certainly, an essential part of a VPPA claim is that a consumer's *specific video materials or services* requested or obtained from a videotape service provider must have been disclosed. *Solomon v. Flipps Media Inc.*, No. 22-cv-5508 (JMA)(JMW), 2023 WL 6390055, at *2 (E.D.N.Y. Sept. 30, 2023) (emphasis added); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("For there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material."). Here, however, Plaintiffs are improperly attempting to characterize the VPPA as broadly covering an alleged purchase and/or subscription to access of prerecorded video materials—however, the VPPA does not cover the disclosure of a subscription or purchase confirmation webpage without any disclosure of specific video materials purchased, accessed, and/or obtained.

## PLAINTIFFS' ALLEGATIONS

In this action, Plaintiffs allege Zumba engages in the purported practice of knowingly disclosing Plaintiffs' and its other customers' identities and the identities of the prerecorded video materials to which they purchased access on Zumba's website. [ECF No. 45 at ¶ 1]. Plaintiffs claim, over the last two years, Zumba has transmitted its customers' personally identifying video viewing information to various third parties (including, for example, Meta) using snippets of code called tracking pixels. [*Id*. at ¶¶ 2-3]. Plaintiffs allege the tracking pixels purportedly installed by Zumba "capture and disclose to [these] respective third parties information that reveals the specific video materials that a particular person requested or obtained on" Zumba's website. [*Id*. at ¶ 4]. Specifically, Plaintiffs claim (without any specificity as to the titles of any videos) they purchased a video on-demand Zumba Instructor **training course** from Zumba's website, <u>which provided them with access to prerecorded video materials</u>, and they provided their names, email addresses, and home addresses in association with the alleged purchase of these materials. [*Id*. at ¶¶ 10-11, 21-22].

Plaintiffs' Second Amended Complaint alleges that when an individual purchases access to the Zumba Basic 1 video on-demand **training course**, they begin the checkout process on the webpage superimposed within Page 26 of the Second Amended Complaint. *See* [*id*. at ¶ 95].

Notably, however, this superimposed image **does not show the title of any specific video material**—instead, it only mentions the three (3) offered methods for completing instructor training (i.e., 1 day in-person, 1 day via Zoom, and an on-demand training course). *See* [*id*]. Plaintiffs then allege that "[w]hen the customer arrives on this page, their FID and the page's URL are transmitted to Meta by Defendant via the Meta Pixel" [*Id* at ¶ 96]—to that end, even taking Plaintiffs' allegation as true, the referenced webpage, again, **does not identify any *specific video materials***. Plaintiffs then claim that Zumba transmits "even more detailed Private Video Information to Meta from this page"—alleging that if an individual selects the "On Demand" option that is transmitted to Meta. [*Id* at ¶¶ 97, 99]. Again, even taking these allegations as true, transmission of whether an individual selected to take the "On Demand" training course **does not include the disclosure of any *specific video materials***. Plaintiffs then allege that during the check-out flow, "users purchasing an on-demand training course are prompted to enter their name, address and billing information. Upon clicking 'Complete Registration,' Zumba sends the fact that the consumer purchased the on-demand video materials, as well as their user's FID, and the URL of this webpage." [*Id* at ¶ 100]. Again, even taking this allegation as true, Plaintiffs **do not allege any specific video materials are disclosed or that the URL referenced contains the title of any specific video materials (including the webpage that corresponds with such URL)**.

Plaintiffs further claim that when the purchase of an "on-demand video instructor course" is complete, the customer is routed to a new webpage that says "YOU'RE ALL SET," and this purportedly "prominently displays: (1) the name of the individual who purchased the on-demand video materials and (2) the name of the specific video materials that person purchased." [*Id* at ¶ 101]. However, this allegation is directly contradicted and negated by Plaintiffs' own superimposed image on page 29 of the Second Amended Complaint, which clearly shows that no specific video materials are identified—instead only the name of the general training course is displayed:




Plaintiffs then claim the URLs of these webpages (<u>which, again, do not contain the title of any specific video materials or include any videos themselves</u>) are transmitted to third-parties. [*Id* at ¶ 102]. Plaintiffs allege that any person with the URL for the webpage above can then enter the URL into an internet browser, reach the page, and determine exactly what video materials the consumer requested or obtained." [*Id* at ¶ 103]. However, as shown by the representative exemplar above, all that is shown is that the on-demand Zumba Basic 1 **training course** was requested or obtained—**there is no identification of any *specific* video materials whatsoever and there are no videos on the referenced webpage**. *See also* [*id*. at ¶¶ 126, 139, 155, 170, 184, 200, 216 (claiming the title of the "video training course" is disclosed to—in addition to Meta—Pinterest, Google, HubSpot, NextRoll, TradeDesk, and Mountain)]. **Indeed, Plaintiffs' own allegations confirm that only the title of the on-demand training course itself is transmitted and <u>not</u> the title of any *specific* video materials or any URL for a page containing a video.**

**LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Bemesderfer v. United Parcel Service, Inc.*, No. 6:22-cv-270-PGB-EJK, 2023 6978750, at *1 (M.D. Fla. Apr. 24, 2023) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)). Judgment on the pleadings is proper when the claims fail as a matter of law regardless of any factual disputes. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015).

**MEMORANDUM OF LAW**

The VPPA was intended to protect against ***specific*** *disclosures of* ***specific*** *video content*. In this case, the purported disclosed information is not PII, as it does not identify "specific video materials or services" requested, purchased, obtained, or accessed by Plaintiffs or any of the putative class members. The VPPA does not prohibit the disclosure of "personally identifiable information" in the abstract. Rather, it bars the disclosure of "personally identifiable information" that "identifies a [customer] as having requested or obtained ***specific video materials or services*** from [the] video tape service provider." 18 U.S.C. § 2710(a)(3),(b)(1) (Emphasis added). Here, Plaintiffs' allegations fail to allege Zumba disclosed PII connecting Plaintiffs to any requested or obtained *specific video materials or services*.

To violate the VPPA, there must be a disclosure "connecting" a specific person "to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095. Plaintiffs' allegations do not meet this standard. While Plaintiffs' Second Amended Complaint suggests that Zumba discloses URLs identifying the specific prerecorded video material requested and/or obtained—such a suggestion is directly contradicted by other allegations asserted by Plaintiffs. Notably, while Plaintiffs generally allege that the tracking pixels purportedly installed by Zumba transferred a URL identifying the prerecorded video materials Plaintiffs allegedly obtained or purchased, the specific allegations in the Complaint do not demonstrate the title of any *specific video materials* Plaintiffs (or any putative class members) purportedly obtained or purchased. Nowhere in the Complaint are there any allegations asserted that contain the identity of any *specific* video materials Plaintiffs or any putative class members allegedly requested or obtained. Here, Plaintiffs do not sufficiently allege Zumba disclosed the *specific* titles of any *specific* videos obtained or purchased.

Plaintiffs claim the URLs of purchase confirmation webpages (which, again, do not contain the title of any specific video materials) are transmitted to Meta and other third-parties. Plaintiffs also allege that any person with the URL for the webpage above can then enter the URL into an internet browser, reach the page, and determine exactly what video materials the consumer requested or obtained. However, as shown by Plaintiffs' own superimposed images, all that is shown on the purchase confirmation webpage is that the on-demand Zumba Basic 1 **training course** was requested or obtained—there is no identification of any specific video materials whatsoever.

Plaintiffs' Second Amended Complaint ***only*** demonstrates purported purchase confirmation of access (or a subscription) to an instructor training course containing, among other things, prerecorded videos. The VPPA, however, unambiguously requires disclosure of *specific* video materials. Thus, the information purportedly disclosed by Zumba does not qualify as PII under the VPPA. And because the titles of any actual videos is not transmitted, nothing about the purported disclosure of information contains "the identity of 'specific video materials'" that Plaintiffs allegedly "requested or obtained." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095.

*Benson v. SimpleNursing, LLC*, No. 24-1118-GBW, 2026 WL 1045614 (D. Del. Apr. 17, 2026), is directly analogous to the instant case. In *Benson*, the plaintiff initiated a lawsuit against the defendant for purported violation of the VPPA. The plaintiff alleged the defendant operated a website on which it sold subscriptions to access prerecorded standardized examination preparation videos for nursing exams. *Id*. at *1. To that end, the defendant programmed its website to include a Meta pixel and TikTok pixel, and when an individual purchased a subscription, the defendant automatically transmitted that individuals unique Facebook Identification Number to Meta, and the individual's cell phone number and device information to TikTok. *Id*. The plaintiff's putative class action complaint thus alleged that the defendant's disclosure of customers' PII to Meta and TikTok through their respective pixels violated the VPPA. *Id*. The defendant then moved to dismiss the plaintiff's complaint, in part, arguing (as does Zumba in the instant case) the information transmitted by the defendant did not qualify as PII under the VPPA.

As the District Court for Delaware noted, the specific dispute between the parties was as to the phrase "specific video materials or services" in the VPPA. *Id*. at *4. The plaintiff claimed that her purchase of a subscription qualified as a specific video service, whereas the defendant argued (as does Zumba in the instant case) that, to qualify as PII, the specific videos requested by


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

the user must have been disclosed. *Id*. at *4. The District Court for Delaware agreed with the defendant that disclosure of the consumer's **subscription** to video materials on a website does not qualify as a disclosure of PII. *Id*. at *4 ("The Court agrees with SimpleNursing that a specific video—**not just a subscription to access videos**—must be disclosed.") (Emphasis added). As noted by the *SimpleNursing* court, and similar to the present case, there was no disclosure or conveyance of the URL for the webpages of any actual videos. *Id*. Ultimately, the *SimpleNursing* court held that the plaintiff's "mere purchase of a subscription is insufficient to identify her specific video-watching behavior." *Id*. ("If this Court found otherwise, SimpleNursing would violate the VPPA even if [the plaintiff] never accessed a single prerecorded video. That is not the conduct the VPPA protects.").[4]

Indeed, the VPPA does not apply to the disclosure of an alleged subscription purchase or any webpage without video content; instead, the VPPA "unambiguously require[s] disclosure of a specific video." *Id*. at *5. Here, because the Plaintiffs' purported purchase of access (or a subscription) to a prerecorded **training course** does not identify any specific videos purchased, obtained, or accessed, it does not constitute PII under the VPPA. The representative exemplars contained within Plaintiffs' Second Amended Complaint clearly demonstrate that the confirmation webpages subsequent to an individual's purchase of an on-demand instructor training course **do not display the titles of any specific video materials or include any videos themselves**. Zumba previously filed a Motion to Dismiss which was denied by this Court. *See* [ECF No. 23]. Within this Court's Order, this Honorable Court found that "a plaintiff bringing a VPPA claim need not allege that the specific video titles were disclosed; rather, allegations that defendant disclosed a URL to a webpage containing the video that plaintiff obtained is sufficient." [*Id*. at 6]. However, here, Plaintiffs' Second Amended Complaint clearly demonstrates that the webpage to which the disclosed URL directs to **<u>does not contain any video at all</u>**. Thus, Plaintiff's Second Amended Complaint shows that neither the specific video titles nor any videos Plaintiffs purport to have been obtained have been disclosed via the referenced URL.

---

[4] As further stated by the *SimpleNursing* court, the plaintiff's "attempt to characterize the VPPA as broadly covering a subscription providing access to videos fails." *Contrast with Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (disclosing "the name of the video/content"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) (disclosing "each video's URL and name"); *Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1335 (N.D. Ga. 2023) (disclosing the "content name of the video" and the URL).

That said, in *Lovett v. Continued.com, LLC*, No. 1:24-cv-590, 2025 WL 1809719 (S.D. Ohio July 1, 2025), the plaintiff initiated a VPPA action against the defendant, who operated websites through which consumers could, via subscription, access videos, courses, and other continuing educational materials on various topics. *Id*. at *1. The plaintiff claimed that, via her subscription to the defendant's website, and through the use of a tracking pixel, the defendant made an unauthorized disclosure of PII to Meta. *Id*. The *Lovett* court, however, found the plaintiff had not alleged facts giving rise to a reasonable inference that the defendant disclosed the URL or name of the videos the plaintiff accessed by way of her subscription. *Id*. at *3 ("If [the defendant] divulged only [the plaintiff's] website subscription, as she alleges, that alone 'does not indicate that [the plaintiff] requested or obtained specific video materials' on [the defendant's] website"—instead, it merely indicated that she "*could* access videos on the website" and that is not sufficient to bring a plaintiff's claims within the VPPA's reach.).

Here, there are no allegations contained within Plaintiffs' Second Amended Complaint suggesting Zumba transmitted any information identifying the *specific videos* Plaintiffs (or any putative class members) purchased, obtained, or accessed. To that end, obtaining access to video materials or services alone is not covered by the VPPA. *Contrast with Guereca v. Motorsport.tv Digital, LLC*, No. 1:24-cv-24066 (S.D. Fla. Feb. 19, 2025) (disclosure of "FIDS alongside the URLs and *titles of videos*" accessed "constitute[d] PII under the VPPA"); *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Ga. 2025) (holding that allegations were sufficient to state a claim under the VPPA when a plaintiff alleged that the defendant "disclosed his Facebook User ID and his email address, along with the event data, like the title of the videos viewed").

Plaintiffs' own allegations establish what was purchased was a subscription/access to a "training course" and not specific video material. *See* [ECF No. 45 at ¶¶ 232, 233, 236]. Again, the disclosure of a subscription/access to an on-demand training course on Zumba's website or the URL for the purchase confirmation page is not the same as disclosing specific video materials purchased, obtained, or accessed. Indeed, Plaintiffs have not alleged the actual title of any specific video (or any URL containing the same) they purported to have purchased, obtained, or accessed was disclosed by Zumba. To allege Zumba's purported disclosure of Plaintiffs' PII violated the VPPA, Plaintiffs must allege facts establishing the ***specific*** video materials Plaintiffs accessed or obtained through their alleged subscription on Zumba's website, not the mere disclosure of the purchase confirmation for such access. Simply put, Plaintiffs' entire lawsuit is based on its

allegations of a purported disclosure of Plaintiffs having purportedly purchased access (or a subscription) to prerecorded video materials by way of an on-demand instructor training course.

The United States District Court for the Southern District of New York also recently dismissed a VPPA claim where the plaintiff alleged that the Facebook pixel on the defendant's website transmitted information indicating that he "requested or obtained" specific videos on that website but where the name of the webpage allegedly sent to Facebook was not the name of any specific video on that page. *See Martin v. Meredith Corporation*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023). The *Martin* court concluded that "disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page" and, so, dismissed the plaintiff's complaint for failure to state a claim under the VPPA. *Id*. at 284-85.

Notably, in the present case, the confirmation page URLs allegedly transmitted <u>do not contain the name of any specific videos nor does the actual webpage itself contain any videos (nor the titles to the same)</u>. *See id*. at 285 ("[S]ending a URL of a [] webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services."). The basis for Plaintiffs' claims is Zumba's purported use of tracking pixels; however, Plaintiffs' Complaint concedes the pixels only send some type of consumer identification and the URL of the "YOU'RE ALL SET" page. To that end, simply disclosing the name/URL of a webpage and an associated, for example FID/Pinterest ID, "leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; [and] (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor . . . ." *See Martin*, 657 F.Supp.3d at 284. Simply disclosing to a third party the URL/title of the purchase confirmation webpage does not reveal the title of a video on the page itself—especially here, where the "YOU'RE ALL SET" webpages do not contain any videos or video titles.

## <u>CONCLUSION</u>

In this case, Plaintiffs claim they purchased or subscribed for "access" to prerecorded video materials on Zumba's website, and that Zumba unlawfully transmitted to third parties URLs containing the titles of the specific prerecorded video materials its customers viewed after allegedly purchasing subscriptions to Zumba's website coupled with its customers' unique identifiers. However, as demonstrated by Plaintiffs' own allegations and superimposed images,

Zumba did not disclose or convey the titles of any specific video materials and/or a URL for the webpages containing any actual videos (or video titles) to any third parties. That said, the VPPA does not cover the simple disclosure of Plaintiffs' (or any putative class members') purported purchase of access or subscription to video materials on a website—indeed, such information does not qualify as disclosure of PII under the VPPA. As held by the *SimpleNursing* court, to sufficiently plead a claim under the VPPA, Plaintiffs must allege a specific video was disclosed, not just an alleged subscription to access videos. Plaintiffs' allegations of a mere purchase of or subscription to access prerecorded video materials is insufficient to identify any consumer behavior related to specific video materials, as is required to state a VPPA claim. Therefore, Zumba is entitled to judgment on the pleadings.

WHEREFORE, Defendant, Zumba Fitness, LLC, respectfully requests this Honorable Court grant this Motion, holding Defendant is entitled to judgment on the pleadings, along with awarding any and all other relief this Court deems proper in light of the foregoing.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of June 2026, a true and correct copy of the foregoing has been filed and furnished to all counsel of record.

**COLE, SCOTT & KISSANE, P.A.**
Counsel for Defendant, Zumba Fitness, LLC
110 Tower, 110 SE 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
Telephone (954) 703-3720
Facsimile (954) 703-3700
Primary e-mail: barry.postman@csklegal.com
scott.bassman@csklegal.com
matthew.green@csklegal.com

By: s/ Matthew A. Green
BARRY A. POSTMAN
Florida Bar No.: 991856
SCOTT A. BASSMAN
Florida Bar No. 232180
MATTHEW A. GREEN
Florida Bar No.: 1019717