**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CATHERINE KUEPPERS; and WATANYA BROWN, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ZUMBA FITNESS, LLC,

Defendant.

Case No. 24-cv-61983-WPD

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ....... 1

SUMMARY OF COMMON FACTS ....... 2

LEGAL STANDARD ....... 7

ARGUMENT ....... 7

I. The Classes are Ascertainable ....... 8

II. The Classes Satisfy Rule 23(a) ....... 11

A. The Classes are Sufficiently Numerous. ....... 11

B. Several Questions of Law and Fact are Common to the Classes. ....... 12

C. Plaintiffs' Claims are Typical of the Claims of Members of the Classes ....... 13

D. Plaintiffs and Their Counsel are Adequate Representatives of the Classes. ....... 17

III. The Classes Satisfy Rule 23(b)(3) ....... 18

A. Questions Common to Members of the Classes Predominate Over Questions Affecting Only Individual Members ....... 18

B. A Class Action is the Superior Method for Resolving the Claims of the Classes' Members ....... 20

CONCLUSION ....... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003) ....................19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................7

*Cherry v. Dometic Corp.*,
986 F.3d 1296 (11th Cir. 2021) ....................8

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ....................18

*Cox v. American Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986)....................11

*Evans v. U.S. Pipe & Foundry Co.*,
696 F.2d 925 (11th Cir. 1983) ....................11

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)....................13

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ....................17

*In re Netbank, Inc. Sec. Litig.*,
259 F.R.D. 656 (N.D. Ga. 2009)....................6

*Jancik v. WebMD LLC*,
2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ....................10, 11, 13, 14, 17, 20

*Klay v. Humana, Inc.,*
382 F.3d 1241 (11th Cir. 2004) ....................8, 20

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) ....................6

*Shutler v. Citizens Disability LLC*,
347 F.R.D. 663, 671 (S.D. Fla. 2024)....................11

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 4006661 (S.D. Fla. Mar. 16, 2016)....................6

*Turner v. Beneficial Corp.*,
242 F.3d 1023 (11th Cir. 2001) ....................6

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................11

*Weaver v. Green Sols. of Fla. LLC*, No. 6:23-CV-2059,
Report and Recommendation to Grant Motion for Class Certification
(Dkt. 45) (M.D. Fla. May 5, 2025) ....................10

*Weaver v. Green Sols. of Fla. LLC*,
2025 WL 1809827 (M.D. Fla. July 1, 2025) ....................10

*Williams v. Mohawk Indus., Inc.,*
568 F.3d 1350 (11th Cir. 2009) ....................12, 13, 17

**STATUTES**

18 U.S.C. § 2710, *et. seq.* ("Video Privacy Protection Act") .................... *passim*

**RULES**

Fed. R. Civ. P. 23(a) .................... *passim*

Fed. R. Civ. P. 23(b)(3).................... *passim*

Fed. R. Civ. P. 23(g) ....................1

Plaintiffs Catie Kueppers and Watanya Brown respectfully submit this motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) and for appointment of their counsel as class counsel pursuant to Rule 23(g) (the "Motion").

**INTRODUCTION**

Plaintiffs seek certification of a Class and three Subclasses (collectively, the "Classes") comprised of 5,058 persons whose first and last names, along with information identifying them as purchasers of the prerecorded video-based "online" (or "on-demand") version of the Zumba Basic 1 training course, were disclosed by Defendant to third-party advertising companies during the two-year period preceding the filing of this action. Based on the brazen nature of Defendant's disclosures, Plaintiffs and their expert have already identified, by first and last name, each person whose information was transmitted to and received by each of the third-party advertising companies in question. In fact, together with this Motion, Plaintiffs submit a list of the names of all the Classes' members.

This case is tailor made for class certification. The success or failure of Plaintiffs' and all Class members' claims for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), will turn on common contentions of law and fact, the truth or falsity of which can be readily determined in one stroke on a class-wide basis. Does a first and last name "identify a person" within the meaning of the statute? Is the "online" (or "on-demand") version of Zumba Basic 1 a "video material or service" under the statute? Did Defendant disclose, via the tracking technologies it chose to install on its website, information identifying Plaintiffs and Class members as purchasers of the "online" (or "on-demand") version of Zumba Basic 1 to third parties? If these questions are all answered in the affirmative, Plaintiffs' and Class members' VPPA claims will all succeed. If any of them is answered in the negative, Plaintiffs' and Class members' claims will all fail. These central, common questions predominate over any issues affecting only individual members of the Classes. Plaintiffs' claims are typical of the claims of the Classes they seek to represent, and they and their counsel will adequately represent the Classes' interests. And given that Plaintiffs have already determined the Classes' membership, the Classes are undoubtedly ascertainable and a class action is superior to other methods of resolving Class members' claims.

Class certification is so obviously appropriate here that, earlier in the case, Plaintiffs' counsel proposed to Defendant's counsel that the parties stipulate to it, to avoid unnecessarily wasting the parties' and the Court's resources with a contested motion. Although Defendant rejected the proposal, no reasons for the rejection were provided, and Plaintiffs have to date been unable to discern any legitimate basis for Defendant to oppose this Motion.

The proposed Class and Subclasses satisfy all requirements for certification pursuant to Rule 23(a) and (b)(3), and Plaintiffs' counsel satisfy the requirements for appointment of class counsel pursuant Rule 23(g). The Court should certify the proposed Class and Subclasses, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel.

## SUMMARY OF COMMON FACTS

Between October 22, 2022, and October 22, 2024 (the "Relevant Time Period"), *see* Second Amended Class Action Complaint ("SAC"), ECF No. 45, ¶ 223, Defendant owned and operated the website Zumba.com (the "Website"). *See* Declaration of Frank S. Hedin ("Hedin Decl."), Ex. 3 ("Valdes Dep.") at 9:21-25. During the Relevant Time Period, Defendant sold products and services on the Website that, *inter alia*, enabled consumers to obtain the training necessary to teach "Zumba" classes to others. *Id*. at 15:23-25. One such offering on the Website during the Relevant Time Period was called Zumba Basic 1, an introductory-level Zumba instructor training course. *Id*. at 15:23-25, 16:10-12, 41:7-15.

During the Relevant Time Period, Zumba Basic 1 was sold on the Website in three formats: (1) an in-person (or "live") version, where a purchaser physically attends a live training event at a designated time and place; (2) a livestream (or "virtual") version, where a purchaser tunes into a video feed of a live training event being broadcast on the "Zoom" platform; and (3) an on-demand (or "online") version (the "ZB1 OD Version"), where a purchaser is provided access to 16 "modules," each containing videos depicting a prerecorded training event that may be viewed by the purchaser at his or her leisure. *See id*. at 42:4-7, 42:24-25, 43:1-3, 44:11-17, 44:20-25, 45:1-14, 43:4-7, 41:7-15, 47:11-17; Hedin Decl., Ex. 4 (screenshots of the modules).

Plaintiffs and Class members all purchased the ZB1 OD Version in the same manner, from the same Website, during the same Relevant Time Period. *See* Valdes Dep. at 42:17-25, 43:1-25, 44:1-9. [redacted]

[redacted]. Valdes Dep. at 47:11-17, 64:9-12, 65:13-16; Hedin Decl., Ex. 6 ([redacted]

Every order of the ZB1 OD Version placed on the Website during the Relevant Time Period, including each of the ZB1 OD Version orders placed by Plaintiffs and Class members, was assigned a unique "[redacted]" ("MCN") [redacted] *See* Hedin Decl., Ex. 8 (Tab 4, "Updated On Demand Training Back"); Weir Decl. at ¶ 42.[1]

Whenever a person purchased the ZB1 OD Version on the Website during the Relevant Time Period, including when each of the Plaintiffs and Class members purchased the ZB1 OD Version, the purchaser was immediately directed to an "order confirmation page" on Defendant's Website. *Id.* at 70:13-16. [redacted] *Id.* at 76:14-78:25; Hedin Decl., Ex. 1, Declaration of Colin Weir ("Weir Decl.") at ¶ 25; *see also* Weir Decl., Ex. C (presenting the ZB1 OD Version Order URLs of thousands of ZB1 OD Version "order confirmation pages"); Valdes Dep. at 139:7-10.

---

1 [redacted] Valdes Dep. at 136:4-25, 137:1-14; Hedin Decl., Ex. 5 (slipsheet for Exhibit 36 to the Valdes deposition provided by the court reporter which contains a link to the spreadsheet utilized in the deposition and produced by Defendant in discovery which [redacted] Ex. 8 (the same spreadsheet accessible at the link in Exhibit 5 to the Hedin Declaration as produced by Defendant to Plaintiffs' Counsel) (see Tab 4, [redacted]").

During the Relevant Time Period, the ZB1 OD Version Order URLs to which persons were sent upon purchasing the ZB1 OD Version (including the ZB1 OD Version Order URLs to which Plaintiffs and all Class members were sent upon making their purchases) uniformly displayed "order confirmation pages" containing the same categories of information. During the Relevant Time Period, each [redacted] Valdes Dep. at 74:11-76:13 (describing Exhibit 29 to the Valdes deposition as a representative sample of the ZB1 OD Version "order confirmation pages" uniformly generated for every ZB1 OD Version purchaser during the Relevant Time Period); Hedin Decl., Ex. 23 (attaching Exhibit 29 from the Valdes deposition); Hedin Decl., Ex. 9 (stipulation between Frank S. Hedin and Matthew Green) (the "Stipulation") (see Exhibit 2 to the Stipulation, providing a representative sample of the ZB1 OD Version "order confirmation pages" as they uniformly existed during the Relevant Time Period).[2]

[redacted]

[2] [redacted]

[redacted] Valdes Dep. at 131:9-18; *see also id*. at 131:20-23 ([redacted] *See id.*

During the Relevant Time Period, Defendant, as part of its overall digital marketing strategy[3], installed and programmed tracking technologies on the Website to automatically transmit certain data to one or more third-party advertising companies, including [redacted] when certain events occurred. *See generally* Valdes Dep. 80-120. One such event pre-programmed to trigger an automatic transmission of data to Third-Party Advertisers was a person's purchase of the ZB1 OD Version from the Website. *See* Valdes Dep. at 80:9-11, 80:21-25 – 81:1, 82:1-2 ([redacted] *id*. at 102:8-11 [redacted]); *id*. at 108:12-19 ([redacted] *id*. at 119:8-12, 120:25-121:1-3 [redacted] Thus, during the Relevant Time Period, whenever a person purchased the ZB1 OD Version from the Website, the Website immediately transmitted the ZB1 OD Version Order URL of the purchaser's ZB1 OD Version "order confirmation page" to one or more Third-Party Advertiser. *See id.*

---

[3] To advertise its products and services, Defendant engaged in [redacted] *Id*. at 17:7-24. During the Relevant Time Period, Defendant used five separate [redacted] *Id*. at 35:5-12, 115:3-7.

All told, during the Relevant Time Period, Defendant transmitted to the [redacted], *inter alia*, purchasers' first and last names and information identifying them as purchasers of the ZB1 OD Version. *See* Weir. Supp. Decl. at ¶ 40 & *id.*, Ex. D; Hedin Decl., Exs. 15-19 (containing the data produced by each of the Third-Party Advertisers).[5]

The Class this Motion seeks to certify is thus comprised of the 5,058 purchasers of the ZB1 OD Version whose ZB1 OD Version Order URLs, corresponding to ZB1 OD Version "online confirmation pages" containing their first and last names and identifying them as ZB1 OD Version purchasers, were transmitted to Third-Party Advertisers during the Relevant Time Period, i.e., between October 22, 2022, and October 22, 2024, as reflected in the records produced by the Third-Party Advertisers. The Subclasses this Motion seeks to certify are each comprised of those Class members whose ZB1 OD Version Order URLs were transmitted to a particular Third-Party Advertiser during the Relevant Time Period, as reflected in the records produced by that Third-Party Advertiser.

---

[4] [redacted]

[5] The list reflecting the 5,058 first and last names of ZB1 OD Version purchasers attached as Exhibit D to the June 15, 2026, declaration of Colin Weir (the "Supplemental Weir Declaration" or "Weir Supp. Decl.") was prepared by Mr. Weir by extracting the full names displayed on the ZB1 OD Version "online confirmation pages" that are presently accessible at the ZB1 OD Version Order URLs received by the Third-Party Advertisers via the Website's tracking technologies during the Relevant Time Period. Hedin Decl., Ex. The "order confirmation pages" pertaining to these purchasers are different today than they were during the Relevant Time Period because Defendant, over Plaintiffs' repeated objections, made several changes to the contents and formatting of these pages during the course of these proceedings. *See* Weir Decl. at ¶ 44. Instead of seeking spoliation-based remedies, Plaintiffs' counsel negotiated and signed a stipulation with Defendant's counsel in which Defendant stipulates that [redacted]

## LEGAL STANDARD

To certify a class pursuant to one of Rule 23, a movant must satisfy the requirements of Rule 23(a) and one of Rule 23(b)'s subparts. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 4006661, at *5 (S.D. Fla. Mar. 16, 2016) (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001)).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 663 (N.D. Ga. 2009) (internal citation and quotation marks omitted). Thus, "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage,' and the merits of a suit may be considered 'only to the extent [ ] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at *2 (N.D. Ga. Nov. 28, 2022) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

## ARGUMENT

Plaintiffs Kueppers and Brown seek to certify and represent the following "Class" pursuant to Rule 23(b)(3):

> All natural persons in the United States who purchased the ZB1 OD Version from the Website, and whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of one or more Third-Party Advertisers, between October 22, 2022, and October 22, 2024.

Additionally, Plaintiffs seek certification of three subclasses pursuant to Rules 23(b)(3), each comprised of members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of a particular Third-Party Advertiser. Plaintiff Kueppers seeks to certify and represent a "Meta Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of Meta. Plaintiffs Kueppers and Brown seek to certify and represent a "Pinterest Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation

pages" accessible at ZB1 OD Version Order URLs in the possession of Pinterest. And Plaintiffs Kueppers and Brown seek to certify and represent a "MNTN Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of MNTN.

The Meta Disclosure Subclass, Pinterest Disclosure Subclass, and MNTN Disclosure Subclass are referred to herein collectively as the "Subclasses," and the Class and the Subclasses are referred to herein collectively at times as the "Classes."

Each of the Classes is "ascertainable," satisfies the requirements of Rules 23(a) and (b)(3), and should be certified. Plaintiffs should be appointed class representatives, and their counsel should be appointed class counsel. This Motion should be granted.

## I. <u>The Classes are Ascertainable</u>

As a threshold matter, the Classes are "ascertainable" because they are "adequately defined such that [their] membership[s] [are] capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021).[6]

The Classes are defined to include persons (1) who purchased the ZB1 OD Version from the Website between October 22, 2022, and October 22, 2024; and (2) whose first and last name appear on "order confirmation pages" accessible at ZB1 OD Version Order URLs possessed by Third-Party Advertisers (or, in the case of the Subclasses, possessed by a particular Third-Party Advertiser). Both criteria are objective and make for straightforward membership determinations.

The first criterion is satisfied if a person appears in Defendant's records as someone who purchased the ZB1 OD Version between October 22, 2022, and October 22, 2024. Defendant maintains – and produced to Plaintiffs in discovery – [redacted] Hedin Decl., Ex. 9 (the Stipulation referring to the file entitled "On Demand Training and

[6] "Administrative feasibility is not a requirement for certification under Rule 23." *Id.* at 1304 ("So administrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification." (citing *Klay v. Humana, Inc.,* 382 F.3d 1241, 1272 (11th Cir. 2004)). But even if it were, the administrative feasibility of identifying the Classes' members is not an issue here, because Plaintiffs have already identified them.

Class Information (Produced 10.13.2025).xlsx.", which is attached as Exhibit 8 to the Hedin Declaration); *see also* Valdes Dep. at 136:4-25, 137:1-14. Thus, a person satisfies the first criterion for membership in the Class if his or her name appears in these records.

The second criterion is satisfied if a ZB1 OD Version Order URL, corresponding to an "order confirmation page" containing the first and last name of a U.S.-based ZB1 OD Version purchaser (i.e., of a person who satisfied the first criterion), appears in the records produced by the Third-Party Advertisers in response to Plaintiffs' subpoenas (or, in the case of the Subclasses, in the records produced by a particular Third-Party Advertiser in response to Plaintiffs' subpoena). This, too, is an objective inquiry. The Third-Party Advertisers produced in discovery records [redacted]. *See* Hedin Decl., Exs. 10 - 14 ([redacted]).[7] Thus, a person satisfies the second criterion for membership in the Class if a ZB1 OD Version Order URL, corresponding to an "online confirmation page" containing his or her first and last name, appears in the records of one or more of the Third-Party Advertisers.

Thanks to the records produced by Defendant and the Third-Party Advertisers in discovery, the Classes' memberships are not just "capable of determination" – *they have already been determined*. *See Cherry*, 986 F.3d at 1302. The ZB1 OD Version purchaser records produced by Defendant in discovery reflect the names and MCNs of 9,160 U.S.-based purchasers of the ZB1

---

[7] [redacted]

OD Version from the Website between October 22, 2022, and October 22, 2024. Hedin Decl., Ex. 8 (see Tab 4, "Updated On Demand Training Back"); Stipulation at 1. Of the 9,160 ZB1 OD Version Order URLs to which these 9,160 persons were sent upon purchasing the ZB1 OD Version, 5,058 of them appear in the records of Third-Party Advertisers and direct to "online confirmation pages" containing the full names of the purchasers (and other details about their purchases). Weir Supp. Decl. at ¶ 40 & Exhibit D. Thus, the list of 5,058 persons attached as Exhibit D to the Supplemental Weir Declaration contains the full names of all persons who purchased the ZB1 OD Version on the Website between October 22, 2022, and October 22, 2024 (as reflected by Defendant's records), and whose ZB1 OD Version Order URL (corresponding to an "order confirmation page" containing the person's first and last name) was transmitted to and received by, and is thus in the possession of, one or more of the Third-Party Advertisers (as reflected by the records of the data transmissions they received from Defendant via the Website's tracking technologies). These 5,058 persons are the members of the Class.

The members of each Subclass are those Class members whose ZB1 OD Version Order URLs were found in a particular Third-Party Advertiser's records (and were thus transmitted to and received by that Third-Party Advertiser via the tracking technologies on the Website), as also specified in the Supplement Weir Declaration and Exhibit D thereto. *See* Weir. Supp. Decl. at ¶¶ 42-43. 3,902 Class members' ZB1 OD Version Order URLs were found in Pinterest's records, 2,669 Class members' ZB1 OD Version Order URLs were found in MNTN's records, and 1,576 Class members' ZB1 OD Version Order URLs were found in Meta's records. *Id.* at ¶ 43. There are thus 3,902 members of the Pinterest Disclosure Subclass, 2,669 members of the MNTN Disclosure Subclass, and 1,576 members of the Meta Disclosure Subclass.

Notably, the Northern District of Georgia recently granted class certification in a similar VPPA case, also involving disclosures made via website tracking technologies, where the class was defined by criteria similar to the criteria used to define the Classes here. *See, e.g., Jancik*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (certifying class of "[a]ll persons in the United States who, from February 17, 2020 through the date on which class notice is disseminated, had the same email address associated with a subscription to webmd.com and a Facebook account, and for whom there is associated Event Data in the possession of Meta Platforms, Inc. showing their video-

viewing behavior on webmd.com," and noting that the class is ascertainable because it "is specific and relies on criteria that can be objectively determined"). This Court should do the same.

The Classes are objectively defined and clearly "ascertainable." *See, e.g., Weaver v. Green Sols. of Fla. LLC*, No. 6:23-CV-2059, Dkt. 45 at 10 (M.D. Fla. May 5, 2025) (finding class ascertainable in Telephone Consumer Protection Act class action where the plaintiff's expert attached a list of 1,702 unique phone numbers that received the calls in question and thus belonged to the members of the proposed class)[8], *report and recommendation adopted*, 2025 WL 1809827, at *1 (M.D. Fla. July 1, 2025).

**II. <u>The Classes Satisfy Rule 23(a)</u>**

Each of the Classes also satisfies Rule 23(a)'s requirements – namely, that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

**A. The Classes are Sufficiently Numerous.**

First, each of the Classes satisfies the numerosity requirement of Rule 23(a)(1).

To establish numerosity, a movant must show that joinder of all members of the class would be "impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (close calls should be decided "in favor of" finding numerosity satisfied).

In this case, as explained above, there are 5,058 members of the Class and 3902 members of the Pinterest Disclosure Subclass, 2,669 members of the MNTN Disclosure Subclass, and 1,576 members of the Meta Disclosure Subclass. Weir. Supp. Decl. at ¶¶ 40-43 & *id.*, Ex. D. Because there are enough members of each of the Classes to render joinder impracticable, each of the Classes satisfies the numerosity requirement of Rule 23(a)(1). *See Cox*, 784 F.2d at 1553; *see*

---

[8] This Report and Recommendation is not available on WestLaw and is therefore included as Exhibit 24 to the Hedin Declaration for the convenience of the Court. *See* Hedin Decl., Ex. 24.

*also, e.g.*, *Shutler v. Citizens Disability LLC*, 347 F.R.D. 663, 671 (S.D. Fla. 2024) (numerosity satisfied where there were "more than 100 people" in the proposed class); *Jancik*, 2025 WL 560705 at *6 (finding numerosity satisfied in a VPPA pixel tracking case).

**B. Several Questions of Law and Fact are Common to the Classes.**

Second, the Classes satisfy the commonality requirement of Rule 23(a)(2). *See* Fed. R. Civ. P. 23(a)(2) ("there are questions of law or fact common to the class").

Commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks and citation omitted). The class members "claims must depend upon a common contention . . . [which] must be of such a nature that it is capable of classwide resolution—[meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This is a "low hurdle" and a plaintiff need only identify "one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355-56 (11th Cir. 2009) (internal citations and quotation marks omitted).

In this case, the Class members' claims depend on several common contentions of law and fact, the resolution of which will determine, in one stroke, the success or failure of all their claims. These common contentions of law and fact include:

(1) that a person who purchased the ZB1 OD Version from Defendant on the Website is a "consumer" within the meaning of the VPPA, 18 U.S.C. § 2710(a)(1);

(2) that the ZB1 OD Version, containing 16 "modules" each comprised of prerecorded videos, is a "video material[] or service," 18 U.S.C. § 2710(a)(3);

(3) that the ZB1 OD Version is "audio visual material[]" that is "similar" to a "prerecorded video cassette tape[]," and that Defendant is in the business of selling the ZB1 OD Version on the Website and is thus a "video tape service provider," 18 U.S.C. § 2710(a)(4);

(4) that a ZB1 OD Version Order URL was publicly accessible to anyone who possessed it during the Relevant Time Period;

(5) that a first and last name "identifies a person," and that a ZB1 OD Version Order URL (directing to a publicly accessible "order confirmation page" containing a ZB1 OD Version

purchaser's first and last name) is "personally identifiable information," 18 U.S.C. § 2710(a)(3);

(6) that a ZB1 OD Version Order URL appearing in the records produced by a Third-Party Advertiser in discovery was transmitted to and received by the Third-Party Advertiser via a tracking technology installed by Defendant on the Website during the Relevant Time Period; and

(7) that Defendant's knowing disclosure of a ZB1 OD Version purchaser's ZB1 OD Version Order URL to a Third-Party Advertiser, during the Relevant Time Period, violated the VPPA and entitles the purchaser to an award of liquidated damages of $2,500, *see id.* § 2710(b)(1), (c)(2).

Because the truth or falsity of each of these contentions will resolve an issue central to all Class members' claims, the commonality requirement of Rule 23(a)(2) is satisfied. *See, e.g.*, *Jancik*, 2025 WL 560705 at *7 (commonality satisfied by similarly defined class of VPPA claimants); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574-585 (N.D. Cal. 2025) (finding commonality satisfied for several claims premised on allegations that a menstrual tracking application disclosed personal information via third-party tracking technologies, including common questions such as "Was private information transmitted to Google and Meta?").

**C. Plaintiffs' Claims are Typical of the Claims of Members of the Classes.**

Third, Plaintiffs' claims are typical of the claims of the members of the Classes. Fed. R. Civ. P. 23(a)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"). The Eleventh Circuit has explained that "[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1356-57 (internal quotation marks and citations omitted). It further explained: "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." *Id.*

The claims of Plaintiffs are typical of the claims of the members of the Class in that both Plaintiffs, like all members of the Class, purchased the same prerecorded video material or service (the ZB1 OD Version) from the same Website, and had their ZB1 OD Version Order URLs,

directing to "order confirmation pages" containing their first and last names (as well as information identifying them as ZB1 OD Version purchasers), transmitted to and received by Third-Party Advertisers (as determined by the presence of their ZB1 OD Version Order URLs, which directed to "order confirmation pages" containing their first and last names, in the records of Third-Party Advertisers), between October 22, 2022, and October 22, 2024.

Specifically, both Plaintiffs purchased the ZB1 OD Version from Defendant on the Website during the Relevant Time Period, as reflected in the records produced by Defendant in discovery containing the first and last names, purchase dates, and MCNs of all U.S.-based ZB1 OD Version purchasers during the Relevant Time Period. Hedin Decl., Ex. 8 (Tab 4, "Updated On Demand Training Back"); Valdes Dep. at 140:6-11. Defendant's records show that Plaintiff Kueppers purchased the ZB1 OD Version from the Website on November 14, 2022, and her purchase was assigned MCN B200-CMA-20221114162532, and that Plaintiff Brown purchased the ZB1 OD Version from the Website on February 28, 2024, and her purchase was assigned B200-WBR-20240228225626:

| | | | | |
|---|---|---|---|---|
| Catie | Kueppers | US | 2022-11-14 16:25:48 | B200-CMA-20221114162532 |

| | | | | |
|---|---|---|---|---|
| Watanya | Brown | US | 2024-02-28 22:56:41 | B200-WBR-20240228225626 |

*See* Hedin Decl., Ex. 8 (Tab 4, "Updated On Demand Training Back"). The same categories of information concerning all other Class members' ZB1 OD Version purchases, from the same Website, during the same time period, are also reflected in the same set of records produced by Defendant in discovery. *Id.*; *see also* Valdes Dep. at 140:12-17.

Moreover, a ZB1 OD Version Order URL containing the MCN of Plaintiff Kueppers's purchase of the ZB1 OD Version (https://www.zumba.com/en-US/training/B200-CMA-20221114162532/online_confirmation) appears in the records produced by Meta, Pinterest, and MNTN and was thus sent to and received by Meta, Pinterest, and MNTN via the tracking technologies installed on the Website. Weir Decl. at ¶ 42 ("Plaintiff Kueppers had the URL to her online confirmation [] webpage transmitted to Mountain, Meta and Pinterest."). A ZB1 OD Version Order URL containing the MCN of Plaintiff Brown's purchase of the ZB1 OD Version (https://www.zumba.com/en-US/training/B200-WBR-20240228225626/online_confirmation)

appears in the records produced by Pinterest and MNTN and was thus sent to and received by Pinterest and MNTN via the tracking technologies installed on the Website. *Id.* at ¶ 43 ("Plaintiff Brown had the URL to her online confirmation [] webpage transmitted to Mountain and Pinterest"). A ZB1 OD Version Order URL containing the MCN of each of the Classes' members likewise appears in at least one of the Third-Party Advertisers' records (in the case of the Class), and a ZB1 OD Version Order URL containing the MCN of each of the Subclasses' members appears in the records of a particular Third-Party Advertiser (Meta in the case of the Meta Disclosure Subclass, MNTN in the case of the MNTN Disclosure Subclass, and Pinterest in the case of the Pinterest Disclosure Subclass). Weir. Supp. Decl. at ¶ 43 & Exhibit D.

Finally, the "order confirmation pages" accessible at Plaintiffs' ZB1 OD Version Order URLs, like the "order confirmation pages" accessible at all of the Class members' ZB1 OD Version Order URLs, contained Plaintiffs' first and last names (as well as information identifying them as purchasers of the ZB1 OD Version (i.e., of the prerecorded video-based "online" (or "on-demand") version of "Zumba Basic 1")), as depicted in pertinent part below:






Weir Decl. at ¶¶ 42-43 ; *see also* Valdes Dep. at 129:13 – 130:12; *see also id*. at 135:2-6 ("Q This is the online confirmation page to which Ms. Brown would have been sent after purchasing Zumba Basic 1 On-Demand on February 28th of 2024, right? A: Yes"); *id.* at 130:5-12 (similar for Kueppers). "Order confirmation pages" just like those shown above, each containing, *inter alia*, a first and last name, were likewise accessible at each Class member's ZB1 OD Version Order URL during the Relevant Time Period. Valdes Dep. at 74:11-76:13; Hedin Decl., Ex. 9 (the Stipulation). The first and last names appearing on Class members' "order confirmation pages" were extracted by Mr. Weir and compiled in the proposed Class list reflected in Exhibit D to the Supplemental Weir Declaration. Weir. Supp. Decl. at ¶¶ 42-43.

Plaintiffs allege, individually and on behalf of the members of the Class, that Defendant violated the VPPA by transmitting, via the tracking technologies on its Website, Plaintiffs' and Class members' ZB1 OD Version Order URLs to the Third-Party Advertisers, thereby revealing to the Third-Party Advertisers information that identified Plaintiffs and Class members, by their first and last names, as persons who had requested and obtained the prerecorded video-based version of Zumba Basic 1 (i.e., the ZB1 OD Version) from Defendant.

Because Plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of all members of the Class (and Subclasses), the typicality requirement of Rule 23(a)(3) is satisfied. *See Williams*, 568 F.3d at 1356-57; *Jancik*, 2025 WL 560705 at *8.

**D. Plaintiffs and Their Counsel are Adequate Representatives of the Classes.**

Finally, the proposed Classes satisfy the adequacy requirement of Rule 23(a)(4) because the representatives and counsel proposed to represent them "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

"To determine whether the adequacy requirement is met, [a court asks]: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021) (internal quotation marks and citation omitted).

Both Plaintiffs and their counsel satisfy this standard. Ms. Kueppers and Ms. Brown have each retained competent counsel, assisted with counsel's investigation, reviewed and authorized the filing of legal documents, responded to discovery, traveled to and sat for lengthy depositions, and kept in regular contact with their counsel. *See generally* Hedin Decl., Ex. 20 (the "Kueppers Decl."); *Id.*, Ex. 21 (the "Brown Decl."). Plaintiffs have placed the interests of the Classes above their own, and are committed to doing whatever is necessary to protect the Classes' interests going forward, including by attending a trial. Kueppers Decl. at ¶¶ 6-7; Brown Decl. at ¶¶ 6-7. Neither Plaintiff has any interests antagonistic to or otherwise in conflict with the interests of any members of the Classes. Kueppers Decl. at ¶¶ 6-7; Brown Decl. at ¶¶ 6-7.

Nor do the interests of Plaintiffs' counsel conflict with the interests of any unnamed Class members. Hedin Decl. at ¶ 9. Moreover, Plaintiffs' counsel at Hedin LLP are well qualified to represent the Classes in this matter, having successfully prosecuted many similar data-privacy class actions in the past. *See id.* at ¶¶ 5-8 & Ex. 22 (Hedin LLP Firm Resume). Hedin LLP has expended significant time and resources, monetary and otherwise, prosecuting this matter to date, and will continue to devote whatever resources are necessary to effectively prosecute this litigation on behalf of the Classes going forward. *Id.* at ¶ 9.

Accordingly, the Rule 23(a) requirements are satisfied as to each of the Classes.

## III. The Classes Satisfy Rule 23(b)(3)

Certification of a class pursuant to Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Classes satisfy both requirements.

### A. Questions Common to Members of the Classes Predominate Over Questions Affecting Only Individual Members.

First, issues common to the Classes' members predominate over any issues affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3).

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief, but common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (internal quotation marks, alterations, and citations omitted).

In this case, resolving a handful of common factual and legal issues will dictate both Defendant's liability to every Class member and every Class member's entitlement to relief, without presenting any issues affecting only individual Class members. To establish a defendant's liability for damages under the VPPA, a plaintiff must demonstrate that she is a "consumer" and the defendant is a "video tape service provider," and that the defendant "knowingly disclosed" her "personally identifiable information" to a third party.[9] *See* 18 U.S.C. § 2710(b)(1). Thus, as previously discussed, the success or failure of all Class members' claims will turn on a handful of common contentions of law and fact – *e.g.*, that a purchaser of the ZB1 OD Version from Defendant on the Website is a "consumer," that Defendant is in the business of selling the ZB1

[9] A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider," 18 U.S.C. § 2710(a)(1), and a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

OD Version on the Website and is thus a "video tape service provider," that a ZB1 OD Version Order URL is "personally identifiable information," and that Defendant disclosed a ZB1 OD Version Order URL by transmitting it to a Third-Party Advertiser via a tracking technology it chose to install on its Website – the truth or falsity of which are capable of class-wide resolution in one stroke, with common proof. If these common contentions are all determined to be true, Defendant will be liable to all Class members and all Class members will be entitled to the same monetary relief.[10] If any of them is determined to be false, Defendant will not be liable to any Class member and no Class member will be entitled to monetary relief. And given the systematic, uniform nature of both the information Defendant disclosed and the manner in which Defendant disclosed it, along with the comprehensive nature of the records produced by the Third-Party Advertisers in receipt of Defendant's disclosures, there are no issues affecting only individual members of the Class – and there is no individualized proof that will be necessary to resolve any of their claims – much less any such individualized issues capable of predominating over the numerous common issues central to the claims of all Class members.

Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied. *See Jancik*, 2025 WL 560705 at *9 (finding common issues predominated in a VPPA class action concerning online tracking technologies because common evidence would show, *inter alia*, whether webmd.com subscribers are "consumers," whether WebMD is a "video tape service provider," and whether the type of data transmitted constitutes "personally identifiable information"); *Torres v. Prudential Fin., Inc.*, No. 22-CV-7465-CRB, 2024 WL 4894289, at *4-*9 (N.D. Cal. Nov. 26, 2024) (holding that common issues predominated in a healthcare privacy case concerning online tracking technologies when common questions could be resolved classwide).

---

[10] Further, while "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate," *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), in this case there are no individualized damages issues given that Plaintiffs explicitly seek in the operative SAC the statutorily authorized sum of $2,500 in liquidated damages for each class member. (SAC ¶ 239 (citing 18 U.S.C. § 2710(c)(2)(A) & Prayer for Relief, Sec. (d) (seeking "an award of $2,500 to each of Plaintiffs and the Class members, as provided by 18 U.S.C. § 2710(c)[.]").

### B. A Class Action is the Superior Method for Resolving the Claims of the Classes' Members.

Finally, a class action is superior to other methods for resolving this case. *See* Fed. R. Civ. P. 23(b)(3) (providing a court may certify a class if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."). "In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269.

Adjudicating this case as a class action is superior to joining thousands of individual actions. Each of the factors listed in Rule 23(b)(3)(A)-(D) indicate that a class action is superior: (1) no Class members have an interest in individually controlling the prosecution of the case given the small sum of damages at stake for each individual claim; (2) there are no other actions pending concerning the same controversy; (3) this is the most logical forum for litigating the claims given that Defendant is headquartered and principally based in this judicial District; and (4) there are no meaningful difficulties in managing this case as a class action, especially since the members of the proposed Classes have already been identified. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Jancik*, 2025 WL 560705 at *9.

## CONCLUSION

For the foregoing reasons, the Court should certify the above-defined Class and Subclasses, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel at Hedin LLP, Frank S. Hedin and Tyler K. Somes, as class counsel.

Date: June 15, 2026

Respectfully submitted,

/s/ *Frank S. Hedin*

Frank Hedin
HEDIN LLP
Florida Bar No. 109698
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

Tyler K. Somes (*pro hac vice*)
HEDIN LLP
1100 15th Street NW, Ste 04-105K
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile: (305) 200-8801
tsomes@hedinllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

*/s/ Frank S. Hedin*