**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CATHERINE KUEPPERS; and WATANYA BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUMBA FITNESS, LLC,<br><br>Defendant. | Case No. 24-cv-61983-WPD |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 54)**

Plaintiffs Catherine Kueppers and Watanya Brown, individually and on behalf of all others similarly situated, respectfully submit this response in opposition to the motion for judgment on the pleadings (ECF No. 54 (the "Motion" or "Mot.")) filed by Defendant Zumba Fitness, LLC.

## INTRODUCTION

In this consumer class action, Plaintiffs allege, and discovery has confirmed, that between October 22, 2022 and October 22, 2024 (the "Relevant Time Period"), Defendant knowingly disclosed the "personally identifiable information" of purchasers of the on-demand (or "online") version of the Zumba Basic 1 training course (the "ZB1 OD Version") to Meta, Pinterest, NextRoll, and MNTN (collectively, the "Third-Party Advertisers"), via tracking technologies that Defendant installed on Zumba.com (the "Website"). Plaintiffs allege, and discovery has confirmed, that the tracking technologies Defendant installed on the Website systematically transmitted the URLs of purchasers' publicly accessible "order confirmation pages" (the "ZB1 OD Version Order URLs") to one or more Third-Party Advertiser, and that each such "order confirmation page" identified a particular person (by first and last name) as a purchaser of the ZB1 OD Version. Plaintiffs allege, and discovery has confirmed, that the ZB1 OD Version sold on the Website throughout the Relevant Time Period contained 16 separate prerecorded videos. The only thing that appears to be in dispute at this point is whether Defendant's transmissions of its customers' ZB1 OD Version Order URLs to the Third-Party Advertisers violated the Video Privacy Protection Act ("VPPA").

In the Motion, Defendant says – over and over again – that its systematic transmission of ZB1 OD Version Order URLs to the Third-Party Advertisers did not violate the VPPA because the ZB1 OD Version does not qualify as "specific video material" within the meaning of the statute (Mot. at 3), and there is thus "no identification of any specific video material" (*id.* at 7) on the "order confirmation pages" accessible at the ZB1 OD Version Order URLs that it transmitted to the Third-Party Advertisers. *See generally id.* at 1-3 & 5-12. But this is the exact same argument Defendant made, and the Court rejected, at the motion to dismiss stage over a year ago, with the benefit of full adversarial briefing from the parties. *See* ECF No. 12 at 4-7 (motion to dismiss, arguing that "that the 'Zumba Basic 1' on-demand course is not a video itself, but instead contains 16 different video modules," so an alleged transmission of a ZB1 OD Version Order URL to a Third-Party Advertiser Plaintiffs fails to show "that any third parties learned which 'specific' videos Plaintiffs purportedly may have obtained or watched"); ECF No. 23 at 7 (Court's order denying motion to dismiss (the "MTD Decision"), concluding that "Defendant's contention that the allegation that [it] disclosed the 'training course' purchased (containing multiple 'modules'), rather than the specific videos within the course, is of no moment for the purpose of the VPPA," because it is undisputed that the training course contains prerecorded videos).

The Court's rejection of this argument was correct a year ago and it remains correct today. In fact, during the past year, numerous courts presiding over VPPA class actions have decided the same issue, on analogous facts, in accord with the Court's MTD Decision. *See, e.g., Damrau v. Colibri Grp., LLC*, No. 4:24-CV-01441-JMD, 2026 WL 198712, at *5 (E.D. Mo. Jan. 23, 2026); *Haines v. Cengage Learning, Inc.*, No. 1:24-CV-710, 2025 WL 2336089, at *7 (S.D. Ohio May 5, 2025), *report and recommendation adopted,* No. 1:24-CV-710, 2025 WL 2045644 (S.D. Ohio July 22, 2025); *Korn v. Simplilearn Americas Inc.*, No. CV 25-10461-NMG, 2026 WL 472984, at *4 (D. Mass. Feb. 19, 2026); *Turner v. Nat'l Notary Ass'n*, No. CV 25-0334 FMO (PDX), 2026 WL 947171, at *4 (C.D. Cal. Mar. 27, 2026); *Dawson v. Univ. of Phoenix, Inc.*, No. 1:25-CV-03497, 2026 WL 92248, at *5 (N.D. Ill. Jan. 13, 2026).

What Defendant really wants the Court to do is reconsider its own fourteen-month-old MTD Decision – at the end of an extensive period of discovery (involving numerous depositions, countless third-party subpoenas, and voluminous productions of documents) and on the eve of

Plaintiffs' filing of a motion for class certification[1] (*see* ECF No. 52) – without any intervening change in the law or facts capable of warranting such extraordinary relief. The Court need not go along. There is no reason for the Court to second guess its own well-reasoned decision on the exact same issue at this late stage of the proceedings – and certainly not where Defendant merely rehashes the same arguments it previously made at the motion to dismiss stage. *See Socialist Workers Party v. Leahy*, 957 F. Supp. 1262, 1263 (S.D. Fla. 1997) ("The applicable standard for a motion for reconsideration is that the moving party 'must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. A motion for reconsideration should raise new issues, not merely address issues litigated previously.'"). The Motion should be denied.

**LEGAL STANDARD**

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "A motion for judgment on the pleadings admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts." *Gachette v. Axis Surplus Ins. Co.*, No. 19-cv-23680, 2020 WL 2850587, at *1 (S.D. Fla. Apr. 1, 2020).

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [ ] view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] The timing of the Motion – filed prior to the close of discovery and before a decision on class certification – is telling. If Defendant truly believes the argument it rehashes in the Motion has merit, presumably it would want the issue decided on a class-wide basis rather than only as to the two named Plaintiffs – and thus would wait to present the argument at summary judgment, following the close of discovery and the certification of a class.

**ARGUMENT**

The Motion is a transparent attempt to relitigate an argument the Court long ago correctly rejected as contrary to the plain language of the statute, and should therefore be denied for the same reasons articulated by the Court in the MTD Decision – reasoning that numerous courts have subsequently adopted in analogous VPPA cases.

Congress drafted and subsequently enacted the VPPA to afford Americans broad protections against any disclosure of information that reveals the prerecorded video materials they purchase, regardless of the mode or medium of purchase or disclosure.[2] Specifically, the VPPA prohibits a "video tape service provider" from (1) knowingly disclosing to any person (2) "personally identifiable information" concerning any "consumer" of such provider (3) except for certain disclosures—such as to the consumer or law enforcement—allowed under section 2710(b)(2). 18 U.S.C. § 2710. The Act defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" (18 U.S.C. § 2710(a)(4)), and defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 28 U.S.C. § 2710(a)(1). "Personally identifiable information" is defined to "include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

In the MTD Decision, the Court correctly applied these statutory definitions to the facts alleged in the Complaint and, with little difficulty, concluded that the factual allegations of the

---

2 The Senate Report of the legislation that became the VPPA confirms that Congress, in enacting the statute, "was concerned with protecting the confidentiality of private information about viewing preferences regardless of the business model or media format involved." *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (citing S. Rep. No. 100–599 at 1 (VPPA follows a long line of statutes passed by Congress to extend privacy protections to records that contain information about individuals), 3 (quoting Senator Leahy's denouncement of the disclosures: "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read . . . . In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch . . . . I think that is wrong, I think that is Big Brother, and I think it is something we have to guard against), 2–4 (extensive discussion of privacy, including Supreme Court case law and noting that protecting an individual's choice of books and films is a pillar of intellectual freedom under the First Amendment).

Complaint adequately established that Defendant is a "video tape service provider," that Plaintiffs are "consumers," and that Defendant disclosed Plaintiffs' "personally identifiable information" to third parties in violation of the statute. *See* MTD Decision, at 3-11. In so ruling, the Court explicitly rejected Defendant's argument that its alleged transmission of Plaintiffs' ZB1 OD Version Order URLs to the Third-Party Advertisers failed to plausibly establish disclosures of Plaintiffs' "personally identifiable information" in violation of the statute, explaining as follows:

> Here, Plaintiffs sufficiently allege **Defendant disclosed URLs containing videos** obtained by Plaintiffs when they alleged, among other facts, that:
>
>> 102. When the purchase of an on-demand video instructor course is complete, the customer is routed to a new webpage (also hosted on Defendant's Website). This page says "YOU'RE ALL SET." It also prominently displays: (1) the name of the individual who purchased the on-demand video materials and (2) the name of the specific video materials that the person purchased.
>>
>> 103. The "YOU'RE ALL SET" pages also have the Meta Pixel installed. Defendant uses the Meta Pixel to transmit the URLs of these webpages, along with the FIDs of the individuals who purchased the on-demand video materials and hwo [sic] are named on each page, to Meta.
>
> Compl. ¶¶ 102–03.
>
> **Defendant's contention that the allegation that Defendant disclosed the "training course" purchased (containing multiple "modules"), rather than the specific videos within the course, is of no moment for the purpose of the VPPA. Defendant doesn't argue that this training course doesn't contain any videos, only that it does not exclusively contain videos**.

MTD Decision, at 6-7 (emphasis added). In other words, because the ZB1 OD Version is comprised of prerecorded videos, Defendant's transmissions of Plaintiffs' ZB1 OD Version Order URLs did in fact disclose to third parties that Plaintiffs (identified by their first and last names) had purchased (and thus "requested or obtained") "specific video materials" from Defendant. *See id.* Notably, the operative SAC contains the same allegations as those recited above and cited by the Court in deciding this issue in the MTD Decision. *See* SAC ¶¶ 101-02.

Undeterred by the Court's well-reasoned and correctly decided MTD Decision, Defendant now rehashes in the Motion one of the same arguments it previously raised (and the Court rejected) at the motion to dismiss stage: that the ZB1 OD Version doesn't qualify as "specific video material" covered by the statute because it "is not a video itself, but instead contains 16 different video modules." ECF No. 12 at 5; *see also* Mot. at 1-3 & 5-12. The argument is nonsense. By Defendant's logic, a box-set collection containing all 25 *James Bond* films would not qualify as "specific video material" under the statute either – after all, the box "is not a video itself, but instead contains [25] different video[s]" inside of it. *See* ECF No. 12 at 5. None of the applicable statutory definitions evince any such crippling restriction on the regulatory scheme. Rather, the statute broadly prohibits the disclosure of any information capable of identifying any "purchaser[] or subscriber of goods or services" from any business that "rent[s], s[ells], or deliver[s] prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(1)-(4). And as this Court has already correctly held, information identifying someone who purchased the ZB1 OD Version comprised of 16 different prerecorded videos – just like someone who purchased the *James Bond* box set comprised of 25 different DVDs – plainly fits the bill.[3]

Numerous courts nationwide are in accord. In *Damrau v. Colibri Grp., LLC*, for instance, the plaintiffs alleged the defendant violated the VPPA by disclosing information revealing them as purchasers of "subscriptions to view prerecorded videos on certain [of the defendant's] websites," which "include[d] videos that satisfy continuing education requirements for people in various industries." *Damrau*, 2026 WL 198712, at *1, *5. The defendant in *Damrau* argued, like Defendant argues here, that the titles of the goods or subscriptions purchased, which were comprised of multiple separate videos, did not constitute "specific video materials" within the meaning of the statute. *See id*. The court rejected the argument based on the plain text of the statute, consistent with this Court's MTD Decision:

> Colibri disputes that it disclosed specific information about the materials or services the plaintiffs purchased. It contends that disclosing a consumer's purchase of a *set* of materials is not covered by the Act; only the purchase of a single video is covered. Again, that argument finds no support in the text. The statute says "specific video *materials or services,"* not "specific *video titles*." Under Colibri's argument, the Act would fail to protect any person who

---

[3] The same would be true for a single season of a television program like HBO's *The Sopranos*.

> rented a consolidated trilogy or an entire season of a sitcom rather than a single episode or single film.

*Id.*, at *5.

Likewise, in *Haines v. Cengage Learning, Inc.*, another VPPA class action, the plaintiff alleged, as Plaintiffs allege here, that the defendant "transmitted to Meta the fact that [she] paid for enrollment in an online educational course that includes, *among other things*, video content." *Haines*, 2025 WL 2336089, at *4, *report and recommendation adopted,* No. 1:24-CV-710, 2025 WL 2045644. The defendant there, like Defendant here, moved to dismiss on the ground that the plaintiff failed to allege the disclosure of information revealing her purchase of any "specific video materials or services. *Id.*, at *7 ("[D]efendant asserts: 'Plaintiff neither *alleges the identity of the specific video materials allegedly disclosed by Cengage*—nor that she watched any specific videos on Cengage's website (or elsewhere). Confoundingly, the pleadings are completely devoid of a *single video title*.'"). The court rejected the argument. Consistent with the Court's MTD Decision here, the court found "that plaintiff [] sufficiently alleged that defendant disclosed 'specific video materials or services' as the phrase is understood under the VPPA, 18 U.S.C. § 2710(a)(3), explaining:

> As an initial matter, defendant's emphasis on the lack of a specific video title in the complaint does not appear warranted by the text of the statute. 'Specific' is first defined in Black's Law Dictionary as '[o]f, relating to, or designating a particular or defined thing[.]' *Specific, Black's Law Dictionary* (12th ed. 2024). Defendant allegedly disclosed to Meta that plaintiff purchased a 'Medical Billing and Coding' online course and that it was an 'advanced career training' course, both of which denote a particular thing available at a particular URL. Along with plaintiff's other allegations that she purchased 'prerecorded video material' [], the Court finds that plaintiff adequately alleges that defendant disclosed to Meta that she purchased 'specific video materials or services' for a VPPA claim.

*Id.*

Similarly, in *Korn v. Simplilearn Americas Inc.*, a defendant moved to dismiss a VPPA plaintiff's claim on the ground that "the complaint does not allege . . . that the disclosure [in question] related to 'specific video materials' that [the plaintiff] requested or obtained." *Korn*, 2026 WL 472984, at *4. In denying the defendant's motion to dismiss, the court found, consistent

with the MTD Decision here, that "plaintiff's failure to allege the actual title of a specific video" was not "fatal to his claim," explaining:

> The statutory text requires disclosure of 'specific video materials or services.' 18 U.S.C. § 2710(a)(3). Here, plaintiff alleges that each course
>
> > is a formulated standalone offering that contains its own distinct video modules [and that] disclosure of the course title also discloses precisely what videos were requested and obtained.
>
> Such information comfortably qualifies as 'specific video materials or services.'

*Id.*, at *4–5 (citing *Haines*, 2025 WL 2336089, at *7).

Yet another instructive example is the decision in *Aldana v. GameStop, Inc.*, where the district court rejected a defendant's argument that its alleged disclosure of the title of a video game (containing prerecorded video "cut scenes") purchased by the plaintiff was not "personally identifiable information" within the meaning of the VPPA. As the court explained:

> GameStop argues that, to the extent that the VPPA covers cut scenes in a video game, Plaintiffs fail to allege that GameStop disclosed 'the video material's identity' because '[d]isclosing the video game title is not the same as sharing what video clips a person requested, watched, or purchased: video games do not necessarily contain cut scenes and many video games in fact do not contain any cut scenes.' . . . But GameStop also concedes that video game purchasers simply receive whatever cut scenes the game developer happened to include in the video game.' . . . In other words, there is no question that disclosing the name of the video game purchased also discloses the cut scenes that are included in that particular video game. The fact that a player may choose to 'skip' or not watch a given cut scene . . . does not alter this reality. Further still, the plain language of the VPPA regulates the disclosure of the 'title, description, or subject matter of any video tapes or other audio visual material.' *See* 18 U.S.C. § 2710(b)(1)(D) (emphasis added). At a minimum, disclosing the name of the video game is sufficient to disclose the subject matter of the cut scenes embedded in the game. Therefore, Plaintiffs' allegations that GameStop disclosed the names of the video games they purchased to Facebook is a sufficient allegation of disclosure of the identity of the video material. . .

*Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied,* No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y.

June 24, 2024); *see also Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS-VF, 2024 WL 3104345, at *2 (S.D.N.Y. June 24, 2024) (declining to certify the court's denial of defendant's motion to dismiss for interlocutory appeal, explaining: "Plaintiffs explicitly alleged that GameStop disclosed the specific titles of video games, which contain specific cut scenes, through the Facebook Pixel. For the reasons stated in the Opinion, 'there is no question that disclosing the name of the video game purchased also discloses the cut scenes that are included in that particular video game.'").

And the list goes on. Numerous other courts presiding over analogous VPPA cases have reached the same unremarkable conclusion: that digital courses or other materials containing prerecorded videos are "specific video materials" within the meaning of the VPPA, and that knowing disclosures of information revealing the titles of such courses or other materials that particular persons purchased violate the statute. *See, e.g., Turner*, 2026 WL 947171, at *4 (in denying motion to dismiss VPPA claim, finding the defendant "concede[d]" it sells "prerecorded video material" by acknowledging that it "offers online education courses [containing prerecorded videos] for purchase"); *Dawson*, 2026 WL 92248, at *5 (in denying motion to dismiss VPPA claim, finding that plaintiff adequately alleged she was a "consumer" whose "personally identifiable information" was disclosed in violation of the statute based on allegations that she "took entire courses via pre-recorded video," and that defendant transmitted its "students' enrolled course information," along with unique personal identifiers, to third-party advertisers via tracking technologies installed on its website); *cf., e.g., Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *4 (D.N.J. May 22, 2024) (granting motion to dismiss VPPA claim arising from alleged disclosure of titles of video games purchased by the plaintiff "because he has not alleged the games include any prerecorded content").[4]

---

[4] To the extent Defendant argues in the Motion that Plaintiff has failed to allege facts demonstrating that Defendant is a "video tape service provider," this argument fails for the simple reason, as stated above, that the ZB1 OD Version sold by Defendant contains prerecorded videos. *See, e.g., Dawson*, 2026 WL 92248 at *4 (plaintiff adequately alleged defendant was a "video tape service provider" based on allegations that "Defendant is an online university that 'sells degree programs and single courses,'" and that Defendant "teaches its programs and courses, at least in part, by using prerecorded video lectures," and that plaintiff's "class courses routinely included prerecorded videos"); *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1114 (W.D. Wis. 2025) (holding plaintiff adequately alleged provider of continuing education for mental health professionals is a "video tape service provider" where a "primary feature of [defendant's] website is the sale of prerecorded video courses and seminars on various healthcare topics"); *Krueger v. Chess.com, LLC*, 2025 WL 2765375, at *3–4 (N.D. Ill. Sept. 28, 2025) (concluding plaintiff sufficiently

Faced with the foregoing tidal wave of factually apposite jurisprudence rejecting the exact same argument presented in the Motion (which is consistent with this Court's prior rejection of the exact same argument in the MTD Decision), Defendant hangs its hat on three interlocutory, non-binding, and in any event inapposite district court decisions in *Martin v. Meredith Corporation*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), *Benson v. SimpleNursing, LLC*, No. 24-1118-GBW, 2026 WL 1045614 (D. Del. Apr. 17, 2026), and *Lovett v. Continued.com, LLC*, No. 1:24-cv-590, 2025 WL 1809719 (S.D. Ohio July 1, 2025). With all due respect, all three decisions were wrongly decided, each resting on the ill-conceived notion that a plaintiff who purchased a prerecorded video-based course containing multiple videos must establish that the title of one of its component videos, rather than the title of the course itself, was disclosed to a third party in order to state a VPPA claim. *See Meredith,* 657 F. Supp. 3d at 284-285; *Benson*, 2026 WL 1045614 at *4; *Lovett*, 2025 WL 1809719 at *3. As the Court explained in the MTD Decision, *Martin* "appears to be an outlier, and we agree with the majority of courts that have held to the contrary." MTD Decision, at 7 n.2. *Benson* and *Lovett* are also outliers, far outweighed by the numerous above-cited decisions holding to the contrary. Moreover, in response to the decisions in *Benson* and *Lovett*, the plaintiff in *Benson* initiated an appeal to the U.S. Court of Appeals for the Fourth Circuit, which remains pending, and the plaintiff in *Lovett* amended her complaint and was subsequently found to adequately state a claim. *See Benson v. SimpleNursing, LLC*, No. 24-1118-GBW, Dkt. No. 30, (D. Del., May 20, 2026); *Lovett v. Continued.com, LLC*, No. 1:24-CV-590, 2026 WL 835833, at *1 (S.D. Ohio Mar. 26, 2026) (denying defendant's motion to dismiss). Thus, in addition to being wrongly decided, *Benson* and *Lovett* are both interlocutory, unreviewed decisions entitled to no persuasive value here.

Defendant suggests that Plaintiffs' allegations that they purchased "access to" the prerecorded video-based ZB1 OD Version somehow places them outside the statute's scope. This is a red herring. Whether Plaintiffs allege purchasing prerecorded video material or purchasing "access to" that material is simply a matter of semantics and has no bearing on the viability of their claims. Whenever someone purchases a digital video-based product online, what they obtain is

---

alleged website focused on delivering videos of chess matches and lessons to its users was "engaged in the business" of delivering videos and thus a "video tape service provider" despite argument that videos were ancillary to the core business).

"access to" the prerecorded video material they purchased – not a hard copy in the mail – and yet courts are in unanimous agreement that the statute protects purchases of such digitally formatted audiovisual materials from disclosure just the same. *See, e.g.*, *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 258 (S.D.N.Y. 2025); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022).[5] So while Plaintiffs allege that they purchased "video materials" from Defendant at times (*see, e.g.*, SAC ¶¶ 12, 15), and allege that they subscribed to or purchased access to those materials at other times (*see, e.g., id.* ¶¶ 10, 13, 14), the distinction is without a difference for purposes of assessing the sufficiency of Plaintiffs' claims. In both instances, Plaintiffs have adequately alleged that they are "consumers" of "prerecorded video materials or services" from Defendant whose "personally identifiable information" was knowingly disclosed by Defendant to third parties in violation of the statute. *See* 18 U.S.C. § 2710(a)(1)-(4); *see also*, *e.g.*, *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023).

Grasping at straws, Defendant argues that because Plaintiffs have not alleged disclosures of their "video-watching behavior," they have failed to allege "disclosure[s] of [their] 'personally identifiable information' under the statute." Mot. at 8. That is a remarkably sloppy misreading of the statute. The VPPA prohibits the disclosure of information capable of "identif[ying] a person as having *requested or obtained* specific video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). "There is nothing in the statute that indicates that a plaintiff must show that they watched or 'interacted with' a video" to state a claim. *Collins v. Toledo Blade,* 720 F. Supp. 3d 543, 550 (N.D. Ohio 2024). Thus, persons like Plaintiffs, who purchased prerecorded video materials from a video tape service provider like Defendant, are entitled not to have information revealing them as purchasers of such materials disclosed to third parties like the Third-Party Advertisers. *See, e.g.*, *Manza*, 784 F. Supp. 3d at 1126; *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *3 (E.D. La. Nov. 3, 2023)*Goldstein v. Fandango Media, LLC*, No. 22-80569-CIV, 2023 WL 3025111, at *3 (S.D. Fla. Mar. 7, 2023). And yet, that is precisely what Plaintiffs allege Defendant has done.

The SAC, like the Complaint before it, adequately alleges that Defendant disclosed Plaintiffs' "personally identifiable information" to third parties in violation of the VPPA. The

---

5 Moreover, the statute specifically covers both "subscribers" to and "purchasers" of prerecorded video materials or services. 18 U.S.C. § 2710(a).

Motion should be denied for the same reasons previously articulated by the Court in the MTD Decision.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Date: July 8, 2026

Respectfully submitted,

/s/ *Frank S. Hedin*

Frank Hedin (FBN 109698)
HEDIN LLP
1395 Brickell Ave., Ste 610
Miami, FL 33131
(305) 357-2107
fhedin@hedinllp.com

Tyler K. Somes (*pro hac vice*)
HEDIN LLP
1100 15th St. NW, Ste 04-105K
Washington, D.C. 20005
(202) 900-3332
tsomes@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

/s/ *Frank S. Hedin*