**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-61983-WPD**

CATHERINE KUEPPERS and WATANYA BROWN,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

ZUMBA FITNESS, LLC,

Defendant.

/

---

**DEFENDANT ZUMBA FITNESS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

PRELIMINARY STATEMENT ........ 3
BACKGROUND ........ 5
A. The ZB1 OD Version is a public-facing licensing credential. ........ 5
B. Procedural history. ........ 5
C. The class list. ........ 6
D. The named Plaintiffs' testimony. ........ 6
LEGAL STANDARD ........ 7
ARGUMENT ........ 8
I. THE NAMED PLAINTIFFS ARE NOT TYPICAL OR ADEQUATE, AND THE DEFECT CANNOT BE CURED. ........ 8
A. A representative subject to unique defenses that will become a focus of the litigation is not typical or adequate. ........ 8
B. Both remaining representatives carry documented, individualized defenses on the central issue in the case. ........ 9
C. The defect cannot be cured by substitution. ........ 11
D. Zumba does not advance a "fundamental conflict" theory. ........ 11
II. PLAINTIFFS HAVE NOT PROVEN THAT COMMON QUESTIONS PREDOMINATE. ........ 12
A. The certification question is not concreteness in the abstract; it is whether each member's right to recover can be proven with common evidence. ........ 12

B. Whether a given member retained the privacy interest the VPPA protects is an individualized question on this class. 13

C. The certified pixel cases Plaintiffs invoke involved nothing like this class. 15

D. The individualized inquiries would devolve into mini-trials. 15

III. A CLASS ACTION IS NOT THE SUPERIOR METHOD OF ADJUDICATION. 15

CONCLUSION 16

## PRELIMINARY STATEMENT

This case does not fit the interest the Video Privacy Protection Act ("VPPA") was enacted to protect.[1] The VPPA was enacted to protect individuals from having the titles of videos they purchased or rented made public. The entire purpose of the Zumba Basic 1 on-demand course is the opposite: every purchaser buys it to become a licensed, publicly marketed Zumba instructor, and the two Plaintiffs who remain did exactly that.

Plaintiffs open their Motion by calling this case "tailor made for class certification." (Mot. at 5). The record Plaintiffs have built, however, tells a different story. Plaintiffs began this case with four proposed class representatives. Two are gone. The two who remain each testified at deposition that they registered for the Zumba Basic 1 on-demand instructor training course to become licensed Zumba instructors and then publicly advertised that status to promote their own fitness businesses and make money.[2] Indeed, Ms. Kueppers even publicly reviewed the Zumba Basic 1 training course.[3] The affiliation these Plaintiffs now describe as private is one they promoted publicly.

That record defeats certification twice over.

*First*, the named Plaintiffs are neither typical nor adequate. A representative who broadcast the affiliation at the heart of her claim does not stand in the same shoes as the absent members she proposes to represent. These Plaintiffs face documented, individualized defenses: that their own

[1] 18 U.S.C. § 2710. The VPPA was enacted after a newspaper published, without his consent, a list of films a Supreme Court nominee had rented from a local video store. S. Rep. No. 100-599, at 5 (1988); *see also Martinez v. D2C, LLC*, No. 23-21394-Civ-Scola, 2024 WL 4367406, at *1 (S.D. Fla. Oct. 1, 2024).
[2] [Exhibit 1, Brown Jan. 21, 2026 Dep. Tr. at 48:12–22, 49:12–21, 55:3–11; 57:21-58:16, 66:4-68:12, 70:4-10]; [Exhibit 2, Kueppers Feb. 17, 2026 Dep. Tr. at 56:25–57:21, 62:11–64:14, 104:7-13]; *see also* [Exhibit 3, introduced as Exhibit 2 during Brown's deposition].
[3] [Exhibit 4, Zumba Production 000096].

publicity defeats or sharply diminishes the privacy interest they assert, and that their testimony about their expectations of privacy cannot survive their conduct. A representative subject to unique defenses that threaten to become the focus of the litigation is not typical, *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1265-68 (S.D. Fla. 2021), and a representative preoccupied with defending her own claim cannot adequately protect absent members. Ordinarily that problem is curable by substitution. Not here. Plaintiffs have amended twice, this Court's deadline to amend has passed, and the other two original representatives have already withdrawn.[4] The defect attaches to the Motion itself.

*Second*, Plaintiffs have not carried their burden of proving that common questions predominate. Zumba does not ask the Court to revisit its ruling on personally identifiable information, and it does not contend that a wrongful VPPA disclosure is too abstract to be concrete; *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017), forecloses that categorical argument, and Zumba does not make it. The certification problem is different. Every member of this class purchased a publicly-facing credential: a training course whose purpose, on Plaintiffs' own description, is to qualify the purchaser to be licensed and to market herself to the public as a certified Zumba instructor. (Mot. at 6). Whether the transmission of a given member's order-confirmation URL invaded a privacy interest that member retained turns on what she did with that affiliation, and that varies member to member. The Eleventh Circuit requires district courts to weigh individualized inquiries of that kind before certifying, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273–77 (11th Cir. 2019); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 892 (11th Cir. 2023), and claims that require "a great deal of individualized proof" after the common

---

[4][ECF Nos. 34, 45; Scheduling Order, ECF No. 29].


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

issues are resolved cannot satisfy Rule 23(b)(3). *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

*Last*, superiority fails with predominance: a proceeding that must resolve member-specific conduct for 5,058 people is not manageable as a class trial.

Accordingly, Plaintiffs' Motion should be denied.

## BACKGROUND

### A. The ZB1 OD Version is a public-facing licensing credential.

Zumba is in the business of fitness instruction, instructor education, and brand licensing. The Zumba Basic 1 course qualifies purchasers who complete it to obtain a commercial license and to market themselves publicly as certified Zumba instructors. [Exhibit 5, Ralph Valdes Feb. 20, 2026 Dep. Tr. at 41:5-42:2, 44:11-46:1]; (Mot. at 6). During the class period the course was sold in three formats: in person, by livestream, and in the on-demand version at issue (the "ZB1 OD Version"). (Mot. at 6). The subject matter of each format is materially the same; only the medium of instruction differs. [Ex. 5 at 42:4-43:13]; (Mot. at 6).

### B. Procedural history.

This Court denied Zumba's motion to dismiss the original complaint, accepting its allegations as true and holding that the alleged disclosure of a URL to a page containing the obtained video sufficed, at the pleading stage, as personally identifiable information. *Kueppers v. Zumba Fitness, LLC*, 805 F. Supp. 3d 1226 (S.D. Fla. 2025). Plaintiffs have since amended twice. [ECF Nos. 34, 45]. Two of the four original named plaintiffs have withdrawn, and the deadline to amend the pleadings or add parties has passed. [ECF No. 29]. Plaintiffs' theory rests on the


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

transmission of the ZB1 OD Version order-confirmation URL to Meta, Pinterest, and MNTN (the "Third-Party Advertisers"). (Mot. at 9).

### C. The class list.

Plaintiffs' expert, Colin Weir, identified 5,058 individuals by opening the order-confirmation pages as they exist today and matching the URLs against records produced by the Third-Party Advertisers. (Mot. at 14). Plaintiffs seek to certify a class of those 5,058 purchasers and three subclasses (the Pinterest, MNTN, and Meta Subclasses). (Mot. at 14).[5] Plaintiffs represent that the confirmation pages were "publicly accessible to anyone who possessed" the URL during the relevant period (Mot. at 16), and the parties stipulated to a representative sample of pages after Zumba altered the pages during this litigation (Mot. at 10). These Qualifying URLs link to a confirmation page noting that an individual purchased the *opportunity* to *potentially* take action to become a licensed Zumba instructor and specifically says "[s]tay on the lookout for an email with access to information for your online instructor licensing program." [Exhibit 6, Expert Report of James Vint at ¶¶ 27, 29].

### D. The named Plaintiffs' testimony.

Both remaining Plaintiffs testified that they purchased the ZB1 OD Version to obtain the instructor license and that they publicly advertised their certified-instructor status to promote their own businesses. Specifically, Brown testified, among other things: **(1)** it was not private that she

[5] To the extent Plaintiffs seek to represent any putative class members whose information was allegedly transmitted to NextRoll or TradeDesk, Plaintiffs do not have standing to do so, as there is no evidence any of Plaintiffs' purported PII was transmitted to either third-party. *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

was a Zumba instructor or completed the ZB1 training course [Ex. 1 at 136:20-137:6]; **(2)** she publicly advertised she was a certified Zumba instructor [*Id*. at 49:19-21]; **(3)** she advertised she was a Zumba instructor and completed the training course on her Facebook profile [*Id*. at 57:21-58:16; 70:4-10]; **(4)** she identified she was a Zumba instructor and advertised the same on her Instagram profile [*Id*. at 66:4-68:12]; **(5)** she informed members of the public that she was a certified Zumba instructor and wanted members of the public to know she completed the ZB1 training course [*Id*. at 55:3-11; 48:12-22; 49:12-14]; and **(6)** after being certified as a Zumba instructor, she was able to run a business providing Zumba instruction to others. [*Id*. at 130:18-21]. As for Kueppers, she testified: **(1)** she informed members of and presented to the public she was a certified Zumba instructor [Ex. 2 at 56:25-57:3]; **(2)** she advertised to the public that she was a certified Zumba instructor [*Id*. at 57:15-21]; **(3)** she posted on her Facebook and Instagram profiles that she was a certified Zumba instructor [*Id*. at 62:11-18]; **(4)** she posted on her social media about being a Zumba instructor every week so that "people would know" she was a Zumba instructor and, thus, would know she completed the ZB1 training course, and she was "not hiding the fact" she was a certified Zumba instructor [*Id*. at 63:3-64:15]; and **(5)** she posted the Zumba classes she was teaching on Zumba's website and said postings were accessible to the public. [*Id*. at 104:7-13].

## LEGAL STANDARD

Class certification is "an exception to our constitutional tradition of individual litigation," and "the presumption is against class certification." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). The party seeking certification bears a burden of proof, not pleading, and must affirmatively demonstrate compliance with Rule 23 by proving its requirements

are "in fact" satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Brown*, 817 F.3d at 1233. Where doubts remain, "the party with the burden of proof loses." *Brown*, 817 F.3d at 1234. The Court must conduct a "rigorous analysis" and must actually resolve any question of fact or law that bears on certification, even where it overlaps the merits. *Id.*

Under Rule 23(a), the representatives' claims must be typical of the class, Fed. R. Civ. P. 23(a)(3), and the representatives must "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Under Rule 23(b)(3), common questions must "predominate," a standard "even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Predominance fails where, after adjudication of the classwide issues, plaintiffs "must still introduce a great deal of individualized proof" to establish the elements of their claims. *Klay*, 382 F.3d at 1255. The predominance inquiry "implicates" Article III, because "every class member must have Article III standing in order to recover individual damages." *Green-Cooper*, 73 F.4th at 892 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

## ARGUMENT

### I. THE NAMED PLAINTIFFS ARE NOT TYPICAL OR ADEQUATE, AND THE DEFECT CANNOT BE CURED.

#### A. A representative subject to unique defenses that will become a focus of the litigation is not typical or adequate.

Typicality turns on whether the representative is aligned closely enough with the class to stand in its members' shoes. A factual variation will not defeat typicality "unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). That alignment breaks down when the representative carries a defense the class does not: "typicality is undermined when a

unique defense would impair the alignment of interests between the named plaintiff and the class," and "[t]he existence of a unique defense … is relevant to the certification decision." *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006) (quoting *Ross v. Bank South, N.A.*, 837 F.2d 980, 990, *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988)). Certification is therefore inappropriate where a putative representative "is subject to unique defenses which threaten to become the focus of the litigation." *Luczak.*, 548 F. Supp. at 1265-66.

The threshold is not demanding. As this District has explained, quoting *Ross* through *Boca Raton*, "[e]ven an arguable defense can vitiate" certification "if it will distract the named plaintiff's attention from the issues common to the class." *Boca Raton*, 238 F.R.D. at 694. And the burden runs against Plaintiffs: "the burden of proving typicality, i.e., the absence of a unique, certification-defeating defense, rests on the plaintiff." *Id.* (citing *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)). The rule protects absent members twice over. It guards against "the danger that absent class members will suffer if their representative is preoccupied with defenses unique to" her, *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59–60 (2d Cir. 2000) (cited in *Luczak*, 548 F. Supp. 3d at 1266), and it guards against the prejudice to members whose claims carry no such baggage when a factfinder weighs the representative's individual weaknesses. Because the typicality and adequacy inquiries "tend to merge," a representative rendered atypical by a unique defense is for the same reasons inadequate under Rule 23(a)(4). *Luczak*, 548 F. Supp. 3d at 1268.

**B. Both remaining representatives carry documented, individualized defenses on the central issue in the case.**

The gravamen of the operative complaint is that Zumba disclosed information revealing Plaintiffs' private video transactions. Yet, as detailed above, both remaining representatives



COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

testified that they purchased the ZB1 OD Version precisely to obtain a credential they could display, and that they did display it: each publicly advertised her status as a certified Zumba instructor to promote her own business. Their claims therefore proceed under the shadow of an arguable defense specific to their own conduct: that a plaintiff who broadcast the affiliation her purchase conferred cannot show that disclosure of the fact of that purchase invaded a privacy interest she retained, and that, at minimum, her asserted expectation of privacy cannot be credited against her documented conduct. Zumba need not prevail on that defense to defeat certification; a defense unique to the representative that threatens to become a focus of the litigation is enough. *Luczak*, 548 F. Supp. 3d at 1265-66. Here, the defense is more than arguable: it is documented in the representatives' own depositions, it goes to the element at the center of the case, and it will be a centerpiece of Zumba's trial presentation against these Plaintiffs specifically. Plaintiffs publicly displayed and disclosed the very information they claim to be protected by the VPPA and, thus, do not present claims typical of the claims of putative class members. *See, e.g., Boca Raton*, 238 F.R.D. at 694 (differing factual circumstances surrounding the various class plaintiffs, plus unclean hands defense, thwarted the plaintiff's claim of typicality and precluded class certification); *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 478-79 (S.D. Fla. 2006) (holding the plaintiff was not typical or an adequate class representative of class because of substantial issues and defenses not typical of all class members); *Beck v. Maximus, Inc.*, 457 F.3d 291, 296, 300-01 (3d Cir. 2006) (recognizing that plaintiff is neither typical nor adequate if subject to a unique defense that is likely to become major focus of the litigation).

This is not the ordinary situation in which the class faces the same defense the representative does, only in stronger form. A merely stronger defense against the named plaintiff does not defeat typicality. *Kornberg*, 741 F.2d at 1337. The defense here is different in kind: it

arises from conduct unique to these two Plaintiffs, their own public promotion, and it is directed at them alone. That is the configuration *Luczak* and *Boca Raton* address, not the shared-defense scenario *Kornberg* found unobjectionable.

That is precisely what Rule 23(a) exists to prevent. A trial of these Plaintiffs' claims will be, in substantial part, a trial about these Plaintiffs: what each published, where, to whom, and what those publications establish about the privacy interest each now asserts. Absent class members are entitled to representatives whose claims will be tried on the common questions, not consumed by individual ones.

**C. The defect cannot be cured by substitution.**

The ordinary answer to a typicality or adequacy problem is a cleaner representative. That path is closed. As mentioned above, Plaintiffs began with four representatives; two have withdrawn. The Court's deadline to amend the pleadings or add parties has passed. Plaintiffs must stand on the two representatives they have, and those representatives cannot satisfy Rule 23(a)(3) or (a)(4). Because Plaintiffs bear the burden of establishing every Rule 23 prerequisite "in fact," *Wal-Mart*, 564 U.S. at 350, the failure of typicality and adequacy is, by itself, dispositive of the Motion.

**D. Zumba does not advance a "fundamental conflict" theory.**

To be precise about the argument's boundaries: Zumba does not contend that a "fundamental conflict" under *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003), defeats adequacy, and its argument does not depend on how many absent members promoted themselves as these Plaintiffs did. Courts decline to find inadequacy merely because some members may benefit from or prefer a challenged practice. *Celeski v. Tom Brown's*


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

*Restaurant at Madison LLC*, No. 5:22-cv-01600-HNJ, 2025 WL 2741829 (N.D. Ala. Mar. 27, 2025). The point here is narrower and representative-specific: these two named Plaintiffs carry documented, individualized defenses that make their claims atypical and their representation inadequate, and no substitute is available.

## II. PLAINTIFFS HAVE NOT PROVEN THAT COMMON QUESTIONS PREDOMINATE.

### A. The certification question is not concreteness in the abstract; it is whether each member's right to recover can be proven with common evidence.

Zumba is candid about what it does not argue. It does not contend that a wrongful VPPA disclosure is insufficiently concrete to support Article III standing; *Perry* forecloses that categorical argument. 854 F.3d at 1340–41. It does not re-argue the Court's ruling that the alleged URL disclosure can constitute personally identifiable information. *Kueppers*, 805 F. Supp. 3d 1226. And it does not dispute that certain questions in this case are genuinely common, including whether the ZB1 OD Version is prerecorded video content, whether Zumba is a "video tape service provider," and whether the pixel transmissions were "knowing." Those questions are for the pending motion for judgment on the pleadings and, if necessary, for summary judgment.

The predominance inquiry asks a different question: whether Plaintiffs have proven "in fact," *Wal-Mart*, 564 U.S. at 350, that the questions determining each member's entitlement to recover can be resolved with evidence common to the class rather than evidence particular to its members. *Klay*, 382 F.3d at 1255. On this class, they cannot.


COLE, SCOTT & KISSANE, P.A.
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

**B. Whether a given member retained the privacy interest the VPPA protects is an individualized question on this class.**

This putative class (and subclasses) is unlike the classes certified in the pixel cases Plaintiffs invoke, and the difference is built into the product. Every member purchased a credential whose commercial value lies in public display: on Plaintiffs' own description, the course exists to qualify purchasers to be licensed and to market themselves to the public as certified instructors. (Mot. at 6). What each member did with that affiliation varies member to member. The only two members whose conduct is actually in the record, the named Plaintiffs, broadcast it. A member who published her own completion of the course to attract customers presents a materially different injury case from a member who told no one. Resolving that difference requires member-specific proof of member-specific conduct. Individualized inquiries will need to be performed as to whether any putative class member publicly disclosed and advertised their completion of the ZB1 training course and status as certified Zumba instructors.

To the extent that inquiry bears on Article III, the Eleventh Circuit is explicit about the Court's obligation. "Every class member must have Article III standing in order to recover individual damages," and standing "is not dispensed in gross." *TransUnion*, 594 U.S. at 431. The predominance analysis "implicates" that requirement, *Green-Cooper*, 73 F.4th at 892, and where members "will likely have to provide some individualized proof" of standing, the district court "must consider" before certification whether those individualized issues will predominate over the common ones. *Cordoba*, 942 F.3d at 1273–77.

To the extent the inquiry bears instead on the merits of each member's claim, the result is the same under Rule 23(b)(3) directly: certification is improper where, after the common questions

are answered, plaintiffs "must still introduce a great deal of individualized proof" to establish their claims. *Klay*, 382 F.3d at 1255. Either way, the inquiry proceeds member by member.

The individualized character of the inquiry is only sharpened by what Plaintiffs now say the disclosure consists of. Plaintiffs do not, and cannot, contend that they kept private the fact that they completed Zumba's instructor training; each publicly held herself out as a licensed Zumba instructor, which discloses by inference that she took the licensing course. Their theory has narrowed to the delivery label, that the course was taken "online" rather than in person or by livestream. But the course title is identical across all three modes, so the label conveys nothing about the content obtained; it identifies the channel, not the material. Whether disclosure of that residual, format-only datum invaded a privacy interest a given member retained, on top of the affiliation she had already published herself, is quintessentially individualized: it depends on what each member disclosed, how specifically, and whether anything about the delivery format added to it. Zumba shows in its pending Rule 12(c) reply that a delivery tag is not, as a matter of law, information identifying a person as having obtained "specific video materials or services" under 18 U.S.C. § 2710(a)(3), and it preserves that merits position here. For certification purposes, the Court need not reach it: even assuming a cognizable disclosure occurred, the incremental injury Plaintiffs now describe cannot be established class-wide.

Zumba does not ask the Court to presume that any particular share of the class mirrors the named Plaintiffs' conduct. It does not have to. The burden is Plaintiffs', the standard is proof rather than pleading, and Plaintiffs' Motion offers no common method of resolving what each of 5,058 members did with a credential designed for public use. Where doubts remain, "the party with the burden of proof loses." *Brown*, 817 F.3d at 1234.

**C. The certified pixel cases Plaintiffs invoke involved nothing like this class.**

Plaintiffs rely principally on out-of-district orders certifying classes of website video viewers whose viewing was invisibly harvested by tracking pixels, chief among them *Jancik v. WebMD LLC*, No. 1:22-CV-644-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025). Whatever their persuasive force on their own facts, those cases involved consumers of ordinary video content with no public dimension: nothing about the product placed the member's relationship with the defendant into the public sphere, so nothing about the member's own conduct bore on the privacy interest asserted. This class is different by design. Every member bought a licensing credential whose purpose is public display, and the injury question therefore turns on member conduct in a way no certified VPPA class Plaintiffs cite has presented.

**D. The individualized inquiries would devolve into mini-trials.**

Even after the genuinely common questions are resolved, the Court would face what the Middle District of Florida, applying *Cordoba*, described as "hundreds, if not thousands, of individualized mini trials." *Marrow v. E.R. Carpenter Co.*, No. 8:23-CV-02959-KKM-LSG, 2025 WL 2390734, at *5 (M.D. Fla. Aug. 18, 2025); *see DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314 (M.D. Fla. 2024). Rule 23(b)(3) does not permit that. *Klay*, 382 F.3d at 1255. Predominance is not satisfied.

**III. A CLASS ACTION IS NOT THE SUPERIOR METHOD OF ADJUDICATION.**

Superiority fails for the same reason predominance does: a proceeding requiring member-by-member resolution of injury-related conduct for 5,058 people is not manageable as a class trial. *Marrow*, 2025 WL 2390734; *DiPierro*, 737 F. Supp. 3d 1314. Zumba is equally candid about what it does not argue here: in this District, aggregate statutory exposure does not by itself defeat

certification, because per-violation statutory damages are proportionate by congressional design and any constitutional excess is addressed after verdict. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013); *see Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529 (11th Cir. 2017). The superiority defect here is manageability, not arithmetic. Finally, the VPPA's remedial structure, a minimum liquidated award of $2,500 per violation plus attorney's fees, 18 U.S.C. § 2710(c)(2), gives any member who believes her privacy was genuinely invaded a realistic individual remedy. *Cf. Leysoto v. Mama Mia I, Inc.*, No. 08-60750-CIV, 2009 WL 10668631 (S.D. Fla. Sept. 4, 2009).

**CONCLUSION**

Plaintiffs bear the burden of proving, through evidence and rigorous analysis, that the named representatives are typical and adequate, that common questions predominate, and that a class action is superior. They cannot. The two remaining representatives are documented promoters of the affiliation they now call private, subject to individualized defenses that will consume their claims, and no substitute is available. And on a class defined by the purchase of a public-facing credential, whether any given member retained the privacy interest the VPPA protects is an individualized question that will overwhelm the common ones. Zumba Fitness, LLC respectfully requests that the Court deny Plaintiffs' Motion for Class Certification, or in the alternative deny certification of the proposed class and subclasses as defined.


**COLE, SCOTT & KISSANE, P.A.**
110 TOWER - 110 S.E. 6TH STREET, SUITE 2700 - FT. LAUDERDALE, FLORIDA 33301 (954) 703-3700 (954) 703-3701 FAX

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of July 2026, a true and correct copy of the foregoing has been filed and furnished to all counsel of record.

**COLE, SCOTT & KISSANE, P.A.**
Counsel for Defendant, Zumba Fitness, LLC
110 Tower, 110 SE 6th Street, Suite 2700
Fort Lauderdale, Florida 33301
Telephone (954) 703-3720
Facsimile (954) 703-3700
Primary e-mail: barry.postman@csklegal.com
scott.bassman@csklegal.com
matthew.green@csklegal.com

By: s/ Matthew A. Green
BARRY A. POSTMAN
Florida Bar No.: 991856
SCOTT A. BASSMAN
Florida Bar No. 232180
MATTHEW A. GREEN
Florida Bar No.: 1019717