**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CATHERINE KUEPPERS; and WATANYA

BROWN, *individually and on behalf of all others*

*similarly situated*,

                     Plaintiffs,

    v.

ZUMBA FITNESS, LLC,

            Defendant.

Case No. 24-cv-61983-WPD

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION AND APPOINTMENT**
**OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

## **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ........................................................................................................1

ARGUMENT.............................................................................................................1

   I.    The Information Defendant Disclosed to the Third-Party Advertisers Is
Materially Different from the Information Plaintiffs Publicly Disclosed...........................3

   II.   Defendant Disclosed Plaintiffs' and Class Members' VPPA-Protected Information
to the Third-Party Advertisers Before Plaintiffs or any Class Members Could
Have Possibly Promoted their Services as Zumba Instructors ...........................................5

   III.  Any Statements by Plaintiffs or Class Members Promoting Themselves as Zumba
Instructors After Their VPPA Claims Accrued and Their Article III Injuries-in-Fact
Manifested are Irrelevant to Class Certification Inquiry .......................................................7

CONCLUSION.............................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE(S)**

*Bd. of Pardons v. Allen*,
    482 U.S. 369 (1987)..................................................................................................................9

*Boelter v. Advance Mag. Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016) ....................................................................................10

*Christiana Tr. v. Riddle as next friend of Riddle*,
    819 F. App'x 255 (5th Cir. 2020) ............................................................................................9

*City of Richmond v. J.A. Croson Co.*,
    488 U.S. 469 (1989)..................................................................................................................9

*Cochenour v. 360Training.com, Inc.*,
    No. 1:25-CV-7-RP, 2025 WL 3251719 (W.D. Tex. Nov. 3, 2025) .........................................4

*Contessa v. White Pine INS. Co.*,
    No. 3:23-CV-00487, 2024 WL 4710163 (M.D. Fla. Nov. 7, 2024).......................................10

*Council of Ins. Agents & Brokers v. Molasky–Arman*,
    522 F.3d 925 (9th Cir. 2008) ...................................................................................................7

*CMR D.N. Corp. v. City of Philadelphia*,
    703 F.3d 612 (3d Cir. 2013).....................................................................................................9

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) .................................................................................................7

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ...................................................................................................9

*Ermold v. Davis*,
    855 F.3d 715 (6th Cir. 2017) ...................................................................................................9

*Fox v. Ritz-Carlton Hotel Co., LLC*,
    977 F.3d 1039 (11th Cir. 2020) .............................................................................................10

*Hammett v. Am. Bankers Ins. Co.*,
203 F.R.D. 690 (S.D. Fla. 2001)................................................................................................1
*In re Nickelodeon*,
    827 F.3d 262 (3d Cir. 2016).....................................................................................................7

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) ...............................................................................................8

*Marino v. Home Depot U.S.A., Inc.*,
   245 F.R.D. 729 (S.D. Fla. 2007)........................................................................................1, 2

*Massachusetts v. EPA,*
   549 U.S. 497 (2007)..............................................................................................................8

*Mock v. Bell Helicopter Textron, Inc.*,
   373 F. App'x 989 (11th Cir. 2010) .....................................................................................10

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020)..............................................................................................8

*Murray v. Nat'l Ass'n of Realtors*,
   No. 22-11107, 2023 WL 7726173 (E.D. Mich. Nov. 15, 2023)..........................................5

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017) ........................................................................................2, 9

*Powell v. McCormack*,
   395 U.S. 486 (1969)..............................................................................................................9

*Preminger v. Peake*,
   552 F.3d 757 (9th Cir. 2008) ...............................................................................................7

*Riley v. Houston Nw. Operating Co., L.L.C.*,
   No. CV H-19-2496, 2020 WL 3103899 (S.D. Tex. June 11, 2020).....................................8

*Salazar v. NBA*,
   118 F.4th 533 (2d Cir. 2024) ...............................................................................................9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................................................10

*Turner v. National Notary Association*,
   No. CV 25-0334, 2026 WL 947171 (C.D. Cal. Mar. 27, 2026) ..........................................4

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP),*
   412 U.S. 669 (1973)..............................................................................................................8

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021)..............................................................................................................9

iii

*Virginia House of Delegates v. Bethune-Hill*,
   587 U.S. 658 (2019) ......................................................................................................8

**STATUTES**

18 U.S.C. § 2710, *et. seq.* ("Video Privacy Protection Act") ................................................ *passim*

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

**INTRODUCTION**

Plaintiffs seek to certify and represent a Class comprised of 4,543 persons whose first and last names, along with information identifying them as purchasers of the prerecorded video-based "online" (or "on-demand") version of the Zumba Basic 1 training course (the "ZB1 OD Version"), were disclosed by Defendant to Meta Platforms, Inc. ("Meta"), Pinterest, Inc. ("Pinterest"), MNTN, Inc. ("MNTN"), and Nextroll, Inc. ("Nextroll") (collectively, the "Third-Party Advertisers") during the two-year period preceding the filing of this action. *See generally* ECF No. 57 (the "Motion" or "Mot."); *see also* ECF No. 66-l (the "Errata") at 3, ¶¶ 1-5.[1]

Defendant does not dispute that the proposed Classes are ascertainable and sufficiently numerous, that Plaintiffs' counsel are adequate representatives of the Classes, or that numerous questions of law and fact are common across the Classes. Instead, Defendant argues that Plaintiffs are inadequate representatives of the Class, that their claims are atypical of the Class's claims, that individualized questions predominate over questions common to the Class, and that a class action is inferior to other methods for resolving the Class's claims – all because Plaintiffs and other Class members publicly identified themselves as Zumba instructors at some point after purchasing the ZB1 OD Version. The argument is wholly without merit. Whatever Plaintiffs or Class members may have said publicly to promote their services as Zumba instructors after purchasing the ZB1 OD Version – and after Defendant had already disclosed information identifying them as purchasers of the ZB1 OD Version to the Third-Party Advertisers – is irrelevant to resolving anyone's VPPA claim or to anyone's Article III standing to pursue the claim in this Court. The issue is therefore incapable of defeating class certification, as further explained below.

**ARUGMENT**

"In order to make the findings required to certify a class action under Rule 23(b)(3)," the Court "must initially identify the substantive law issues which will control the outcome of the litigation." *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 734 (S.D. Fla. 2007) (internal quotations omitted); *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 700 (S.D. Fla. 2001) (same). In the Motion, Plaintiffs identified several such issues that will control the outcome of their claims and all unnamed Class members' claims and explained why resolving those issues on a class-wide basis comports with all applicable Rule 23 requirements. *See* Mot. at 12-13.[2] On the

---

[1] Additionally, Plaintiff Kueppers seeks to represent a Meta Disclosure Subclass comprised of the 1,576 Class members whose information was disclosed to Meta, *see* Errata at 4, ¶ 6; Mot. at 10, and Plaintiff Brown seeks to represent a Pinterest Disclosure Subclass comprised of the 3,061 Class members whose information was disclosed to Pinterest and a MNTN Disclosure Subclass comprised of the 2,665 Class members whose information was disclosed to MNTN. Mot. at 7-8; Errata at 3, ¶¶ 2-3; *see also* Errata at 4, ¶ 6. The Class and the three Subclasses are collectively referred to as the "Classes." As shown in the Motion, the Classes readily satisfy each requirement of Rules 23(a) and 23(b)(3) and should be certified. *See* Mot. at 8-20.

[2] Citations to the Motion are to its original pagination.

other hand, the issue Defendant fixates on in its opposition brief (ECF No. 76 (the "Opposition" or "Opp.")) – that Plaintiffs and other Class members may have publicly identified themselves as Zumba instructors at some point after purchasing the ZB1 OD Version – has no bearing on, let alone "control[s] the outcome of," *Marino*, 245 F.R.D.at 734, anyone's VPPA claim or anyone's Article III standing to bring their VPPA claim in federal court.

As a threshold matter, Defendant fails to explain why a self-disclosure of the sort identified in the Opposition has any bearing on either the merits of a VPPA claim or a plaintiff's Article III standing to redress a VPPA violation. In fact, Defendant itself cannot put its finger on whether the issue it describes in the Opposition bears on the merits of a VPPA claim or a plaintiff's Article III standing to pursue the claim.  *See* Opp. at 13 ("To the extent that inquiry bears on Article III . . ."); *id*. ("To the extent the inquiry bears instead on the merits of each member's claim . . ."). The reality is that the issue has no bearing on either the merits of a VPPA claim or a claimant's Article III standing – and, as such, is totally irrelevant to the class-certification inquiry.  *See Marino,* 245 F.R.D. at 734.  Indeed, the statute prohibits, and creates a private right of action to redress, knowing disclosures of information identifying persons like Plaintiffs and Class members as having purchased specific prerecorded video materials like the ZB1 OD Version from a videotape service provider like Defendant, absent the purchaser's informed written consent. *See generally* 18 U.S.C. § 2710. That is precisely what Plaintiffs allege occurred here, rendering Defendant liable to them and all other Class members, *see id.* § 2710(a)(3), (b)(1), entitling each of them to the statutorily authorized sum of $2,500 in damages, *see id*. at § 2710(c)(2)(A), and causing each of them to suffer an injury-in-fact sufficient to satisfy Article III.  *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017) (holding that "violation of the VPPA constitutes a concrete harm").  What the Opposition brief fixates on is simply not a focus of any aspect of the VPPA or Article III of the U.S. Constitution – a point Defendant appears to concede in the Opposition.

But even if the issue raised in the Opposition had any potential relevance to a VPPA claim, the sort of self-disclosures cited in the Opposition have no relevance to resolving the VPPA claims at issue in this case because: (I) the information disclosed by Plaintiffs, as identified in the Opposition, was not VPPA-protected information and is not what Plaintiffs allege Defendant disclosed in violation of the statute; (II) Plaintiffs' and Class members' VPPA claims all accrued, and they all suffered Article III injuries-in-fact, before any of them became Zumba instructors and thus at a time when they were not promoting themselves as Zumba instructors; and (III) any public statements by Plaintiffs or Class members promoting their services as Zumba instructors following the accrual of their claims cannot retroactively impact their claims or their Article III standing.

I.      **The Information Defendant Disclosed to the Third-Party Advertisers Is Materially Different from the Information Plaintiffs Publicly Disclosed**

First, the information Defendant disclosed to the Third-Party Advertisers – information identifying Plaintiffs and Class members as *purchasers of the prerecorded video-based ZB1 OD Version* – is materially different from the information that the Opposition says Plaintiffs disclosed.

According to Defendant, because "Plaintiffs publicly displayed and disclosed the very information they claim to be protected by the VPPA," they have not "retained the privacy interest the VPPA protects," rendering them inadequate representatives with atypical claims. Opp. at 10, 16. Defendant further speculates that, because some Class members may have also publicly promoted themselves as Zumba instructors – a fair assumption to make given that persons purchase and complete Zumba Basic 1 training in order to become certified Zumba instructors – questions affecting individual Class members predominate over questions common to the Class, and a class action is inferior to other methods for resolving the Class's claims. The argument is baseless. It rests on the false premise that Plaintiffs have "publicly displayed and disclosed the very information they claim to be protected by the VPPA." Opp. at 10. The information Defendant says "Plaintiffs publicly displayed" – that they were Zumba instructors (and, by implication, had completed Zumba Basic 1 training) – is not the same as the information Plaintiffs "claim to be protected by the VPPA" – which, in reality, is information identifying Plaintiffs and Class members as persons who *purchased the prerecorded video-based ZB1 OD Version from Defendant*.[3] *Id*.

Notably, Defendant has submitted no evidence showing (or even suggesting) that either of the Plaintiffs or any unnamed Class member has ever revealed himself or herself, to anyone, as a *purchaser of the prerecorded video-based ZB1 OD Version*. In fact, both of the named Plaintiffs specifically denied at deposition ever disclosing to anyone the fact that they purchased the ZB1 OD Version, or that they watched any of the videos comprising the ZB1 OD Version. *See* Kueppers Feb. 17, 2026 Dep. Tr. at 116:2-6 ("Q. Have you ever disclosed to anyone that you purchased the

---

[3]      As explained in the Motion, there are three versions of the Zumba Basic 1 training course – the (1) in-person (or "live") version, where a purchaser physically attends a live training event at a designated time and place; (2) a livestream (or "virtual") version, where a purchaser tunes into a video feed of a live training event being broadcast on the "Zoom" platform; and (3) an on-demand (or "online") version (the "ZB1 OD Version"), where a purchaser is provided access to 16 "modules," each containing videos depicting a prerecorded training event that may be viewed by the purchaser at his or her leisure. Thus, publicly disclosing the fact that someone is a certified Zumba instructor who completed the Zumba Basic 1 training course – the sole focus of the Opposition – is plainly not the same thing as disclosing the fact that someone *purchased the prerecorded video-based ZB1 OD Version from Defendant*. Even if Plaintiffs or other Class members voluntarily disclosed the former, such a disclosure would not reveal, and would have no bearing on their statutorily conferred right to be free from disclosures of, the latter (or on their Article III standing to vindicate such a disclosure in federal court).

3

On Demand version of Zumba Basic 1 from Zumba's website? A. No."); Brown Jan. 21, 2026 Dep. Tr. 143:16-19 ("Q. You didn't disclose to anybody that you purchased the on demand version of Zumba Basic 1, right? . . . THE WITNESS: No, didn't tell anybody"). At most, Defendant has submitted evidence showing that Plaintiffs publicly identified themselves as Zumba instructors (information unregulated by the statute), which is plainly not the same thing as publicly identifying themselves as having purchased the prerecorded video-based ZB1 OD Version (information protected from disclosure by the statute).

Other district courts presiding over similar VPPA cases have rejected the same argument on analogous facts. In *Cochenour v. 360Training.com, Inc.*, for instance, the plaintiff alleged a class-wide VPPA claim against a defendant for disclosing information identifying her as a purchaser of one of the defendant's prerecorded video-based educational training courses, which the plaintiff had purchased to satisfy a continuing education requirement for her professional licensure. *Cochenour v. 360Training.com, Inc.*, No. 1:25-CV-7-RP, 2025 WL 3251719, at *1 (W.D. Tex. Nov. 3, 2025). The defendant moved to dismiss the plaintiff's claim for lack of Article III standing, arguing that the plaintiff could not have suffered an injury-in-fact from defendant's disclosure because her licensure is a matter of public record, and because she purchased the course from defendant's website to satisfy a continuing education requirement to maintain her licensure. *Id.* The court rejected the argument and found the plaintiff had Article III standing, explaining: "Plaintiff's licensure is undoubtedly public, and MLO licensure does appear to require continuing education under Pennsylvania law.  However, it is not apparent at this stage that the mere fact that Plaintiff had to consume content that satisfied her licensure requirements means that the specific content she consumed was public information, nor where she obtained that content, nor in what form." *Id*. at *3 (internal citation omitted).

Similarly, in *Turner v. National Notary Association*, the plaintiff alleged the defendant had disclosed information identifying her as a purchaser of a prerecorded video-based educational course pertaining to loan signing in violation of the VPPA. *Turner v. Nat'l Notary Ass'n*, No. CV 25-0334, 2026 WL 947171, at *1 (C.D. Cal. Mar. 27, 2026). The defendant moved to dismiss for lack of Article III standing, arguing that because the plaintiff had publicly promoted herself as a loan signing agent certified by the defendant, its disclosure of information identifying her as a purchaser of a course she took to become a loan signing agent could not have worked concrete harm. In rejecting the argument and finding Article III standing, the court explained:

> Defendant also contends that plaintiff does not have standing because she "voluntarily disclosed to Meta [and the general public] the exact information she alleges is 'private' video information (her NNA Certification course)." . . . According to defendant, via her Facebook Page and LinkedIn Profile, plaintiff "operates and promotes a public notary business[,]" [], and "tout[s] her affiliation with the NNA and specifically her completion of the NNA Certification course,

4

> which she alleges is private information." (*Id*.) . . . However, the Facebook, LinkedIn, and business websites that defendant relies upon show only that plaintiff identified herself as a loan signing agent and that perhaps she obtained a Loan Signing Agent certificate from NNA. (*See* Dkt. 14-1, Clarke Decl. at ¶¶ 33-42); (*id*., Exhs. 1-4). They do not disclose which particular prerecorded videos she purchased from defendant's website.

*Id*. at \*3; *see also, e.g., Murray v. Nat'l Ass'n of Realtors*, No. 22-11107, 2023 WL 7726173, at \*6 (E.D. Mich. Nov. 15, 2023) (holding that plaintiff had Article III standing to redress disclosure of a magazine subscription in violation of a Michigan statute analogous to VPPA, explaining that "a voluntary disclosure of membership [in a realtor's association] does not equate to a voluntary disclosure of the magazine subscription" that some but not all members maintain).

In this case, just like in the above-cited decisions, a person's public promotion of himself or herself as a Zumba instructor (and thus, by implication, as a person who completed Zumba Basic 1 training) does not reveal that the person **purchased the prerecorded video-based ZB1 OD Version**. The latter is what the statute protects from disclosure and what Defendant disclosed without Plaintiffs' or Class members' informed written consent, thereby violating the statute and working concrete harm to each of them.

Because the issue identified in the Opposition has no bearing on Plaintiffs' or Class members' claims or their Article III standing, the issue identified in the Opposition has no bearing on the class-certification inquiry.

II.   **Defendant Disclosed Plaintiffs' and Class Members' VPPA-Protected Information to the Third-Party Advertisers Before Plaintiffs or any Class <u>Members Could Have Possibly Promoted their Services as Zumba Instructors</u>**

Second, Plaintiffs' and Class members' VPPA claims accrued, and their Article III injuries-in-fact manifested, at the moment Defendant disclosed information identifying them as purchasers of the ZB1 OD Version to the Third-Party Advertisers – before any of them became Zumba instructors and thus at a time when none of them were promoting themselves as Zumba instructors.

During the Relevant Time Period, Defendant sold products and services on the Website that, *inter alia*, enabled consumers to obtain the training necessary to teach "Zumba" classes to others. *See* Valdes Dep. at 15:23-25. One such offering on the Website during the Relevant Time Period was called Zumba Basic 1, an introductory-level Zumba instructor training course. *Id*. at 15:23-25, 16:10-12, 41:7-15. Although sold in three versions, only the on-demand (or "online") version of Zumba Basic 1 – i.e., the ZB1 OD Version – where a purchaser is provided access to 16 prerecorded video-based "modules," is at issue in this case. *See id*. at 42:4-7, 42:24-25, 43:1-3, 44:11-17, 44:20-25, 45:1-14, 43:4-7, 41:7-15, 47:11-17; Hedin Decl., Ex. 4.

Whenever a person purchased the ZB1 OD Version on the Website during the Relevant Time Period, including when each of the Plaintiffs and Class members purchased the ZB1 OD Version, the purchaser was *immediately* directed to an "order confirmation page" on Defendant's Website. Valdes Dep. at 70:13-16. Each of these uniformly formatted "order confirmation pages" identified the purchaser, by first and last name, as having purchased the ZB1 OD Version from Defendant. *Id.* at 74:11-76:13. The URLs of these "order confirmation pages" were uniformly formatted as follows: https://www.zumba.com/en-US/training/[MCN]/online_confirmation (with the MCN applicable to the purchase inputted in the [MCN] field in the foregoing) (hereinafter, a "ZB1 OD Version Order URL"). *Id*. at 76:14-78:25; Hedin Decl., Ex. 1, Declaration of Colin Weir at ¶ 25. And throughout the Relevant Time Period, all of these "order confirmation pages," including those pertaining to Plaintiffs' and all Class members' purchases, were publicly accessible to anyone who possessed the corresponding ZB1 OD Version Order URLs. *See* Valdes Dep. at 131:9-18; *see also id*. at 131:20-23. Moreover, throughout the Relevant Time Period, Defendant had programmed the Website so that, whenever a person purchased the ZB1 OD Version from the Website, the Website *immediately* transmitted the publicly accessible ZB1 OD Version Order URL of the purchaser's ZB1 OD Version "order confirmation page" to one or more of the Third-Party Advertisers.

Notably, at the time Defendant transmitted Plaintiffs' and Class members' ZB1 OD Version Order URLs to the Third-Party Advertisers in violation of the VPPA – again, immediately following each of their purchases of the ZB1 OD Version – none of the Plaintiffs or any Class member had completed the Zumba Basic 1 training to become certified Zumba instructors (to do that, they needed to watch the 16 prerecorded videos comprising the ZB1 OD Version they had just purchased). Thus, none of the Plaintiffs or other Class members could have possibly promoted themselves as Zumba instructors prior to Defendant's disclosure of their ZB1 OD Version Order URLs to the Third-Party Advertisers. Unsurprisingly, Defendant has presented no evidence that any of the Plaintiffs or Class members promoted themselves as Zumba instructors *prior* to Defendant's disclosures of their ZB1 OD Version Order URLs to the Third-Party Advertisers.

Thus, *immediately* following every purchase of the ZB1 OD Version by Plaintiffs and Class members during the Relevant Time Period – *and at a time when the purchaser was not yet a Zumba instructor and thus was obviously not publicly promoting himself or herself as a Zumba instructor* – Defendant knowingly disclosed, without the requisite consent, the purchaser's "personally identifiable information" to one or more Third-Party Advertiser – thereby violating the VPPA (and entitling the purchaser to recover statutory damages of $2,500) and working concrete and particularized harm to the purchaser sufficient to satisfy Article III's injury-in-fact requirement. *See Perry*, 854 F.3d at 1340 (holding that "violation of the VPPA constitutes a concrete harm") (citing *In re Nickelodeon*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps

6

'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.")). Accordingly, Plaintiffs' and all Class members' claims are capable of resolution in one stroke, with common proof, without even addressing the issue identified in the Opposition brief.

Because the issue identified in the Opposition brief has no bearing on Plaintiffs' or Class members' claims or their Article III standing, the issue identified in the Opposition brief has no bearing on the class-certification inquiry.

**III.** **Any Statements by Plaintiffs or Class Members Promoting Themselves as Zumba Instructors After Their VPPA Claims Accrued and Their Article III Injuries-in-Fact Manifested are Irrelevant to Class Certification Inquiry**

Third, any public statements by Plaintiffs or Class members promoting themselves as Zumba instructors (or otherwise) following the accrual of their claims (and the manifestation of their injuries-in-fact) cannot retroactively impact their VPPA claims or their Article III standing.

In the Opposition, Defendant itself acknowledges that Plaintiffs and all Class members have stated claims for violation of the VPPA and possess Article III standing. *See* Opp. at 4 ("Zumba does not ask the Court to revisit its ruling on personally identifiable information, and it does not contend that a wrongful VPPA disclosure is too abstract to be concrete; *Perry []* forecloses that categorical argument, and Zumba does not make it."); *id.* at 12 ("Zumba is candid about what it does not argue. It does not contend that a wrongful VPPA disclosure is insufficiently concrete to support Article III standing; *Perry* forecloses that categorical argument.").

Instead of arguing that Plaintiffs or any Class members lack Article III standing, Defendant appears to suggest that Plaintiffs and some Class members, because they publicly promoted themselves as Zumba instructors, possess ***less*** Article III standing than other Class members who did not publicly promote themselves as Zumba instructors. *See id.* at 14 ("Even assuming a cognizable disclosure occurred, the incremental injury Plaintiffs now describe cannot be established class-wide."). Defendant's argument is fundamentally misconceived. "The Constitution draws no distinction between injuries that are large, and those that are comparatively small." *Cramer v. Skinner,* 931 F.2d 1020, 1027 (5th Cir. 1991); *see also Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (to establish standing, "[t]he injury may be minimal"); *Council of Ins. Agents & Brokers v. Molasky–Arman,* 522 F.3d 925, 932 (9th Cir. 2008) (an "identifiable trifle" is sufficient to establish standing) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, (1973)). Thus, the extent to which a particular person suffers from the injury-in-fact caused by Defendant's VPPA violation is irrelevant to the Article III standing inquiry. As the Eleventh Circuit has explained in analyzing a plaintiff's Article III standing in the context of another statutory privacy claim:

7

> we consider two things when we evaluate whether concrete harm flows from an alleged statutory violation—and thus whether the plaintiff has standing. <u>First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. If so, that's enough</u>. If not, we ask whether the violation posed a material risk of harm to the plaintiff. If the answer to both questions is no, the plaintiff has failed to meet his burden of establishing standing.

*Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929 (11th Cir. 2020) (en banc) (emphasis added). Thus, "only the injury's existence, not its magnitude, is relevant to Article III standing." *Riley v. Houston Nw. Operating Co., L.L.C.*, No. CV H-19-2496, 2020 WL 3103899, at *4 (S.D. Tex. June 11, 2020) (citing *SCRAP*, 412 U.S. at 690 n.14); *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 675 (2019) (Alito, J., dissenting) ("[I]t is the existence—not the extent—of an injury that matters for purposes of Article III standing."); *see, e.g., Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) (finding that defendant's alleged regulatory violation adequately established concrete harm to plaintiff, "[r]egardless of the precise extent to which" the violation injured the plaintiff).

Here, Plaintiffs and all Class members suffered an injury-in-fact sufficient to satisfy Article III in the same way and at the same time (immediately upon their purchase of the ZB1 OD Version on the Website). The Eleventh Circuit (and all other circuits to have considered the issue) have conclusively held that a disclosure of a person's personally identifiable information in violation of the VPPA satisfies the "injury-in-fact" prong of Article III's standing requirements. *See Perry*, 854 F.3d at 1340-41. Moreover, Plaintiffs and all Class members have the same interest in the outcome of this litigation. Plaintiffs seek, on behalf of each of themselves and each Class member, the same statutorily authorized sum of $2,500 in liquidated damages to redress Defendant's systematic violations of the VPPA. That is the beginning and the end of the analysis for Article III purposes. *See Muransky*, 979 F.3d at 929; *Massachusetts v. EPA,* 549 U.S. 497, 517 (2007) ("At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness") (internal quotation marks omitted). Any subsequent public statements by Plaintiffs or any Class members promoting themselves as Zumba instructors (or even disclosing that they had purchased the ZB1 OD Version) are totally irrelevant to the analysis.

Indeed, in the context of a claim for damages, Article III standing is assessed as of the time the event giving rise to the claim occurred. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) (claim for nominal damages was not rendered moot when university mooted an injunctive relief claim by amending the policy challenged by the plaintiff). The concrete injury in a VPPA disclosure case is the defendant's unauthorized disclosure itself — a discrete event that, in this case, occurred immediately every time a person purchased the ZB1 OD Version from Defendant's Website. *See Perry*, 854 F.3d at 1341 (11th Cir. 2017); *see also Salazar v. NBA*, 118 F.4th 533 (2d

8

Cir. 2024); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017) ("the VPPA identifies a substantive right to privacy that suffers *any time* a video service provider discloses otherwise private information") (emphasis in original).  Nothing any of the Plaintiffs or Class members may have said or done after their VPPA claims accrued can retroactively deprive them of the Article III injuries-in-fact they indisputably suffered when Defendant made the violative disclosures.[4]

Even if any of the Plaintiffs or Class members had publicly disclosed the fact that they purchased the prerecorded ZB1 OD Version, that would still not retroactively destroy their Article III standing to redress Defendant's prior unauthorized disclosures of their information in violation of the VPPA. The statute gives the *consumer* the right to control whether any disclosure of the statutorily protected information occurs, 18 U.S.C. § 2710, and in this case it is undisputed that neither of the Plaintiffs nor any Class member consented in writing (or otherwise) to Defendant's disclosure of their VPPA-protected information to the Third-Party Advertisers.[5]  And yet, Defendant disclosed all of their VPPA-protected information to the Third-Party Advertisers anyway – acutely invading each person's VPPA-conferred right to privacy in a concrete and particularized way that is incapable of being reversed.

---

[4]     Events that occur following the accrual of a claim and the manifestation of an injury-in-fact are analyzed under mootness, not standing — and a previously accrued claim for damages tethered to a concrete harm never becomes moot. *Ermold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017) ("Damages claims are retrospective in nature—they compensate for past harm. By definition, then, such claims cannot be moot.") (internal quotation marks omitted) (citing *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 622 (3d Cir. 2013)).  While a subsequent public self-disclosure by Plaintiffs or Class members of the same information that Defendant had previously disclosed in violation of the statute might theoretically destroy Plaintiffs' and Class members' standing to pursue prospective injunctive relief on mootness grounds, a self-disclosure of this nature has no bearing on their standing to pursue their previously accrued claims that manifested injuries-in-fact. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 498 (1969) (holding that a claim for back pay survived even after ongoing harm was resolved); *Bd. of Pardons v. Allen*, 482 U.S. 369, 370 n.1 (1987) (paroled prisoners seeking injunctive relief regarding parole determinations could proceed on a damages claim even after being released on parole); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 (1989) (expiration of ordinance did not moot a damages claim about a contract denial made under the ordinance); *accord Christiana Tr. v. Riddle as next friend of Riddle*, 819 F. App'x 255, 256 (5th Cir. 2020) ("But the assignment of Riddle's loan did not, in fact, render this case moot, because a live controversy—albeit between different parties—persisted."). In any event, the Motion does not seek to certify an injunctive-relief class.

[5]     Notably, in finding that "the VPPA's creation of a cause of action for this type of an invasion of privacy 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,'" *Perry*, 854 F.3d at 1340-41 (quoting *Spokeo*, 136 S.Ct. at 1549), the Eleventh Circuit in *Perry* quoted the Supreme Court's finding in *U.S. Department of Justice v. Reporters Committee for Freedom of the Press* that "both the common law and the literal understandings of privacy encompass <u>the individual's control of information concerning his or her person</u>." *Perry*, 854 F.3d at 1341 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (emphasis added)).

Finally, Defendant's self-disclosure argument proves far too much. Filing a VPPA complaint itself publicly discloses that the plaintiff obtained certain specific prerecorded video material from the defendant.  Thus, if a plaintiff's own public disclosure of the same information a defendant had previously disclosed in violation of the statute was capable of destroying the plaintiff's standing to pursue a claim against the defendant, no VPPA claim could ever be litigated in federal court.  Courts properly reject jurisdictional theories that, like the one Defendant advances here, would make a congressionally created private right of action categorically unenforceable. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425, (2021) ("Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.") (internal quotation marks and citation omitted); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 590 n.7 (S.D.N.Y. 2016) ("We reject Condé Nast's argument that the fact that Boelter has made her PRI a matter of public record by bringing this suit undermines her claim of a privacy injury. It would undoubtedly chill enforcement of privacy rights if attempting to vindicate them through the judicial process undermined one's claimed interest."). Tellingly, Defendant fails to cite to any decision of any court dismissing a VPPA claim on this ground.[6]

## CONCLUSION

For the foregoing reasons, the Motion should be granted. The Court should certify the Classes pursuant to Rules 23(a) and 23(b)(3), appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel at Hedin LLP, Frank S. Hedin and Tyler K. Somes, as class counsel.

---

[6] Defendant writes in a footnote: "To the extent Plaintiffs seek to represent any putative class members whose information was allegedly transmitted to NextRoll or TradeDesk, Plaintiffs do not have standing to do so, as there is no evidence any of Plaintiffs' purported PII was transmitted to either third-party."  Opp. at 6, n.5.  This argument is not stated or developed in the body of the Opposition and arguments presented only in footnotes are generally waived. *Contessa v. White Pine INS. Co.*, No. 3:23-CV-00487-JAR-PDB, 2024 WL 4710163, at *1 (M.D. Fla. Nov. 7, 2024) ("arguments in a footnote are not considered"); *Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (argument waived because it was raised only in a footnote). In any case, Defendant is incorrect.  The term "Third-Party Advertisers" is defined in the Errata to the Motion as "Meta, Pinterest, NextRoll, and MNTN." Errata ¶ 4. Because TradeDesk is not included in the definition of Third-Party Advertisers, the Class definition does not include anyone by virtue of their ZB1 OD Version Order URL being transmitted to TradeDesk. Plaintiffs have standing to represent individuals whose ZB1 OD Version Order URLs were disclosed to NextRoll, however, because Plaintiffs possess the same interest and suffered the same injury as all nine (9) of the Class members whose information was disclosed to Nextroll. *See Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1046 (11th Cir. 2020).  Defendant has not identified any differences between those groups of people at all but rather summarily states that Plaintiffs cannot represent them.  Opp. at 6, n.5.  To the extent the court disagrees, it should strike the reference to NextRoll from the definition of Third-Party Advertisers, which will reduce the size of the Class by nine (9) people.

Date: August 10, 2026

Respectfully submitted,

/s/ *Frank S. Hedin*
Frank Hedin
HEDIN LLP
Florida Bar No. 109698
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
fhedin@hedinllp.com

Tyler K. Somes (*pro hac vice*)
HEDIN LLP
1100 15th Street NW, Ste 04-105K
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile: (305) 200-8801
tsomes@hedinllp.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record

/s/ *Frank S. Hedin*

12