UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-61983-WPD

CATHERINE KUEPPERS
and WATANYA BROWN,
individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

ZUMBA FITNESS, LLC,

Defendant.

_______________________________________/

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

THIS CAUSE is before the Court on Defendant Zumba Fitness, LLC ("Defendant" or "Zumba")'s Motion for Class Certification and Appointment of Class Representatives and Class Counsel (the "Motion"), filed herein on June 15, 2026. [DE 57], and Plaintiffs' accompanying Sealed Motion for Class Certification and Appointment of Class Representatives and Class Counsel [DE 61], filed herein June 17, 2026. The Court has carefully considered the Motions [DE 57]; [DE 61] (sealed), Zumba's Response in Opposition, filed on July 22, 2026 [DE 76], and Plaintiffs' Reply, filed August 10, 2026 [DE 75]. The Court has also considered the documentation that accompanies the Motions [DE 62](sealed), the exhibits contained in the conventionally filed USB [DE 65], the Errata to Plaintiffs' Motion to Certify Class and Appoint Counsel [DE 66], as well as the attachments to the Response [DE 76], [DEs 82, 83], and the record as a whole. The Court is otherwise fully advised in the premises.

## I. BACKGROUND

Catherine Kueppers and Watanya Brown, on behalf of a putative class, ("Plaintiffs") bring this for damages under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. The VPPA holds liable "video tape service provider[s]" who "knowingly disclose[], to any person," "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710. The evidence in the record suggests as follows.

Zumba offers for sale, through its website, Zumba.com, access to various prerecorded dance-oriented workout videos. One such video is the Zumba Basic I introductory-level Zumba instructor training course (the "training course"), which teaches instructors how to teach Zumba workout classes. The "on demand" version of the course provides access to 16 modules, each containing videos that may be viewed by the purchaser at their leisure.

Plaintiffs Catherine Kueppers and Watanya Brown, and all class members, purchased the on-demand version of the training course from Zumba's website during the class period—from October 22, 2022, and October 22, 2024. Upon their purchase, class members were directed to an "order confirmation page." The order confirmation page identified class members by name and confirmed the purchase of the on demand version of the training course. Because of the tracking technologies installed on Zumba's website, a URL link to this order confirmation page was automatically and immediately transmitted to a Third-Party Advertiser. The upshot is that the Third-Party Advertisers came to learn that each named class member had purchased the training course and planned to become Zumba instructors. *See* Colin Weir[1] Decls. [DE 62-1] [62-2] [69-

[1] President at Economics and Technology, Inc. ("ETI"), a research and consulting firm specializing in economics, statistics, regulation and public policy.

1](sealed) (analyzing data produced from Zumba and Third-Party advertisers); Frank Hedin[2] Decl., [DE 62-15] through [DE 62-19] ex. 15-19(sealed) (containing the data produced by each of the Third-Party Advertisers); Ralph Valdes[3] Dep. [DE 62-3](sealed) pp. 42-44, 80-120 (explaining the tracking technologies).

On May 8, 2025, the Court denied Zumba's Motion to Dismiss, holding the allegations stated a claim under the VPPA. *See* [DE 23]. On July 28, 2026, the Court denied Zumba's Motion for Judgment on the Pleadings, again holding Plaintiffs' claims sufficed to state a claim under the VPPA. *See* [DE 79]. By their instant Motion, Plaintiffs Kueppers and Brown seek to certify and represent the following "Class" pursuant to Rule 23(b)(3):

> All natural persons in the United States who purchased the ZB1 OD Version [the "training course"] from the Website, and whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of one or more Third-Party Advertisers, between October 22, 2022, and October 22, 2024.

Plaintiffs define "Third-Party Advertisers" as "Meta, Pinterest, NextRoll, and MNTN." [DE 66-1] ¶ 4. Additionally, Plaintiffs seek certification of three "Subclasses" pursuant to Rule 23(b)(3), each comprised of members of the Class whose first and last names appeared on "order confirmation pages" accessible at the URLs in the possession of a *particular* Third-Party Advertiser.

1. Plaintiff Kueppers seeks to certify and represent a "Meta Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of Meta.

2. Plaintiff Brown seeks to certify and represent a "Pinterest Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of Pinterest.

---

[2] Plaintiffs' counsel.
[3] Zumba's Chief Technology Officer.

3. Plaintiff Brown seeks to certify and represent a "MNTN Disclosure Subclass" comprised of all members of the Class whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of MNTN.

For the reasons below, the Court finds certification appropriate as all requirements of Rule 23 have been satisfied on this record.

## II. DISCUSSION

A district court has broad discretion in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). Although a district court is not to determine the merits of a case at the certification stage, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 1570 n.11 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). A court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006). Therefore, "before a district court determines the efficacy of class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does not mean that it has erroneously 'reached the merits' of the litigation." *Cooper v. S. Co.*, 390 F.3d 695, 712-713 (11th Cir.2004) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir. 1987)).

Parties seeking class action certification must satisfy the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Specifically, the four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party moving for class certification bears the burden of establishing each element of Rule 23(a). *London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003). If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action. *Jones v. Roy*, 202 F.R.D. 658, 662 (M.D. Ala. 2001).

If the plaintiff satisfies the requirements of Rule 23(a), it must also satisfy one of the three subsections of Rule 23(b). *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). Plaintiffs rely on Rule 23(b)(3), which "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'" *Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original).

The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011)). That is, "a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

**A. Ascertainability**

Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu v. Vital Pharm., Inc*., 621 F. App'x 945, 946 (11th Cir. 2015) (quoting *Little.*, 691 F.3d at 1304 (internal quotation marks omitted)). A plaintiff must demonstrate that its proposed class is adequately defined and clearly ascertainable before a court can analyze whether the requirements of Rule 23(a) are met. *Little*, 691 F.3d at 1304. "A class is clearly ascertainable if we are certain that its membership is capable of being determined." *Cherry v. Dometic Corp.,* 986 F.3d 1296, 1304 (11th Cir. 2021) (internal quotations omitted).

In this action, the precise names of all 4,543 class members have already been ascertained. Plaintiffs have produced records directly from Zumba and Third-Party Advertisers reflecting the persons who (1) who purchased the training course from the Zumba website between October 22, 2022, and October 22, 2024; and (2) whose first and last name appear on "order confirmation pages" accessible at URLs possessed by Third-Party Advertisers (or, in the case of the Subclasses, possessed by a particular Third-Party Advertiser) during the same time period. *See* Weir Decl. [62-2](sealed) ¶ 43; Weir. 2nd Supp. Decl. [69-1](sealed) ¶¶ 40-43.

Likewise, the precise members of each Subclass have also already been determined. There are 3,061 members of the Pinterest Disclosure Subclass, 2,665 members of the MNTN Disclosure Subclass, and 1,576 members of the Meta Disclosure Subclass. These subclasses were ascertained by identifying the list of people whose confirmation page URLs were found in a particular Third-Party Advertiser's records—that is, they were transmitted to and received by that Third-Party Advertiser via the tracking technologies on Zumba's website. *See* Weir Decl. [62-2](sealed) ¶ 43; Weir. 2nd Supp. Decl. [69-1](sealed) ¶¶ 40-43.

Zumba does not dispute that the proposed classes are ascertainable. Accordingly, ascertainably is met, as the precise class has already been ascertained.

**B. Numerosity**

Rule 23(a) requires that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Therefore, "[a] plaintiff must present some evidence that the class to be certified will satisfy the numerosity requirement of Rule 23." *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672 (S.D. Fla. 2012). With respect to this requirement, "[t]he Eleventh Circuit has held that '[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Plaintiff has satisfied the numerosity requirement in the present case. Plaintiffs have produced evidence that there are 4,543 members of the Class, 3,061 members of the Pinterest Disclosure Subclass, 2,665 members of the MNTN Disclosure Subclass, and 1,576 members of the Meta Disclosure Subclass. Defendant does not challenge the numerosity of the proposed

classes. *See* Weir Decl. [62-2](sealed) ¶ 43; Weir. 2nd Supp. Decl. [69-1](sealed) ¶¶ 40-43. Accordingly, the numerosity requirement is satisfied. [4]

**C. Commonality**

The second requirement of Rule 23(a) is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement overlaps significantly with the predominance requirement. The Court will briefly discuss commonality here; however, the Court will reserve much of its discussion of common questions for its analysis of predominance.

Commonality "does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citation omitted). Rather, "[c]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The resolution of the common issue must be achievable on a class-wide basis. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Put another way, what matters to class certification is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *See id.* (quotation omitted). Commonality is ultimately a relatively light burden as it does not require all, or often even most, questions of law or fact to be shared amongst all putative class members. *Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 537 (S.D. Fla. 2015).

---

[4] Judge Scola of this District recently denied VPPA class certification motion on the sole ground that plaintiffs had failed to establish numerosity, where plaintiffs generally alleged that all 35,845 subscribers had been impacted by the disclosure of their information through tracking pixels, but conceded that several limitations would substantially lower this figure. *See Mauricio Martinez v. D2C, LLC* , 23-21394-Civ-Scola (S.D. Fla. Oct 1, 2024) [DE 147]. Here, in contrast, the Court is met with actual evidence of numerosity. *See supra* II. B.

The Court finds the commonality requirement is satisfied as there is more than one issue that affects all class members. Namely, (1) whether the training course was comprised of "video material[] or service," (2) whether Zumba knowingly disclosed "personally identifiable information," and (3) whether Plaintiffs were "consumers" and Defendant a "video tape service provider," among other inquiries. 18 U.S.C. §§ 2710(a)(1), (3); The truth or falsity of these elements can readily be resolved on a class-wide basis. *See, e.g.*, *Jancik v. WebMD LLC,* No. 22-CV-644, 2025 WL 560705, at *7 (N.D. Ga. Feb. 20, 2025) (commonality satisfied by similarly defined class of VPPA claimants); *see also Frasco v. Flo Health*, Inc., 349 F.R.D. 557, 574-585 (N.D. Cal. 2025) (finding commonality satisfied for several California privacy claims premised on allegations that a menstrual tracking application disclosed personal information via third-party tracking technologies, including common questions such as "Was private information transmitted to Google and Meta?"). Zumba collapses the commonality and predominance inquiries, so Zumba's objections are addressed in substance below. *See infra* II.F.

**D. Typicality**

The claims or defenses of the representative class member must also be typical of the claims or defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). "Typicality . . . does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Rather, typicality "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* The class representative's claims "need not be identical" to those of class members; they need only "'arise from the same event or pattern or practice and [be] based on the same legal theory.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).

Upon careful review, the Court finds that Plaintiffs' claims are typical of the Class's claims. The evidence adduced by Plaintiffs reflects that both Plaintiffs purchased the same training course from Zumba during the class period, and that their data—like that of the class members—was found in possession of (and thus, transmitted to) the Third-Party Advertisers. *See* Hedin Decl., [DE 62-8](sealed); Valdes Dep. [DE 62-3](sealed) at 140:6-17; Weir Decl. [62-1](sealed) at ¶ 42, 43; Weir. Supp. Decl. [62-2](sealed) at ¶ 43. Accordingly, because Plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of all members of the Class (and Subclasses), the typicality requirement of Rule 23(a)(3) is satisfied. *See Williams*, 568 F.3d at 1356-57; *Jancik*, 2025 WL 560705 at *8 (finding the typicality requirement satisfied where "[j]ust like other class members, [plaintiff] supposedly watched videos on webmd.com during the relevant time period, and WebMD used the Facebook Pixel to collect her video-viewing activity and other PII and transmit that data to Facebook.") (internal quotations omitted).

Zumba argues Plaintiffs' claims are atypical because they are subject to unique defenses. Namely, because both Kueppers and Brown publicly advertised their status as certified Zumba instructors to promote their own businesses, they do not present claims typical of the claims of putative class members. "[T]ypicality is undermined when a unique defense would impair the alignment of interests between the named plaintiff and the class," and "[t]he existence of a unique defense … is relevant to the certification decision." *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006) (quotation omitted).

But here, Zumba's supposed defenses have no impact on the certification decision. First, Zumba has not pointed to any source of law—statutory or otherwise—that creates the affirmative defense that it promotes, and the Court, upon an independent review, has not identified any

statutory provision or common law that generates such a defense. An affirmative defense must be cognizable; it may be stricken where it is "insufficient as a matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (citation omitted). Whether an affirmative defense is cognizable is specific to the cause of action alleged. *See e.g., Morrison v. Exec. Aircraft Refinishing, Inc.,* 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005) (striking an affirmative defense because "[f]ederal courts have repeatedly rejected equitable estoppel as an affirmative defense to an FLSA action"); *Seatbelt Sols., LLC v. Retrobelt USA, LLC*, No. 16-62487-CIV, 2017 WL 7796160, at *1 (S.D. Fla. Aug. 17, 2017) (declining to strike an affirmative defense because "[a]s several courts have recognized, the unclean hands defense applies to actions under the Lanham Act"). Zumba has not even couched its affirmative defense in one of the recognized defenses under Rule 8(c)(1), let alone pointed to authority that allows the defense to proceed as against a VPPA claim. It would seem a defendant violates the VPPA by disclosing the personally identifiable information of a consumer in connection with the purchase of a specific video material—and that any subsequent choice of Plaintiff to promote having seen such a video, or, in this case, implying that such a video was watched—has no impact on the violation in the first instance.

Second, to the extent that Zumba does have a legally cognizable defense, Zumba's own motion appears to admit that such defenses *would be typical* of the class as a whole. Zumba repeatedly acknowledges that "[e]very member bought a licensing credential whose purpose is public display." Def. Resp. [DE 76] pp. 3, 4, 13, 15. Thus from a factual standpoint, to the extent cognizable, Zumba could assert this defense with respect to all class members collectively.

Accordingly, Plaintiffs have satisfied their burden to show that Plaintiffs' claims are typical here.[5]

**E. Adequacy**

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "To determine whether the adequacy requirement is met, [a court asks]: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1275 (11th Cir. 2021) (quoting *Valley Drug Co. v. Geneva Pharms., LLC*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Both Plaintiffs and their counsel satisfy this standard. Neither Plaintiff has any interests antagonistic to or otherwise in conflict with the interests of any members of the Classes. Kueppers Decl. [DE 62-20](sealed) at ¶¶ 6-7; Brown Decl. [DE 62-21](sealed) at ¶¶ 6-7. Moreover, Plaintiffs Kueppers and Brown have each retained competent counsel, assisted with counsel's investigation, reviewed and authorized the filing of legal documents, responded to discovery, traveled to and sat for lengthy depositions, and kept in regular contact with their counsel. *See id*.

---

[5] Moreover, to the extent Zumba's arguments amount to affirmative defenses, they are untimely. An affirmative defense must "be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it as such." *Steger v. General Elec. Co*., 318 F.3d 1066, 1077 (11th Cir. 2003) (citing *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins*. Corp**.**, 710 F.2d 1528, 1537 (11th Cir. 1983)); Fed. R. Civ. P. 8(c). Zumba never pled this affirmative defense in their answer, and the time to amend pleadings has passed. *See* Defendant's Answer and Affirmative Defenses to Plaintiffs; Second Amended Class Action Complaint, [DE 46].

Likewise, Plaintiffs' counsel at Hedin LLP is extremely well qualified to represent the Classes in this matter, as demonstrated by its skilled prosecution of the instant action up until this point, and having successfully conducted many similar data-privacy class actions in the past. *See* Hedin Decl. [DE 62] (sealed) ¶¶ 5-9; [DE 62-22](sealed) (Hedin LLP Firm Resume). Nor do the interests of Plaintiffs' counsel conflict with the interests of any unnamed class members. *See* Hedin Decl. [DE 62](sealed) ¶ 9. Accordingly, the Rule 23(a) requirements are satisfied as to each of the classes.

Zumba's adequacy arguments mirror its typicality arguments. *See* Def. Resp. [DE 76] p. 9 (stating that these inquiries "tend to merge"). According to Zumba, Plaintiffs will not be able to adequately protect class members as they will be preoccupied defending their individual claims. But the Court does not share these concerns. As explored above, *see supra* II.D, such defenses are not cognizable, or, alternatively, are shared by all the members of the class.

**F. Rule 23(b) Requirements**

In addition to meeting the requirements under Rule 23(a), parties seeking class certification must also satisfy one of the subsections of Rule 23(b). *Babineau v. Fed. Exp. Corp.,* 576 F.3d 1183, 1190 (11th Cir. 2009). Here, Plaintiffs assert certification is appropriate under Rule 23(b)(3). "Class certification under Rule 23(b)(3) is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)). The Court will consider each requirement in turn.

*i. Predominance*

The predominance inquiry focuses on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Sanchez-Knutson v. Ford Motor Co*., 310 F.R.D. 529, 537 (S.D. Fla. 2015) (quoting *Brown v. SCI Funeral Servs. of Fla.,* 212 F.R.D. 602, 606 (S.D. Fla. 2003)). That is, "[i]ssues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof." *Rosen*, 270 F.R.D. at 681 (citing *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). Where "the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate." *Klay v. Humana, Inc*., 382 F.3d 1241, 1255 (11th Cir. 2004) (quotations omitted). "It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254.

As above, the question of Zumba's liability with respect to all class members will turn on a handful of common factual and legal issues, none of which require examination into individualized evidence. The success or failure of all Class members' claims will turn on whether Zumba knowingly disclosed the URL containing PII to a Third-Party Advertiser via a tracking technology installed on its website. The Court agrees with Plaintiffs that VPPA class actions premised on the transmittal of PII through cookies to third party advertisers are "tailor made" for certification: the disclosure happens systematically and without consent, while plaintiffs play a relatively small role, if any, apart from making their purchase on Zumba's website, which all class members uniformly did. *See e.g.*, *Jancik*, 2025 WL 560705 at *9; *see also Sophia Sahagùn, v. Themis Bar Review, LLC*, 24-cv-02065 (N.D.Ill.) (granting joint motion for final approval of class action settlement); *Stark v. Patreon, Inc.,* No. 22-CV-03131-JCS, 2025 WL 1592736, at *1

(N.D. Cal. June 5, 2025) (same); *Feldman v. Star Trib. Media Co. LLC,* No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556, at *6 (D. Minn. June 17, 2024) (same, stating the VPPA action wherein plaintiff allegedly shared subscribers' video-viewing history with Facebook using a Facebook Pixel was a "quintessential case where common issues predominate"); *Dana Manza v. Pesi, Inc*, 24-cv-690-jdp (W.D. Wisc. Jan. 23, 2026) (same). Further, even though "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate," *Allapattah Servs., Inc. v. Exxon Corp*., 333 F.3d 1248, 1261 (11th Cir. 2003), there are no individualized damages issues given that Plaintiffs here seek the statutorily authorized sum of $2,500 in liquidated damages for each class member. *See* SAC ¶ 239 (citing 18 U.S.C. § 2710(c)(2)(A)). Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

Contrary to Zumba's argument, and as above, it is immaterial that Plaintiffs broadcasted themselves as Zumba instructors *following* the alleged nonconsensual disclosure of their data. As explored above, *see supra* II.D., it is not apparent that this defense would defeat a VPPA claim as a matter of law, even if true. In the alternative, such defenses appear to be shared by all the members of the class. The same conclusion follows in the predominance context. "In order to make the findings required to certify a class action under Rule 23(b)(3)," the Court "must initially identify the substantive law issues which will control the outcome of the litigation." *Marino v. Home Depot U.S.A., Inc*., 245 F.R.D. 729, 734 (S.D. Fla. 2007) (internal quotations omitted). Here, Zumba has not identified any legally cognizable substantive defense that would invite any valid legal inquiry, let alone an individualized inquiry.

Zumba argues that predominance analysis implicates Article III standing. Zumba argues Plaintiffs fail to allege an "injury-in-fact" because they broadcasted themselves as Zumba instructors and thus were not injured by Zumba's disclosures. Zumba furthermore asserts that

certification is inappropriate because standing will turn on the individualized class members' decisions of whether they broadcasted their Zumba instructor certifications.

In some cases, the "unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019). Thus, under the predominance analysis, "a district court must determine whether 'each plaintiff will likely have to provide some individualized proof that they have standing.'" *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 n. 13. (11th Cir. 2023) (citing *Cordoba*, 942 F.3d. at 1275). To establish Article III standing, the Plaintiff must show that (1) he has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (1) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations and citations omitted). For an injury to be concrete, the "injury must be 'de facto'; that is, it must actually exist." *Id.* An injury need not be tangible to be concrete. *Id.* at 1549.

Here, the Court disagrees with Zumba that any individualized inquiries regarding standing are at play. The Eleventh Circuit has expressly recognized that a violation of the VPPA generates a concrete injury for Article III purposes. *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) ("we hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure."). It is not clear why Plaintiffs' individual choices to promote

their Zumba instructor certification would impact Plaintiffs' or class members' Article III injury, and Zumba does not direct the Court's attention to case law or statutory language, apart from generalized standing law, that promote its interpretation.

Instead, Plaintiffs and all class members have a constitutional injury here, regardless of their individualized choice to broadcast their Zumba instructor certification status. The statute is violated when Zumba, without authorization, disclosed the fact of Plaintiffs' purchase/subscription to its video training course to third parties without authorization. *See* 18 U.S.C. § 2710. The injury is concrete in that Zumba allegedly violated Plaintiffs' privacy—an "*individual's control* of information concerning his or her person." *Perry*, 854 F.3d at 1341 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (emphasis added) (discussing the VPPA's relationship to common law privacy concepts for Article III purposes). Plaintiffs' subsequent disclosure of their Zumba instructor certification status does not impact Article III standing, because the "injury" crystallized when Plaintiffs lost control over the disclosure. *See Frasco,* 349 F.R.D. at 580 ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm.") (collecting authorities).

However, Zumba's point is well taken with respect to Plaintiffs' standing to represent any subclass of putative class members whose information was allegedly transmitted to NextRoll or TradeDesk. Zumba argues, and Plaintiffs agree, that there no evidence any of Plaintiffs' purported PII was transmitted to either third-party. "[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Accordingly, the Court will strike the

reference to NextRoll from the definition of Third-Party Advertisers, which, according to Plaintiffs, will reduce the size of the Class by nine people. Plaintiffs have already abandoned their TradeDesk subclass claims by excluding TradeDesk from the definition of "Third-Party Advertisers." Errata [DE 66] ¶ 4; Reply [DE 84] p. 10.

*ii. Superiority*

Finally, a class action is superior to other methods for resolving this case. *See* Fed. R. Civ. P. 23(b)(3) (providing a court may certify a class if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."). "In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269.

Adjudicating this case as a class action is superior to joining thousands of individual actions. Each of the factors listed in Rule 23(b)(3)(A)-(D) indicate that a class action is superior: (1) no Class members have an interest in individually controlling the prosecution of the case given the small sum of damages at stake for each individual claim; (2) there are no other actions pending concerning the same controversy; (3) this is the most logical forum for litigating the claims given that Defendant is headquartered and principally based in this judicial District; and (4) there are no meaningful difficulties in managing this case as a class action, especially since the members of the proposed Classes have already been identified. See Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Jancik*, 2025 WL 560705 at *9.

**IV. CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Motions [DEs 57, 61(sealed)] are **GRANTED**
2. Court hereby certifies the Class and the Subclasses, as defined in the Motion, pursuant to Rules 23(a) and 23(b)(3);
3. Plaintiff Catherine Kueppers is appointed as representative of the Class and the Meta Disclosure Subclass.
4. Plaintiff Brown is appointed as representative of the Class and the Pinterest Disclosure Subclass and the MNTN Disclosure Subclass.
5. Plaintiffs' counsel at Hedin LLP, Frank S. Hedin and Tyler Somes, are appointed as counsel for the Class and Subclasses pursuant to Rule 23(g).
6. On or before August 28, 2026, the parties shall jointly file for approval by the Court a proposed notice to Class members; alternatively, if the parties cannot agree on a proposed notice, Plaintiffs shall file a proposed notice on or before August 28, 2026, and Defendant shall file any objections by September 2, 2026.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida this 19th day of August, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to

Counsel of record