**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CATHERINE KUEPPERS; and WATANYA BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUMBA FITNESS, LLC,<br><br>Defendant. | Case No. 0:24-cv-61983-WPD |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT**

Plaintiffs Catherine Kueppers and Watanya Brown ("Plaintiffs"), individually and as Court-appointed representatives of the certified Class and Subclasses, respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for preliminary approval of their proposed class-action settlement with Defendant Zumba Fitness, LLC ("Defendant" or "Zumba"), the terms of which are set forth in the Class-Action Settlement Agreement ("Settlement Agreement" or "SA") attached as Exhibit 1 to the concurrently filed Declaration of Frank S. Hedin ("Hedin Decl."). Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement. *See* SA § II. Defendant does not oppose this motion.

## INTRODUCTION

This is a certified class action under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), on behalf of 4,543 consumers who purchased the on-demand, prerecorded-video version of Defendant's "Zumba Basic 1" instructor training course from Zumba.com, and whose names—together with information identifying them as purchasers of that video course—were transmitted by Defendant, through tracking technologies on its website, to Meta Platforms, Inc. ("Meta"), Pinterest, Inc. ("Pinterest"), and MNTN, Inc. ("MNTN") (collectively, the "Third-Party Advertisers"). Over nearly two years of hard-fought litigation, Plaintiffs defeated Defendant's motion to dismiss in a published opinion, *Kueppers v. Zumba Fitness, LLC*, 805 F. Supp. 3d 1226 (S.D. Fla. 2025) (ECF No. 23); defeated its motion for judgment on the pleadings (ECF No. 79); took extensive party, third-party, and expert discovery; and, over Defendant's vigorous opposition, obtained certification of the Class and three Subclasses (ECF No. 85). Six days after the certification order, Defendant accepted the settlement demand Plaintiffs had served before that order issued, the terms of which are now memorialized in the Settlement Agreement.

The result is, to Class Counsel's knowledge, the most favorable settlement of a VPPA class action to date on a per-class-member basis. Defendant will pay $2,700,000 to establish an all-cash, non-reversionary Settlement Fund—approximately ***$594 per Class Member*** on a gross basis—from which Cash Awards will be ***automatically*** paid to all Class Members, without requiring claim forms. SA § II ¶¶ 9, 45. By comparison, in the 26 largest all-cash, non-reversionary VPPA settlements approved before this one, the average gross recovery was $8.97 per class member, the highest was $39.42, and every one of them required claim forms. Hedin Decl. ¶¶ 32-36 & *id.,* Ex. 2 (chart of finally approved non-reversionary VPPA settlements). Many other prior VPPA settlements paid a small, fixed sum to each class member who submitted a claim form, and whatever was left in the "fund" (typically the lion's share of it) reverted to the defendant.[1] And some prominent VPPA settlements paid class members nothing at all.[2]

This Settlement also pays Class Members in an equitable manner, with the amount of each Cash Award commensurate with the number of Subclasses to which the recipient Class Member belongs (i.e., the number of third parties found to be in possession of the Class Member's personally identifiable information ("PII")). Upon final approval of the Settlement, 1,917 Class Members (those whose PII was found in the records of a single Third-Party Advertiser) will automatically receive a Cash Award of $228.78; 2,493 Class Members (those whose PII was found in the records of two Third-Party Advertisers) will automatically receive a Cash Award of $457.56; and 133 Class Members (those whose PII was found in the records of all three Third-Party Advertisers) will automatically receive a Cash Award of $686.34. SA § III ¶¶ 54-67. So whereas the typical all-cash, non-reversionary VPPA settlement recovers roughly one-third of one percent of the class's available statutory damages – assuming just one disclosure of each class member's PII, measured against the VPPA's $2,500 liquidated-damage figure, 18 U.S.C. § 2710(c)(2)(A) –

---

[1] *See, e.g., Ohebshalom et al. v. Dapper Labs, Inc*., No. 615987/2025, Doc. No. 50 (Sup. Ct., Nassau County, N.Y., Apr. 30, 2026) (approving $5 million reversionary, claims-made VPPA class-action settlement where roughly 5% of the more than 1.2 million class members submitted claim forms, each claiming class member received $5.00, four plaintiffs received $5,000 service awards, class counsel received $1.3 million in fees, and over $3 million reverted to the defendant); *Wade v. The Daily Wire, LLC*, No. CACE-24-003886 (17th Jud. Cir., Broward Cty., Fla.) ($2 million "fund" used to pay attorneys' fees and expenses and "up to $15.00" to each class member who submitted claim, remainder reverted to defendant); *Bolanos v. V Shred, LLC*, CACE-25-001211 (17th Jud. Cir., Broward Cty., Fla.) ($4 million "fund" used to pay attorneys' fees and expenses and "up to $10.00" to each class member who submitted claim, remainder reverted to defendant).

[2] *See, e.g., In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ($9 million *cy pres*-only settlement); *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ($9.5 million *cy pres*-only settlement of VPPA and related claims); *Hayek et al v. Alo, LLC*, No. 2024LA00000193 (19th Jud. Cir., Lake Cty., Ill.) (no cash, but voucher for three months of defendant's online service, "valued at $38.79," to each class member who submitted claim form).

the $2.7 million Settlement achieved in this case recovers nearly 15% of the $2,500 in liquidated damages available under the statute ***for every disclosure of every Class Member's PII*** on a gross basis, and actually pays every Class Member over 9% of that statutorily authorized sum ***for every disclosure*** that occurred – automatically.[3]

Thus, in both structure and per-Class-Member recovery, the Settlement presently before the Court for approval is in a league of its own, outperforming every VPPA settlement that has come before it by a wide margin.

The strength of this Settlement is further underscored by several real risks of non-recovery that continued litigation would have posed. Defendant has argued, with support from other courts, that disclosure of the purchase of a video course comprised of multiple videos—rather than a single video title—falls outside the statute (ECF No. 54), and that Class Members forfeited any privacy interest by later holding themselves out as Zumba instructors (ECF No. 76). This Court rejected those arguments at the pleading and certification stages, but Defendant would surely have pressed them at summary judgment, at trial, and on appeal to an Eleventh Circuit that has not yet construed "personally identifiable information"—all while the Supreme Court considers the statute's scope in *Salazar v. Paramount Global*, No. 25-459 (U.S.) (cert. granted Jan. 26, 2026, argument set for Oct. 14, 2026). Every Class Member's claim also turned on a genuinely contested factual question: whether an "order confirmation page" displaying a purchaser's name, the title of the course purchased, and a label identifying it as the "online" version of that course—a label Defendant insisted "describes delivery, not content" (ECF No. 75 at 3)—identified the purchaser as having obtained "specific video materials or services" from a "video tape service provider." Defendant also preserved its defense that it did not "knowingly" disclose Class Members' PII, and at settlement the record was unclear whether Defendant knew its "order confirmation pages" were publicly accessible to anyone in possession of their URLs, such as the Third-Party Advertisers. The proposed Settlement avoids these risks entirely, and will provide immediate, certain, and *meaningful* relief to all Class Members if approved.

---

[3] Although it does not appear the issue has ever been decided, Plaintiffs believe the statute's $2,500 liquidated sum of available damages is recoverable for each unauthorized disclosure made by a defendant in violation of the statute—meaning that a single individual whose PII was disclosed to multiple third parties may recover multiple $2,500 awards from the defendant, each to redress a separate violative disclosure. *See* 18 U.S.C. § 2710(c)(2)(A). Measured this way, the aggregate sum of Class-wide damages at stake is $18,255,000 (computed by multiplying the total number of disclosures of Class Members' PII to all three Third-Party Advertisers (7,302) by the statute's $2,500 liquidated-damage sum), roughly 14.8% of which the Settlement recovers. If, on the other hand, just a single $2,500 liquidated-damage award is recoverable under the statute by a single individual, regardless of the number of violative disclosures he or she suffers, the aggregate sum of Class-wide damages at stake is $11,357,500 (computed by multiplying the total number of Class Members (4,543) by $2,500), roughly 23.8% of which the Settlement recovers.

By any measure, the Settlement is a fair, reasonable, and adequate resolution to this litigation. Plaintiffs therefore request that the Court (1) preliminarily approve the Settlement; (2) approve the Class Notice Program and direct dissemination of the Class Notice; (3) appoint Simpluris, Inc. ("Simpluris") as Settlement Administrator; (4) approve the schedule below and set a Final Approval Hearing; and (5) stay all other deadlines in the interim.

## BACKGROUND

### A. Plaintiffs' Claims

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person," 18 U.S.C. § 2710(b)(1), for "liquidated damages in an amount of $2,500," punitive damages, fees, and equitable relief, *id.* § 2710(c)(2). "Personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3).

As alleged in the operative Second Amended Class Action Complaint, Defendant sells, through Zumba.com, access to prerecorded videos, including the on-demand version of its Zumba Basic 1 instructor training course (the "ZB1 OD Version"), which comprises sixteen modules of prerecorded video. Second Am. Class Action Compl. ("SAC"), ECF No. 45, ¶¶ 56-60; ECF No. 85 at 2. Upon purchasing the ZB1 OD Version during the Relevant Time Period, each customer was directed to an "order confirmation page," at a unique URL, displaying the customer's first and last name and confirming the purchase, and the tracking technologies Defendant installed on its website automatically transmitted that URL to one or more of the Third-Party Advertising Companies—thereby disclosing that a particular person had obtained the ZB1 OD Version. ECF No. 85 at 2-3, 6; SAC ¶¶ 101-03. Defendant never obtained its customers' informed, written consent to make these disclosures. SAC ¶¶ 5, 237.

### B. The Litigation

Plaintiff Kueppers commenced this Action on October 23, 2024. ECF No. 1. In response to the Complaint, Defendant moved to dismiss, arguing that disclosure of a URL to an order confirmation page—rather than a video title—is not personally identifiable information; that an "ordinary person" could not link the disclosed information to a consumer; that disclosure of a *course* containing videos falls outside the statute; and that it did not "knowingly" disclose anything because it never possessed its customers' Facebook or Pinterest identifiers. ECF No. 12. After briefing and oral argument, the Court denied the motion in a published opinion, holding that a VPPA plaintiff "need not allege that the specific video titles were disclosed," declining to adopt the Ninth Circuit's "ordinary person" standard absent Eleventh Circuit precedent, and holding that

Defendant's intentional installation of the tracking pixels sufficed to allege a knowing disclosure. *Kueppers*, 805 F. Supp. 3d 1226 (ECF No. 23 at 5-11).

Plaintiffs filed the operative SAC on November 26, 2025. ECF No. 45. In its Answer, Defendant asserted fifteen affirmative defenses, including consent, waiver, failure to mitigate, lack of Article III standing, absence of a knowing disclosure, the "ordinary course of business" exception, and the First Amendment. ECF No. 46 at 37-39.

Discovery was extensive. Plaintiffs served five sets of requests for production, three sets of interrogatories, and requests for admission; noticed six depositions of Defendant and its employees, including the Rule 30(b)(6) deposition of Defendant's corporate representative; served fifteen third-party subpoenas, including multiple subpoenas on Meta, Pinterest, MNTN, NextRoll, Inc., and The Trade Desk, Inc., each of which produced records of the transmissions it received from Defendant's website; reviewed thousands of documents and communications and voluminous sets of ESI; and each sat for lengthy depositions. Hedin Decl. ¶¶ 13-17; ECF No. 85 at 12. Plaintiffs' expert, Colin B. Weir of Economics & Technology, Inc., matched the third parties' transmission records against Defendant's purchase records and identified by name every person whose order confirmation URL was received by each third party during the Relevant Time Period. Hedin Decl. ¶ 17; ECF No. 85 at 6-7.

On June 10, 2026, Defendant moved for judgment on the pleadings, contending that the VPPA does not reach disclosure of a "subscription to access" a video course and relying on *Benson v. SimpleNursing, LLC*, No. 24-1118-GBW, 2026 WL 1045614 (D. Del. Apr. 17, 2026), and *Lovett v. Continued.com, LLC*, No. 1:24-cv-590, 2025 WL 1809719 (S.D. Ohio July 1, 2025), which accepted materially identical arguments. ECF No. 54. The Court denied the motion on July 28, 2026, holding that the statute "does not impose any requirement that specific video titles are disclosed" while acknowledging that Defendant's contrary authority was "persuasive but not controlling." ECF No. 79 at 7-9.

Meanwhile, Plaintiffs moved to certify the Class and Subclasses. ECF Nos. 57, 61. Defendant opposed, contending that Plaintiffs were atypical and inadequate because they had publicly advertised their status as certified Zumba instructors, and that individualized questions of "privacy interest" and Article III standing predominated. ECF No. 76. On August 20, 2026, the Court granted the motion in a nineteen-page order, certifying the Class and the Meta, Pinterest, and MNTN Disclosure Subclasses; appointing Plaintiffs as representatives of the Classes; appointing Frank S. Hedin and Tyler K. Somes of Hedin LLP as Class Counsel; and directing the Parties to submit a proposed class notice. ECF No. 85 at 19.

**C. Settlement**

On August 18, 2026—with certification and judgment on the pleadings fully briefed, and after Plaintiffs' counsel and Mr. Weir had completed their analysis of the complete transmission

and purchase records—Plaintiffs served a written demand to resolve the Action on the material terms now embodied in the Settlement Agreement. Hedin Decl. ¶ 21. Two days later, the Court certified the Class. ECF No. 85. On August 26, 2026, Defendant accepted the pending demand without modification. Hedin Decl. ¶ 22. On August 28, 2026, the Parties executed a binding term sheet and filed a notice of settlement. ECF No. 86; Hedin Decl. ¶ 24. Class Counsel then solicited competing administrator proposals, selected Simpluris, and worked with Simpluris to device the proposed Class Notice Program and prepare the proposed Class Notices. *Id.* ¶ 29.

On September 14, 2026, the Parties executed the Settlement Agreement. *Id.* ¶ 28 & Ex. 1.

## TERMS OF THE SETTLEMENT

### A. The Class

The Settlement resolves the claims of the Class the Court has already certified, without alteration:

> All natural persons in the United States who purchased the ZB1 OD Version from the Website, and whose first and last names appeared on "order confirmation pages" accessible at ZB1 OD Version Order URLs in the possession of [Meta, Pinterest, and/or MNTN], between October 22, 2022, and October 22, 2024.[4]

SA § II ¶ 6; *see* ECF No. 85 at 3, 17-19. The Class consists of 4,543 persons, each identified by name on the Class List and each belonging to one or more Subclasses: the Meta Disclosure Subclass (1,576 members), the Pinterest Disclosure Subclass (3,061 members), and the MNTN Disclosure Subclass (2,665 members).[5] SA § II ¶¶ 8-9, 21, 23, 33. The third parties' records thus reflect 7,302 disclosures of Class Members' personally identifiable information. *Id.* ¶ 46.

### B. The Settlement Fund and the Automatic Cash Awards

Within thirty days after entry of the Preliminary Approval Order, Defendant will deposit $2,700,000 into an interest-bearing Settlement Fund administered by Simpluris, with all interest accruing to the Class. SA § II ¶ 45; § III ¶¶ 54-57. The Settlement Fund is the exclusive source of Court-approved Settlement Administration Expenses (estimated at $28,095 and capped at $32,095), any Court-approved Attorneys' Fee and Expense Award, and the Cash Awards. *Id.* § II

---

[4] "ZB1 OD Version Order URLs" means the URL of an order confirmation page to which a person was sent upon purchasing the ZB1 OD Version on Defendant's Zumba.com website during the Relevant Time Period.

[5] In the class-certification order, the Court struck NextRoll, Inc. from the definition of "Third-Party Advertisers." ECF No. 85 at 17-18. Although Plaintiffs initially believed that this would reduce the size of the Class by nine members (*see* ECF No. 84 at 15 n.6), further analysis of Exhibit D to the Second Supplemental Declaration of Colin B. Weir revealed that each of these nine Class members (whose PII was found in the possession of NextRoll) were also members of at least one of the three certified Subclasses (because their PII was also found in the possession of Meta, MNTN, and/or Pinterest). Hedin Decl. ¶ 18. Thus, the size of the Class, as certified by the Court, remains at 4,543. *Id.*

¶ 43; § III ¶¶ 58, 60. Under no circumstances will any portion of the Settlement Fund revert to Defendant. *Id.* § III ¶ 70.

The entire Net Settlement Fund – the Settlement Fund less Settlement Administration Expenses and any Court-approved Attorneys' Fee and Expense Award – will be distributed to Class Members automatically, without claim forms. *Id.* § III ¶¶ 62-64. The allocation tracks the strength of each Class Member's claim: the Net Settlement Fund is divided into 7,302 equal Settlement Shares—one for each disclosure of a Class Member's information to Meta, Pinterest, or MNTN—and each Class Member receives one Share for each Subclass to which he or she belongs. *Id.* § II ¶ 46; § III ¶ 66. If the maximum Settlement Administration Expenses and requested Attorneys' Fee and Expense award are approved by the Court and no one opts out, each Settlement Share will be worth $228.78, and the Cash Awards will be:

| Number of Subclasses to Which Class Member Belongs | Minimum Cash Award | Number of Class Members Receiving Cash Award in Column 2 |
|---|---|---|
| 1 | $228.78 | 1,917 |
| 2 | $457.56 | 2,493 |
| 3 | $686.34 | 133 |

*Id.* § III ¶ 67. These are floors: any reduction in the Fee and Expense Award, any administration savings, and any opt-outs increase the remaining Class Members' awards. *Id.* Even at the minimums, Class Members will automatically receive payments averaging approximately $367 each. Hedin Decl. ¶¶ 30-31.

Within sixty days of the Effective Date, Simpluris will send each Class Member a check or, if the Class Member so elects on the Settlement Website, an electronic payment. SA § III ¶ 65. Checks will be sent to addresses updated through the National Change of Address ("NCOA") database and any updated address the Class Member provides on the Settlement Website. *Id.* § III ¶ 65. Undeliverable checks will be re-mailed after skip-tracing and telephone and e-mail outreach. *Id.* § III ¶ 68. Checks will expire after 180 days, and electronic payments will never expire. *Id.* § III ¶ 69. Uncashed funds will be redistributed to Class Members who received electronic payments or cashed checks in the initial distribution, with subsequent distributions continuing until further distribution becomes impracticable—at which point the residual will be paid to the Electronic Privacy Information Center, a 501(c)(3) digital-privacy non-profit unaffiliated with the Parties or their counsel. *Id.* § III ¶¶ 69, 70.

### C. The Release

Plaintiffs and Class Members who do not opt out will release Defendant and related persons from all claims "based upon, resulting from, arising out of, or relating to any disclosure or

transmission of personally identifiable information . . . made by or on behalf of Defendant to any person or entity at any time during the Relevant Time Period, including . . . any and all such claims for violation of the Video Privacy Protection Act arising out of, based upon, resulting from, or relating to any facts alleged or that could have been alleged in this Lawsuit." SA § II ¶¶ 38-40; § VI ¶¶ 84-86. The release is tethered to the conduct at issue and confined to the two-year Relevant Time Period. *Id.* § II ¶ 38; § VI ¶ 84. Class Members who opt out release nothing. *Id.* § VI ¶ 84.

**D. Attorneys' Fees and Expenses (and No Service Awards)**

At least twenty-one days before the Opt-Out and Objection Date, Class Counsel will apply for an Attorneys' Fee and Expense Award of one-third of the Settlement Fund ($900,000) plus reimbursement of $97,350.81 in litigation expenses advanced over nearly two years of contingent-fee and high-risk litigation (for a total request of $997,350.81). SA § IV ¶ 71; Hedin Decl. ¶ 48; *see also id.* ¶ 49 (noting over "two thousand hours" expended) & Ex. 4 (chart of expenses incurred). There is no agreement concerning fees, and Defendant is free to oppose Class Counsel's request. SA § IV ¶ 71. The Class Notice will disclose the amounts sought, and Class Counsel's application will be posted on the Settlement Website within one day of filing. SA § IV ¶¶ 71, 75. Plaintiffs do not seek and will not receive service awards – they will receive the same Cash Awards calculated in the same manner as every other Class Member. *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-60 (11th Cir. 2020).

**E. Notice, Administration, Opt-Outs, and Objections**

Because every Class Member is identified by name and Defendant's records contain an e-mail address and a postal address for each, the Class Notice Program consists of direct, individual notice sent to 100% of the Class by two independent means. SA § V ¶¶ 80-81. The Class Notice is expected to directly reach approximately 99% of Class Members. *See* Declaration of Jacob Kamenir, Vice President for Legal Notice at Simpluris ("Simpluris Decl.") ¶ 26.

Within ten days of the Preliminary Approval Date, Defendant will provide Class Members' contact information to Simpluris, and by the Notice Date—thirty days after the Preliminary Approval Date—Simpluris will (a) e-mail the short-form Class Notice (SA, Ex. A) to every Class Member; (b) mail the postcard Class Notice (SA, Ex. B) to every Class Member at his or her NCOA-updated address, re-mailing undeliverable postcards to addresses located through skip-tracing; (c) post the long-form Class Notice (SA, Ex. C), the Settlement Agreement, the certification order, the pertinent pleadings, this Motion, and all later Settlement-related filings on the Settlement Website, www.ZumbaVPPASettlement.com, where Class Members may also update their postal addresses for the delivery of their checks or, alternatively, elect to receive electronic payments; and (d) activate a toll-free hotline for Class Members to call to receive information concerning the Settlement. *Id.* § II ¶¶ 10-11, 27, 47; § V ¶¶ 74-82. Each Class

Member's notice will be individualized, stating the number of Subclasses to which he or she belongs and the minimum Cash Award he or she will receive (and the e-mail notice sent to each Class Member will identify the postal address their check will be sent, to the extent it is not updated by the Class Member and they do not request to receive an electronic payment on the Settlement Website). *Id.* § V ¶ 81. Defendant will serve the requisite notice under the Class Action Fairness Act, 28 U.S.C. § 1715, within ten days after this Motion is filed. *Id.* § VII ¶ 79.

Class Members will have sixty days from the Notice Date to request exclusion or object. SA § II ¶ 30. Exclusion requires only a signed, mailed request stating the name of the Action, the Class Member's name, addresses, and desire to be excluded; an objection must be filed with the Court or mailed to Simpluris and the Clerk, state its grounds for the objection, and state the basis for the objector's Class membership (and, if the objector wishes to be heard at the Final Approval Hearing, the objector must submit a notice of intention to appear). *Id.* § VII ¶¶ 92-96, 99-101. Objections will be posted on the Settlement Website within one day of receipt. *Id.* ¶ 98. Class Counsel will move for final approval, and the Parties may respond to objections, at least fourteen days before the Final Approval Hearing. *Id.* ¶¶ 97-98.

**APPLICABLE LEGAL STANDARD**

Approval of a class settlement "is committed to the sound discretion of the district court," *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). That policy applies with special force to class actions, which "have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[6]

At the preliminary stage, the Court asks whether it "will likely be able to" approve the settlement as "fair, reasonable, and adequate" under Rule 23(e)(2), such that notice to the class is justified. Fed. R. Civ. P. 23(e)(1)(B)(i). Preliminary approval is "appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citation omitted); *see* Manual for Complex Litigation (Fourth) § 21.632 (2004).

Rule 23(e)(2) directs the Court to consider whether (A) the class representatives and counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, the

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit issued prior to October 1, 1981.

effectiveness of the proposed method of distributing relief, the terms of any proposed attorney's fee award, and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably. Those factors do not "displace" the circuits' existing factors, Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment, and district courts of the Eleventh Circuit continue to consider the *Bennett* factors alongside them: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986; *see In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021).[7]

## ARGUMENT

The factors set forth in Rule 23(e)(2) and *Bennett* confirm the fairness, reasonableness, and adequacy of the proposed Settlement. The Motion should be granted.

### A. Plaintiffs and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A))

Rule 23(e)(2)(A) considers whether "the class representatives and class counsel have adequately represented the class."

The Court has already found that Plaintiffs have no interests antagonistic to the Class and have "retained competent counsel, assisted with counsel's investigation, reviewed and authorized the filing of legal documents, responded to discovery, traveled to and sat for lengthy depositions, and kept in regular contact with their counsel," and that Class Counsel are qualified to represent the Classes in this matter. *See* ECF No. 85 at 12-13. The results confirm those findings: two dispositive-motion victories, a contested certification, and a settlement that outperforms every VPPA class settlement on record – results achieved in a case defended by highly experienced and qualified defense counsel. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) (noting that "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance"). Class Counsel have prosecuted numerous privacy class actions under the VPPA and analogous statutes, and know the range of outcomes in such cases well. *See* Hedin Decl. ¶ 45 & Ex. 3 (firm resume).

---

7 Two features of this case simplify the inquiry. *First*, the Court has already certified the Class and Subclasses after a rigorous analysis on a contested record and appointed Plaintiffs and their counsel under Rule 23(g). *See* ECF No. 85. The Class covered by the Settlement is identical to the certified Class, SA § II ¶ 6, so the Court need not ask whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). *Second*, because the Settlement followed an adversarial certification proceeding that Defendant lost, the concern animating heightened scrutiny of pre-certification settlements—that class counsel might compromise the class's interests in exchange for an uncontested certification—is absent. *See* Manual for Complex Litigation (Fourth) §§ 21.612, 21.631.

Plaintiffs and their counsel have adequately represented the Class, and the first Rule 23(e)(2) factor weighs in favor of approval. Fed. R. Civ. P. 23(e)(2)(A).

**B. The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))**

Rule 23(e)(2)(B) considers whether "the proposal was negotiated at arm's length." A settlement that "is the result of informed, arms-length negotiations by experienced Class Counsel" is entitled to a presumption of fairness. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005).

Every hallmark of arm's-length dealing is present. *First*, the Settlement was reached at the point of maximum information: Plaintiffs had defeated two dispositive motions, obtained Defendant's complete purchase records and the third parties' complete transmission records, deposed Defendant's corporate designee, identified every Class Member and every disclosure by name through their expert, and fully briefed certification. Hedin Decl. ¶ 21.

*Second*, the negotiations were adversarial in the most literal sense: Plaintiffs' demand was made *before* the Court ruled on certification, and Defendant—represented by experienced counsel who contested every stage of the case—accepted it, on its material terms, only *after* the Court certified the Class and confirmed Defendant's exposure to a class-wide judgment. *Id.* ¶¶ 21-25. Plaintiffs did not lower their demand; Defendant acceded to it. Although no mediator was used to negotiate the Settlement, none was required (*id.* ¶ 26): the Advisory Committee notes only that a mediator's involvement "may bear on" the inquiry, Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment, and "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330; *see Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

*Third*, none of the "subtle signs" of collusion courts should be on the lookout for is present here. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Class Counsel's requested Fee and Expense Award – one-third of the Settlement Fund, plus out-of-pocket costs incurred – is routinely awarded to class counsel who negotiate non-reversionary settlements in this circuit. *See, e.g., Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *1 (S.D. Fla. Nov. 9, 2018) (awarding class counsel one-third of a $100 million common fund and reimbursement of $1,728,947 in costs). And it is particularly appropriate here given the enormous amount of work conducted by Class Counsel to achieve the Settlement. *See* Hedin Decl. ¶ 49. There is no "clear sailing" agreement—Defendant made no commitment on fees and may oppose them, SA § IV ¶ 71—and no "kicker" or reverter, because the Settlement Fund is non-reversionary in all circumstances. SA § III ¶ 70. Finally, there are no service awards to Plaintiffs. *See NPAS Sols.*, 975 F.3d at 1255-60.

Accordingly, the second Rule 23(e)(2) factor weighs in favor of approval. Fed. R. Civ. P. 23(e)(2)(B).

### C. The Relief Is Adequate—Indeed, Unprecedented (Rule 23(e)(2)(C) & *Bennett* Factors 1-4)

The Rule 23(e)(2)(C) factors, considered alongside the first four *Bennett* factors, further confirm the fairness, reasonableness, and adequacy of the proposed Settlement. *See Bennett*, 737 F.2d at 986; *see* Fed. R. Civ. P. 23(e)(2)(C) (asking whether the "relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," "the effectiveness of [the] proposed method of distributing relief to the class," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)").

#### 1. The Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i) & *Bennett* Factors 1 & 4)

Rule 23(e)(2)(C)(i) considers the "costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), while the first four *Bennett* factors consider "the likelihood of success at trial, the range of possible recovery, the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable, and the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986 (cleaned up). These factors all weigh in favor of approval.

Plaintiffs believe their claims are strong – the Court has twice held that their theory states a claim under the VPPA's plain text, and the third parties' own records establish the disclosures – but nevertheless recognize that continued litigation posed substantial risks to the Class's recovery. *See Bennett*, 737 F.2d at 986 (first and fourth factors).

First*,* the circuits have split on who is a "consumer," *compare Salazar v. Paramount Global*, 133 F.4th 642 (6th Cir. 2025), *with Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), and the Supreme Court will resolve that split this term. *Salazar v. Paramount Global*, No. 25-459 (U.S.) (argument set Oct. 14, 2026). Although Class Members in this case all purchased video content and fall within the statute under any reading, the Supreme Court's first construction of the VPPA—expected while this case would have proceeded to summary judgment and trial—adds uncertainty to every VPPA claim. Moreover, Defendant's principal merits argument—that the VPPA reaches only disclosures of specific video titles, not the purchase of a video course—has been accepted by two district courts, *Benson*, 2026 WL 1045614, at *4-5; *Lovett*, 2025 WL 1809719, at *3, and this Court, while rejecting it, called that authority "persuasive." ECF No. 79 at 9. Defendant would have renewed the argument at summary judgment and in the Eleventh Circuit, which has "expressly declined to comment on what qualifies as 'specific video materials.'" ECF No. 23 at 5 (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015)).

Second, the success of all Class Members' claims hinged on the Court or factfinder determining that an "order confirmation page" containing a person's name, together with the title of a course the person had purchased and an label identifying the purchased course as the "online" version of the course (as opposed to the "virtual" streaming version or the "live" in-person version), was information that "identifie[d] [the] person as having requested or obtained specific video materials or services," *see* 18 U.S.C. § 2710(a)(3) (definition of "personally identifiable information"), from a company in the business of selling "prerecorded . . . audio visual materials," *see id.* § 2710(a)(4) (definition of "video tape service provider"). Hedin Decl. ¶ 41. This was a particularly challenging issue that presented significant risk to the Class, especially since purchasers of the live-streaming version of the course (a version which clearly does not include "prerecorded videos" within the meaning of the statute) were directed to "order confirmation pages" that described the version of the course they had purchased with the word "virtual" (which arguably suggests the presence of prerecorded videos just the same as the word "online"). *Id.* As Defendant argued in support of its motion for judgment on the pleadings, the word "online," which appeared on the "order confirmation pages" accessible at Class Members' ZB1 OD Version Order URLs, "describes delivery, not content, as an 'online' course can be any number of things, including live instruction, an audio program, a series of interactive quizzes, or downloadable written materials, none of which is a video." ECF No. 75 at 3. To the extent the "order confirmation pages" located at the ZB1 OD Version Order URLs were not found to reveal purchases of a "video material or service" from a "video tape service provider," Class Members would have been entitled to no relief. Hedin Decl. ¶ 41.

Third, Defendant asserted as an affirmative defense that it did not "knowingly" disclose PII to third parties (*see* 18 U.S.C. § 2710(b)(1)). Under the VPPA, only a video tape service provider who "*knowingly* discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b)(1) (emphasis added). When this affirmative has been tested at summary judgment, at least one court held that "the record is not developed enough for the court to determine as a matter of law whether Hulu knowingly disclosed information[.]" *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *1 (N.D. Cal. Apr. 28, 2014). In this case, although Plaintiffs were confident that Defendant had knowingly programmed its website's tracking technologies to transmit the ZB1 OD Version Order URLs (along with most if not all of the other URLs on the website that its customers navigated through) to the Third-Party Advertisers, at the time the Settlement was reached the record remained unclear about whether Defendant knew that its customers' "order confirmation pages," located at the ZB1 OD Version Order URLs to which they were directed upon placing their orders, would be publicly accessible to anyone who possessed those URLs (i.e., to the Third-Party Advertisers). Hedin Decl. ¶ 42. And while Plaintiffs had conducted and were in the process

of conducting further discovery on the issue at the time of settlement, the issue presented a real risk of total non-recovery to the Class had the litigation proceeded. *Id.*

Fourth, Defendant's window to appeal the Court's order granting class certification (ECF No. 85) pursuant to Rule 23(f) had not closed when the Parties settled. Absent the Settlement, Defendant surely would have appealed the class certification decision. *See, e.g.*, *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1304 (11th Cir. 2023) (reversing and remanding a district court's order granting class certification on certain state law consumer protection claims). *See* Hedin Decl. ¶ 43. And if the appeal failed, Defendant could have later sought to decertify the Class, including by potentially introducing new evidence showing that individualized inquiries predominated over common questions. *See, e.g.*, *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 533 (9th Cir. 2019) (affirming a district court's reversal of its own previous order granting class certification).

Finally, even if the Class had litigated the case through summary judgment and prevailed at trial before a jury, Defendant would have nonetheless litigated an appeal presenting multiple issues of first impression. Hedin Decl. ¶ 44. Meanwhile, the Class would wait years for any recovery, with a genuine possibility of recovering nothing. *See id.* VPPA litigation is littered with cases that ended in no recovery, after years of protracted litigation. *See, e.g.*, *Ellis*, 803 F.3d at 1257-58; *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341-44 (11th Cir. 2017); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1091 (N.D. Cal. 2015) (summary judgment for defendant on "knowing" element after four years).

Accordingly, the first of Rule 23(e)(2)(C)'s factors and the first and fourth *Bennett* factors weigh in favor of approval. *See Lipuma*, 406 F. Supp. 2d at 1322; *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citation omitted).

**2. The Range of Possible Recovery and the Settlement's Place Within It (*Bennett* Factors 2 & 3)**

The range of possible recovery and the proposed Settlement's place within that range further confirm the Settlement's fairness, adequacy and reasonableness. *See Bennett*, 737 F.2d at 986 (second and third *Bennett* factors).

"[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting that "a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery"), *aff'd*, 899 F.2d 21 (11th Cir. 1990). No such indulgence is needed here. The range of possible recovery runs from zero (had Defendant prevailed on any threshold issue), to a Class-wide judgment of approximately $11.36 million (measured at $2,500 for each of 4,543 Class Members), to a best-case Class-wide

judgment of approximately $18.25 million (measured at $2,500 for each of 7,302 disclosures of Class Members' PII to the Third-Party Advertisers). The $2.7 million Fund is roughly 24% of the maximum recovery on a per-Class-member basis or roughly 15% of the maximum possible recovery on a per-disclosure, per-Class-Member basis, in both cases before discounting for the substantial risk of no recovery. Upon final approval, every Class Member will automatically be paid at least $228.78 per disclosure—more than 9% of the $2,500 statutory measure—with Class Members in all three Subclasses set to receive $686.34 each. Hedin Decl. ¶ 30.

Those figures are extraordinary measured against the universe of VPPA settlements. Class Counsel's chart of the 26 largest all-cash, non-reversionary VPPA settlements finally approved before this one—drawn from the public record and attached as Exhibit 2 to the Hedin Declaration—shows settlements ranging from $900,000 to $16 million and totaling more than $117 million, but with gross per-class-member values ranging from $0.82 to $39.42 and averaging $8.97, roughly one-third of one percent of the statutory measure. Hedin Decl. ¶¶ 32-34. This Settlement's gross per-Class-Member value ($594) is about fifteen times the *highest* figure on that chart and sixty-five times the average, and its *minimum net* payment ($228.78) is nearly six times the highest *gross* per-class-member figure in any prior VPPA settlement. *See id.* & Hedin Decl., Ex. 2.[8] Other VPPA settlements paid class members nothing (*see id.* ¶ 36): in *Netflix*, a $9 million fund went entirely to *cy pres* recipients after fees and costs, 2013 WL 1120801, and in *Lane*, the Ninth Circuit affirmed a $9.5 million *cy pres*-only settlement of VPPA and related claims, 696 F.3d at 817-25. Simply put: this Settlement falls at the very top of the range of reasonableness.

Accordingly, the second and third *Bennett* factors weigh in favor of approval.

### 3. The Method of Distribution Is the Most Effective Available (Rule 23(e)(2)(C)(ii))

Additionally, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2)(C)(ii) & advisory committee's note to 2018 amendment.

The problem is well documented: across 149 consumer class settlements studied by the Federal Trade Commission, the median claims rate was 9% and the weighted mean 4%—meaning that, in a typical settlement where claim forms must be submitted in order for class members to

---

[8] Privacy settlements generally are often approved with per-class-member recoveries in the single or low double digits. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809-EJD, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (about $7.70 per claimant); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013) ($15 per claimant), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016); *Poertner v. Gillette Co.*, No. 6:12-cv-00803, ECF No. 168 at 3 (M.D. Fla. Aug. 21, 2014) ($6 to $12 per claimant), *aff'd*, 618 F. App'x 624 (11th Cir. 2015).

recover anything, more than nine in ten class members don't submit claim forms and thus recover nothing. Fed. Trade Comm'n, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* 11 (Sept. 2019); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014); *e.g., Ohebshalom*, No. 615987/2025, Doc. No. 50. Indeed, every prior VPPA settlement on Class Counsel's chart required claim forms, and in Class Counsel's experience claims rates are typically in the low single digits in VPPA settlements. Hedin Decl. ¶¶ 32, 37 & Ex. 2.

This Settlement dispenses with claims entirely: because every Class Member has been identified from the third parties' own records and Defendant holds an e-mail address and postal address for each, Simpluris will simply pay every Class Member who does not opt out, by check or elected electronic payment, with NCOA updating, skip-tracing and re-mailing of undeliverable checks, online address updates, 180-day check validity, and redistribution of uncashed funds to participating Class Members—with *cy pres* only for residual uncashed-check funds if a further distribution would be impracticable. SA § III ¶¶ 62-70. Courts in this District have approved settlements distributing funds automatically, without claim forms, as the most effective means of delivering relief. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (approving $410 million settlement paid by direct account credits and mailed checks).

Accordingly, the second of Rule 23(e)(2)(C)'s factors weighs in favor of approval.

**4. The Proposed Fee Terms and the Absence of Other Agreements (Rule 23(e)(2)(C)(iii)-(iv))**

Rule 23(e)(2)(C) also requires courts to consider "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iii)-(iv).

The Fee and Expense Award that Class Counsel intend to request—one-third of the Fund plus $97,350.81 in expenses (for a total of $997,350.81)—is a percentage-of-the-fund request of the kind the Eleventh Circuit favors in common-fund cases, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991), and within the range routinely approved in this Circuit. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-98 (11th Cir. 1999) (affirming one-third of fund as fee award); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (one-third). The request will be fully briefed in a separate motion filed in sufficient advance of (at least twenty-one days before) the Opt-Out and Objection Date (and will be posted to the Settlement Website within one day of filing). Moreover, any Fee and Expense Award the Court approves will only be paid after the Effective Date, from the same Fund and at the same time as Class Members are paid. SA § III ¶¶ 61, 63.

Finally, the Settlement Agreement, which supersedes the term sheet, is the Parties' entire agreement, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv); there are no other agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); SA § IX ¶ 106; Hedin Decl. ¶ 51.

Accordingly, the third and fourth of Rule 23(e)(2)(C)'s factors weigh in favor of approval.

**D. The Remaining *Bennett* Factors Favor Approval**

The fifth *Bennett* factor—opposition to the settlement—cannot be assessed until notice issues, but the Class Representatives endorse the Settlement, and experienced Class Counsel regard it as the best result ever achieved for a VPPA class, a judgment to which the Court may give substantial weight. Hedin Decl. ¶¶ 32-34, 37, 45); *Cotton*, 559 F.2d at 1330.

The sixth factor—the stage of the proceedings—asks whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Few class settlements are negotiated on a fuller record than this one: after two rounds of dispositive-motion practice, completion of class-related fact and expert discovery, analysis of the complete data sets defining the Class and each Subclass, and a contested certification ruling. Hedin Decl. ¶¶ 11-20.

Accordingly, the fifth and sixth *Bennett* factors weigh in favor of approval.

**E. The Settlement Treats Class Members Equitably (Rule 23(e)(2)(D))**

Finally, the proposed Settlement treats Class Members equitably. *See* Fed. R. Civ. P. 23(e)(2)(D).

Every Class Member's relief is determined by the same objective formula—one Settlement Share, of identical value, for each third party to which his or her information was disclosed. SA § II ¶ 46; § III ¶ 66. That allocation distributes the Fund in proportion to the number of alleged violations each Class Member suffered, as determined for every Class Member from the third parties' own records and as reflected in the Subclasses the Court certified. ECF No. 85 at 6-7; *see* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (courts consider whether "the apportionment of relief among class members takes appropriate account of differences among their claims"). The named Plaintiffs receive no service awards and no preference: Plaintiff Kueppers (one Subclass) and Plaintiff Brown (two Subclasses) each receive exactly what any Class Member in her position receives. Hedin Decl. ¶ 47. And because each Class Member's notice discloses his or her own Subclass membership and minimum Cash Award, SA § V ¶ 81, each can evaluate the fairness of his or her treatment before the Opt-Out and Objection Date.

Accordingly, the final Rule 23(e)(2) factor weighs in favor of approval.

**THE NOTICE PROGRAM SHOULD BE APPROVED**

For a class certified under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974), and before approving a settlement it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ.

P. 23(e)(1)(B). Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see Juris v. Inamed Corp.*, 685 F.3d 1294, 1317-21 (11th Cir. 2012). The two notices may be combined where, as here, a class is certified shortly before settlement, *see* Fed. R. Civ. P. 23(c)(2)(B) & 23(e)(1) advisory committee's notes to 2018 amendment; Manual for Complex Litigation (Fourth) §§ 21.312, 21.633, and the proposed Class Notice does exactly that: it advises Class Members of the Court's certification order—as the Court directed, ECF No. 85 at 19—and of the Settlement, and it affords Class Members their first opportunity to request exclusion. *See* Fed. R. Civ. P. 23(c)(2)(B)(v).

The manner of notice is the gold standard. "When the names and addresses of most class members are known, notice by mail is usually preferred," Manual § 21.311, and Rule 23 expressly contemplates "electronic means." Fed. R. Civ. P. 23(c)(2)(B). Here, every Class Member has been identified by name, and Defendant holds an e-mail and a postal address for each, so each will receive individual notice twice over—by e-mail and by first-class postcard—with NCOA updating and skip-tracing of undeliverable mail, supplemented by the Settlement Website and toll-free hotline. SA § V ¶¶ 75, 77, 79-80, 82; Simpluris Decl. ¶¶ 27-37. Simpluris estimates the program will reach approximately 99% of the Class, Simpluris Decl. ¶ 26, exceeding the top of the 70-95% range the Federal Judicial Center deems reasonable. Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).

The content of the Class Notices likewise complies. Prepared by Class Counsel and Simpluris in the Federal Judicial Center's plain-language format, the Class Notices "clearly and concisely state in plain, easily understood language" each item Rule 23(c)(2)(B)(i)-(vii) requires: the nature of the Action; the definition of the certified Class and Subclasses; the claims, issues, and defenses; the right to appear through counsel; the right to request exclusion and the time and manner for doing so; and the binding effect of a class judgment. SA, Exs. A-C; *see Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998). They also describe the Settlement's terms, the fees and expenses Class Counsel will seek, the objection procedures and deadline, and the Final Approval Hearing—and each short-form notice tells its recipient the number of Subclasses to which he or she belongs and the minimum Cash Award he or she will automatically receive. SA § V ¶ 81. Such notice plainly "contain[s] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg*, 153 F.3d at 1227 (citation omitted).

Finally, the Court should appoint Simpluris as Settlement Administrator. Class Counsel solicited competing bids and, with Defense Counsel's agreement, selected Simpluris, a nationally recognized administrator of hundreds of class settlements, including consumer-privacy

settlements. Hedin Decl. ¶ 29; Simpluris Decl. ¶ 3. Simpluris will perform the entire Class Notice Program and distribution plan—two methods of individual notice, the website and hotline, address updating and skip-tracing, the issuance and re-issuance of thousands of checks and electronic payments, and any secondary distributions—for an estimated $28,095, capped at $32,095 (roughly 1.0% to 1.2% of the Fund), and is bound to keep Class Members' information confidential. SA § II ¶ 43; § V ¶ 74-82; § IX ¶ 107.

## THE PROPOSED SCHEDULE SHOULD BE APPROVED

Consistent with the Settlement Agreement, Plaintiffs request that the Court set dates for the following events consistent with the timetable proposed below, which is incorporated in the proposed Preliminary Approval Order (SA, Ex. E):

| Event | Proposed Deadline |
|---|---|
| Defendant serves CAFA notice | 10 days after filing of this Motion (SA § VII ¶ 89) |
| Defendant provides Class Members' e-mail and postal addresses to Settlement Administrator | 10 days after Preliminary Approval Date (SA § V ¶ 79) |
| Defendant funds Settlement Fund | 30 days after Preliminary Approval Date (SA § III ¶ 54) |
| Notice Date: e-mail and postcard Class Notices sent to all Class Members and Settlement Website and hotline both live | 30 days after Preliminary Approval Date (SA § II ¶ 27; § V ¶¶ 75, 77, 80) |
| Motion for Attorneys' Fee and Expense Award filed and posted on Settlement Website | 21 days before Opt-Out and Objection Date (SA § IV ¶ 71) |
| Opt-Out and Objection Date | 60 days after Notice Date (SA § II ¶ 30) |
| Motion for Final Approval (and any responses to any objections) filed and posted on Settlement Website | 14 days before Final Approval Hearing (SA § II ¶ 24; § VI ¶ 97) |
| Final Approval Hearing | 120 days after entry of the Preliminary Approval Order, or as soon thereafter as is convenient for the Court, at least 120 days after entry of the Preliminary Approval Order (SA § II ¶ 18; § VII ¶ 88) |

This schedule gives Class Members sixty days after notice to opt out or object; places Class Counsel's fee application on file three weeks before that deadline; and sets the Final Approval Hearing more than ninety days after CAFA notice, as 28 U.S.C. § 1715(d) requires. Plaintiffs request that the Court set the hearing at its convenience, at least 120 days after entry of the Preliminary Approval Order, and stay all other deadlines pending the hearing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order (SA, Ex. E) and thereby (1) preliminarily approve the Settlement as

fair, reasonable, and adequate; (2) confirm that the Class at issue is the same Class certified on August 20, 2026, and that Plaintiffs and Class Counsel shall continue to serve as representatives of and counsel for the Class for settlement purposes; (3) approve the Class Notice (SA, Exs. A-C) and Class Notice Program and direct dissemination of the Class Notices; (4) appoint Simpluris, Inc. as Settlement Administrator; (5) approve the schedule and procedures set forth above; (6) set a Final Approval Hearing at least 120 days after entry of the Preliminary Approval Order; and (7) stay all other proceedings and deadlines pending that hearing. A proposed Preliminary Approval Order is being submitted in accordance with Section 3I(6) of the CM/ECF Administrative Procedures.[9]

Date: September 14, 2026

Respectfully submitted,

/s/ *Frank S. Hedin*
Frank Hedin (FBN 109698)
HEDIN LLP
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Tel: (305) 357-2107
fhedin@hedinllp.com

Tyler K. Somes (*pro hac vice*)
HEDIN LLP
1100 15th Street NW, Ste 04-105K
Washington, D.C. 20005
Tel: (202) 900-3332
tsomes@hedinllp.com

*Class Counsel*

---

9 Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that he conferred with counsel for Defendant, Matthew Green of Cole, Scott & Kissane, P.A regarding this motion, and has been advised that Defendant does not oppose this motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frank S. Hedin*
Frank S. Hedin