**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CATHERINE KUEPPERS; and WATANYA BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUMBA FITNESS, LLC,<br><br>Defendant. | Case No. 0:24-cv-61983-WPD |

**DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT**

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

**INTRODUCTION**

1. I am a partner of the law firm Hedin LLP and one of the attorneys appointed by the Court as Class Counsel for the Class and Subclasses certified in this Action. ECF No. 85 at 19.

2. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class-Action Settlement (the "Motion").[1]

**QUALIFICATIONS AND EXPERIENCE OF CLASS COUNSEL**

3. I am a member in good standing of the Florida Bar and the State Bar of California; the United States District Courts for the Southern District of Florida, Middle District of Florida, Northern District of California, Southern District of California, Central District of California, Eastern District of California, Eastern District of Michigan, Western District of Michigan, Western District of Wisconsin, and Eastern District of Missouri; and the United States Courts of Appeals for the Second and Seventh Circuits.

4. I received my Bachelor of Arts from University of Michigan in 2008 and my Juris Doctor, *magna cum laude*, from Syracuse University College of Law in 2012. From 2012 through 2013, I served as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. During my clerkship with Judge Hayes, I managed half of the Court's civil docket and drafted numerous orders and opinions at all stages of litigation, including in a wide range of class action matters.

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Class-Action Settlement Agreement ("Settlement Agreement" or "SA"), a copy of which is attached hereto as **Exhibit 1**. Citations in the form "SA § __ ¶ __" refer to the section and paragraph of the Settlement Agreement.

5. In March 2018, I co-founded Hedin Hall LLP, the firm that became Hedin LLP in January 2024. With offices in Miami, Florida and Washington, D.C., our firm focuses on class action litigation in the data-privacy, financial services, false advertising, and antitrust practice areas. Prior to founding Hedin Hall LLP, I worked for four years as an attorney at a Miami-based litigation boutique, where I started the firm's class-action practice.

6. Over the past decade, in federal and state courts across the country, my colleagues at Hedin LLP and I have successfully prosecuted numerous class actions as court-appointed class counsel, including many data-privacy class actions. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (Hedin LLP service as class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million nonreversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020- CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc.*, et al., No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19-cv-357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented.

7. Notably, my colleagues and I have substantial experience representing classes of consumers in cases alleging violations of state privacy statutes analogous to the federal Video Privacy Protection Act. *See e.g., Schreiber v. Mayo Foundation*, No. 22-cv-00188 (Hedin LLP serving as class counsel in action alleging violation of Michigan PPPA, obtained $52.5 million non-reversionary class settlement with automatic payments to all class members); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.,* No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members).

8. We also frequently represent indigent litigants on a pro bono basis. *See e.g., Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

9. Hedin LLP draws from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation, as well as a team of non-lawyer professionals and support staff.

10. A true and correct copy of Hedin LLP's firm résumé is attached hereto as **Exhibit 3**.

## THE INVESTIGATION AND PROSECUTION OF THIS ACTION

11. Before filing this Action, my firm conducted an investigation into Defendant's use of tracking technologies on its website, Zumba.com, including a technical analysis of the data transmitted from the website to third parties when a consumer purchased access to the on-demand version of Defendant's Zumba Basic 1 instructor training course (the "ZB1 OD Version"). That investigation formed the basis for the detailed allegations of the original Complaint and each amended complaint.

12. Plaintiff Kueppers commenced this Action on October 23, 2024. ECF No. 1. Defendant moved to dismiss on January 13, 2025. ECF No. 12. After full briefing and a hearing held on May 2, 2025, the Court denied the motion in a published opinion. ECF No. 23; *Kueppers v. Zumba Fitness, LLC*, 805 F. Supp. 3d 1226 (S.D. Fla. 2025). Defendant answered on May 19, 2025. ECF No. 24. Plaintiffs filed a First Amended Class Action Complaint on July 21, 2025 (ECF No. 34), to which Defendant answered on August 1, 2025 (ECF No. 42), and, with Defendant's

written consent, the operative Second Amended Class Action Complaint ("SAC") on November 26, 2025 (ECF No. 45). Defendant answered the SAC on December 9, 2025, denying liability and asserting fifteen affirmative defenses, including consent, waiver, estoppel, failure to mitigate, lack of Article III standing, the absence of a knowing disclosure, the VPPA's "ordinary course of business" exception, and the First Amendment. ECF No. 46 at 37–39.

13. The Parties engaged in extensive discovery. Plaintiffs served five sets of requests for production, three sets of interrogatories, and one set of requests for admission on Defendant, and noticed six depositions of Defendant and its employees. Plaintiffs also responded to Defendant's written discovery requests and produced their own documents and communications.

14. Plaintiffs also served fifteen subpoenas on third parties for the production of documents, information, and objects, including multiple subpoenas on each of Meta Platforms, Inc. ("Meta"), Pinterest, Inc. ("Pinterest"), MNTN, Inc. ("MNTN"), NextRoll, Inc. ("NextRoll"), and The Trade Desk, Inc. Each of those advertising companies ultimately produced records of the data transmissions it had received from Defendant's website during the two-year period preceding the filing of this Action, together with declarations authenticating those records. *See* ECF No. 58 ¶¶ 20–29. Those records—which reflect, among other things, the unique "order confirmation page" URL transmitted to each third party upon each purchase of the ZB1 OD Version—were the foundation of Plaintiffs' motion for class certification and of the Class List.

15. Over the course of discovery, my colleagues and I conducted numerous meet-and-confer conferences with Defendant's counsel and with third parties concerning the sufficiency of their responses and objections, and we received and reviewed thousands of documents and communications and voluminous sets of electronically stored information produced by Defendant and by third parties.

16. Plaintiffs took and defended several depositions. Among others, on February 20, 2026, my firm took the Rule 30(b)(6) deposition of Defendant's corporate representative, its Chief Technology Officer, Ralph Valdes, concerning the operation of Defendant's website and the tracking technologies installed on it, the three formats in which the Zumba Basic 1 course was sold, the "order confirmation pages" to which purchasers were directed, and Defendant's purchase records. Both Plaintiffs traveled to and sat for lengthy depositions taken by Defendant's counsel. Plaintiffs also negotiated a written stipulation with Defendant's counsel establishing a representative sample of the "order confirmation pages" as they existed during the Relevant Time Period. *See* ECF No. 58 ¶¶ 13–19, 33.

17. Plaintiffs retained Colin B. Weir, President of Economics & Technology, Inc., as their expert. Mr. Weir analyzed the voluminous transmission records produced by the third parties, compared them against the purchase records produced by Defendant, and identified—by first and last name—every person who purchased the ZB1 OD Version between October 22, 2022 and

October 22, 2024 and whose "order confirmation page" URL was received by Meta, Pinterest, or MNTN during that period. Mr. Weir's work is described in his declarations submitted in support of class certification (ECF Nos. 58-1, 58-2, and 69-1 (sealed)), and the resulting list of Class Members by name (the Class List) is Exhibit D to his Second Supplemental Declaration. Mr. Weir's insights into the structure and content of the third parties' records were essential to my firm's evaluation of the strength of the Class's claims and of the appropriate terms on which to resolve them. Defendant deposed Mr. Weir on July 9, 2026. Defendant also retained its own expert, James Vint, who my firm would have deposed but for the Settlement.

18. In its order granting class certification, the Court struck NextRoll from the definition of "Third-Party Advertisers." ECF No. 85 at 17–18. In Plaintiffs' reply in support of class certification, my firm had stated that striking NextRoll would reduce the size of the Class by nine members. ECF No. 84 at 15 n.6. Following the Court's order, my colleagues and I, with Mr. Weir's assistance, re-examined Exhibit D to Mr. Weir's Second Supplemental Declaration and determined that each of the nine Class Members whose order confirmation URLs were found in NextRoll's records also had his or her order confirmation URL appear in the records of Meta, Pinterest, and/or MNTN, and is therefore a member of at least one of the three certified Subclasses. Accordingly, the Court's modification of the "Third-Party Advertisers" definition did not remove any person from the Class: the Class as certified consists of 4,543 persons, each of whom is a member of at least one Subclass, and the Class definition in the Settlement Agreement conforms to the Court's order. SA § II ¶¶ 6, 9.

19. On June 10, 2026, Defendant moved for judgment on the pleadings, arguing principally that the VPPA does not reach the disclosure of a purchase of, or "subscription to access," a video course as opposed to specific video titles. ECF No. 54. Plaintiffs opposed (ECF No. 71), and Defendant replied (ECF No. 75). The Court denied the motion on July 28, 2026. ECF No. 79.

20. On June 15, 2026, Plaintiffs moved to certify the Class and three Subclasses. ECF Nos. 57, 61 (sealed). On July 3, 2026, Plaintiffs filed an errata correcting the Class and Subclass figures based on Mr. Weir's Second Supplemental Declaration. ECF No. 66. Defendant opposed certification on July 22, 2026, contending that Plaintiffs were atypical and inadequate representatives because they had publicly identified themselves as certified Zumba instructors, and that individualized questions of privacy interest and Article III standing predominated. ECF No. 76. Plaintiffs replied on August 10, 2026. ECF No. 84. On August 20, 2026, the Court granted the motion in a nineteen-page order, certified the Class and the Meta, Pinterest, and MNTN Disclosure Subclasses, appointed Plaintiffs as class representatives, appointed Tyler K. Somes and me as

Class Counsel, and directed the Parties to submit a proposed notice to the Class by August 28, 2026. ECF No. 85.

## THE SETTLEMENT

21. On August 18, 2026—after the motions for class certification and for judgment on the pleadings had been fully briefed, and after my colleagues, Mr. Weir, and I had completed our analysis of the complete set of transmission records produced by the third parties and of Defendant's purchase records—Plaintiffs, through my firm, sent Defendant a written demand to resolve this Action on behalf of the Class. The material terms of that demand are the material terms of the Settlement Agreement now before the Court, including the $2,700,000 all-cash, non-reversionary Settlement Fund, and the automatic distribution of the entire Net Settlement Fund to Class Members without claim forms.

22. Two days later, on August 20, 2026, the Court certified the Class and Subclasses. ECF No. 85.

23. On August 26, 2026, Defendant accepted Plaintiffs' pending demand without modification.

24. On August 28, 2026, the Parties executed a binding term sheet memorializing all material terms of the settlement—again, the same material terms set forth in the Settlement Agreement—and, later that day, filed a notice of settlement with the Court. ECF No. 86.

25. The proposed Settlement was reached at arm's length between adversaries, each represented by experienced counsel, and were informed on Plaintiffs' side by the complete record described above. Plaintiffs did not reduce their demand in order to reach agreement; Defendant accepted the demand as made.

26. While mediator was involved in producing the Settlement, none was necessary. By the time of the demand, every material fact bearing on the value of the Class's claims—the identity of every Class Member, the number of Third-Party Advertisers to which each Class Member's information was disclosed, and the strength of Defendant's defenses as tested through two rounds of dispositive-motion practice and a contested certification proceeding—was known to my firm.

27. The Parties have not agreed on any amount of fees or expenses that Class Counsel would request or that Defendant would accept, and Defendant is free to oppose or object to the Fee and Expense Award we request.

28. Following execution of the term sheet, the Parties negotiated and drafted the formal Class-Action Settlement Agreement and its exhibits, which the Parties executed on September 14, 2026. A true and correct copy of the executed Settlement Agreement, together with its Exhibits A through E, is attached hereto as **Exhibit 1**.

29. Following the Court's certification order, my firm solicited competing proposals from multiple experienced settlement-administration firms to administer notice to the Class and,

upon settlement, the distribution of the Settlement Fund. After reviewing the proposals, and with Defense Counsel's agreement, we selected Simpluris, Inc. ("Simpluris")—a nationally recognized administrator that has administered hundreds of class settlements, including consumer-privacy settlements—based on its experience, its data-security practices, and the cost-effectiveness of its proposal. Simpluris has estimated that its total Settlement Administration Expenses—including two methods of direct notice to every Class Member, the Settlement Website and toll-free hotline, address updating and skip-tracing, the issuance and re-issuance of Cash Awards by check and electronic payment, any secondary distributions, and the CAFA notice—will be $28,095, and has agreed that those expenses will not exceed $32,095 in any event. SA § II ¶ 43. My colleagues and I then worked closely with Simpluris to devise the proposed Class Notice Program and to prepare the proposed e-mail, postcard, and long-form Class Notices attached as Exhibits A through C to the Settlement Agreement.

**THE SETTLEMENT'S MONETARY TERMS**

30. The Settlement requires Defendant to pay $2,700,000 to establish an all-cash, non-reversionary Settlement Fund for the benefit of the 4,543 Class Members, each of whom is identified by name on the Class List. SA § II ¶¶ 9, 45. Each Class Member belongs to one or more of the three certified Subclasses: 1,576 Class Members belong to the Meta Disclosure Subclass, 3,061 to the Pinterest Disclosure Subclass, and 2,665 to the MNTN Disclosure Subclass. *Id.* ¶¶ 21, 23, 33. Because a Class Member belongs to a Subclass for each Third-Party Advertiser found to be in possession of his or her information, the third parties' records reflect 7,302 disclosures of Class Members' information in total, and the Net Settlement Fund is divided into 7,302 equal Settlement Shares, one for each such disclosure. *Id.* ¶ 46. If the Court approves the maximum Settlement Administration Expenses ($32,095) and the full Attorneys' Fee and Expense Award that Class Counsel intend to request (one-third of the Settlement Fund, or $900,000, plus $97,350.81 in expenses), and if no Class Member requests exclusion, the Net Settlement Fund will be $1,670,554.19—approximately 61.9% of the Settlement Fund—and each Settlement Share will be worth $228.78. On those assumptions, the 1,917 Class Members who belong to one Subclass will each receive a Cash Award of $228.78; the 2,493 Class Members who belong to two Subclasses will each receive $457.56; and the 133 Class Members who belong to all three Subclasses will each receive $686.34. SA § III ¶ 67. Those are minimum amounts: any reduction in the fees or expenses awarded, any savings in Settlement Administration Expenses, and any requests for exclusion will increase the Cash Awards paid to the remaining Class Members.

31. On a gross basis, the $2,700,000 Settlement Fund equals approximately $594.32 for each of the 4,543 Class Members. On a net basis, at the minimum figures described in the preceding paragraph, the Cash Awards paid to Class Members will average approximately $367 per Class Member. The aggregate Class-wide exposure is $11,357,500 measured on a per-Class-

Member basis, computed by multiplying $2,500 by the 4,543 Class Members; the Settlement Fund represents approximately 23.8% of that amount. Measured on a per-disclosure basis—that is, $2,500 for each of the 7,302 disclosures of Class Members' information to the three Third-Party Advertisers—the aggregate exposure is $18,255,000, of which the Settlement recovers approximately 14.8%. Each Settlement Share of $228.78 represents more than 9% of the $2,500 liquidated sum of damages for each disclosure of a Class Member's information, and Class Members whose information was disclosed to all three Third-Party Advertisers will each receive $686.34.

**COMPARISON TO OTHER VPPA CLASS SETTLEMENTS**

32. In connection with my firm's VPPA practice, my colleagues and I maintain a chart of all-cash, non-reversionary VPPA class settlements approved by courts, compiled from the publicly available settlement agreements, motions, and orders filed in those cases. A true and correct copy of that chart, reflecting 26 settlements that had been finally approved as of the date of this declaration, is attached hereto as **Exhibit 2**. For each settlement, the chart identifies the court, the case number, the gross settlement fund, the size of the class, the resulting gross per-class-member value of the fund, and whether class members were required to submit claim forms to receive payment.

33. The 26 settlements reflected on Exhibit 2 range in size from $600,000 to $16,000,000 and collectively total more than $117 million. Every one of these 26 settlements required class members to submit a claim form in order to receive any payment.

34. The Settlement here outperforms every settlement on Exhibit 2. Its gross value of approximately $594.32 per Class Member is roughly fifteen times the highest per-class-member value on the chart and more than sixty-five times the average. The *minimum net* Cash Award any Class Member will receive under this Settlement ($228.78) is nearly six times the highest *gross* per-class-member value achieved in any other finally approved VPPA settlement of which I am aware. And, unlike every settlement on Exhibit 2, this Settlement requires no claim form: every Class Member who does not request exclusion will be paid automatically. To my knowledge, no VPPA class settlement has ever provided a greater per-class-member recovery, and none has provided automatic payments of this magnitude to every class member.

35. Many other VPPA class settlements have been structured on a claims-made, reversionary basis, under which class members who submitted claim forms received a small, fixed payment and the unclaimed balance of the settlement "fund" reverted to the defendant. Some examples of such settlements include *Wade v. The Daily Wire, LLC*, No. CACE-24-003886 (Fla. 17th Jud. Cir., Broward Cnty.) ($2 million "fund" used to pay attorneys' fees and expenses and "up to $15.00" to each class member who submitted a claim, with the remainder reverting to the defendant); *Aldana v. GameStop, Inc.*, No. 500772/2025 (N.Y. Sup. Ct., Kings Cnty.) ($4.5 million

"fund" used to pay attorneys' fees and expenses and $5.00 to each class member who submitted a claim, with the remainder reverting to the defendant); and *Bolanos v. V Shred, LLC*, No. CACE-25-001211 (Fla. 17th Jud. Cir., Broward Cnty.) ($4 million "fund" used to pay attorneys' fees and expenses and "up to $10.00" to each class member who submitted a claim, with the remainder reverting to the defendant). Still others have provided class members no cash at all. *See, e.g.*, *Hayek v. Alo, LLC*, No. 2024LA00000193 (Ill. 19th Jud. Cir., Lake Cnty.) (voucher for three months of the defendant's online service, "valued at $38.79," to each class member who submitted a claim form).

36. Two of the most prominent VPPA settlements likewise paid class members nothing. In *In re Netflix Privacy Litigation*, No. 5:11-cv-00379-EJD (N.D. Cal.), the court granted final approval of a $9 million VPPA class settlement in which the entire fund, after deduction of fees, costs, and service awards, was distributed to *cy pres* recipients, and class members received no payments. *See* 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013). In *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012), the Ninth Circuit affirmed approval of a $9.5 million settlement of VPPA and related claims arising from Facebook's "Beacon" program under which class members likewise received no payments and the net fund was directed to a *cy pres* foundation.

37. Based on my experience with consumer privacy class settlements, claims rates in claims-made settlements of VPPA and similar claims are typically in the low single digits as a percentage of the class, which is consistent with the Federal Trade Commission's 2019 study of 149 consumer class settlements, which found a median claims rate of 9% and a weighted mean of 4%. In a claims-made settlement, therefore, the overwhelming majority of class members ordinarily receive nothing. By dispensing with claim forms, this Settlement ensures that every Class Member who does not opt out will actually be paid.

**THE RISKS OF CONTINUED LITIGATION**

38. Although Plaintiffs and my firm believe the Class's claims are meritorious—and although this Court has twice held that Plaintiffs' theory states a claim under the VPPA's plain text—continued litigation would have presented substantial risks of non-recovery.

39. The law governing the VPPA's application to online tracking technologies is unsettled and actively shifting. The courts of appeals are divided on who qualifies as a "consumer" under the statute, and the Supreme Court has granted certiorari to resolve that question in *Salazar v. Paramount Global*, No. 25-459, which is set for argument on October 14, 2026, with a decision expected during the period in which this case would otherwise have proceeded to summary judgment and trial. And the Eleventh Circuit has not yet decided what qualifies as "specific video materials."

40. At least two district courts have accepted the argument, which Defendant pressed in its motion for judgment on the pleadings, that the disclosure of a purchase of a video course, as

opposed to a specific video title, falls outside the statute. This Court disagreed but described Defendant's cited authority as "persuasive." ECF No. 79 at 9. And Defendant preserved fifteen affirmative defenses in its Answer. ECF No. 46 at 37–39. Had the case proceeded, Defendant would have pressed each of these issues at summary judgment, at trial, and on appeal, and an adverse ruling on any one of them would have eliminated the Class's recovery entirely.

41. The success of every Class Member's claim also depended on a fact-specific question about the content of the "order confirmation pages" accessible at the ZB1 OD Version Order URLs that Defendant transmitted to the Third-Party Advertisers. As the record developed in discovery showed—including the testimony of Defendant's corporate representative and the representative pages stipulated to by the Parties—each such page displayed the purchaser's first and last name, the title of the course purchased ("Zumba Basic 1"), and a label identifying the purchased course as the "online" version of the course, as opposed to the "virtual" livestream version or the "live" in-person version. To prevail, Plaintiffs had to establish that this information "identifie[d] a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3), from a company in the business of selling "prerecorded . . . audio visual materials," *id.* § 2710(a)(4). In my assessment, this was a particularly challenging issue that presented significant risk to the Class. During the Relevant Time Period, Defendant sold the Zumba Basic 1 course in three formats: an in-person ("live") version, a livestream ("virtual") version broadcast over Zoom, and the on-demand ("online") version at issue in this case, which consists of sixteen modules of prerecorded video. *See* ECF No. 57 at 2–3. Purchasers of the livestream version—which plainly does not consist of prerecorded videos—were directed to "order confirmation pages" that described the version they had purchased with the word "virtual," a term that arguably suggests the presence of prerecorded video just as much as the word "online" does. Defendant seized on this point in its motion for judgment on the pleadings, arguing that the word "online," as it appeared on the "order confirmation pages" accessible at Class Members' ZB1 OD Version Order URLs, "describes delivery, not content, as an 'ONLINE' course can be any number of things, including live instruction, an audio program, a series of interactive quizzes, or downloadable written materials, none of which is a video." ECF No. 75 at 3. Defendant would have renewed that argument at summary judgment and at trial, supported by its own expert, and again on appeal. Had the Court or the jury concluded that the "order confirmation pages" located at the ZB1 OD Version Order URLs did not reveal that the named purchasers had obtained a "video material[] or service[]" from a "video tape service provider," no Class Member would have been entitled to any recovery. I weighed that risk heavily in evaluating the Settlement.

42. Defendant also asserted as an affirmative defense that it did not "knowingly" disclose personally identifiable information to any third party, as 18 U.S.C. § 2710(b)(1) requires. ECF No. 46 at 38. Based on the discovery taken, Plaintiffs and my firm were confident that the

evidence in the record showed that Defendant had knowingly programmed its website's tracking technologies to transmit the ZB1 OD Version Order URLs—along with most, if not all, of the other URLs of the pages its customers navigated through on the website—to the Third-Party Advertisers. At the time the Settlement was reached, however, the record remained unclear as to whether Defendant knew that its customers' "order confirmation pages," located at the ZB1 OD Version Order URLs to which customers were directed upon placing their orders, were publicly accessible to anyone who possessed those URLs—including the Third-Party Advertisers—rather than accessible only to the customer. Plaintiffs had conducted, and had served additional discovery directed to, Defendant's knowledge on that point when the Settlement was reached. Because the "knowing" disclosure element has proven fatal to VPPA plaintiffs on a developed record, *see In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2015 WL 1503778 (N.D. Cal. Mar. 31, 2015), and because a court has previously found the record insufficiently developed to resolve the element even at summary judgment, *see In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014), in my assessment this issue presented a real risk of total non-recovery to the Class had the litigation proceeded.

43. Continued litigation also entailed significant procedural risk. When the Parties settled, the fourteen-day period for Defendant to petition the Eleventh Circuit for permission to appeal the Court's class-certification order under Rule 23(f) had not expired. Based on Defendant's conduct throughout this litigation—including its opposition to certification on typicality, adequacy, predominance, and superiority grounds—I fully expected that, absent the Settlement, Defendant would have petitioned for interlocutory review of the certification order and, if that petition failed, would have moved to decertify the Class before trial, including on the basis of any additional evidence it could develop concerning, *inter alia*, individual Class Members' public statements about their status as Zumba instructors.

44. Absent the Settlement, the Parties would have completed merits and expert discovery, briefed cross-motions for summary judgment, and likely presented the case to a jury, which Defendant has demanded. ECF No. 46 at 37. Even had the Class prevailed at trial, Defendant would have appealed, and that appeal would have presented multiple questions of first impression in the Eleventh Circuit—including the standard governing "personally identifiable information," whether the disclosure of a purchase of a video course is the disclosure of "specific video materials," and the scope of the statute's knowledge requirement. In my experience, that process would have taken years, during which the Class would have received nothing, and there was a genuine possibility that the Class would have recovered nothing at its conclusion.

## CLASS COUNSEL'S ASSESSMENT OF THE SETTLEMENT & CLASS REPRESENTATIVES' SUPPORT

45. Based on my experience in VPPA and other privacy class actions, my knowledge of the record in this Action, and my evaluation of the risks described above, I firmly believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. It provides every Class Member with a certain, substantial, and automatic cash recovery within months, in an amount that exceeds—on a per-class-member basis—the recovery obtained in any prior VPPA class settlement of which I am aware, and it does so without the risk, expense, and years of delay that continued litigation would have entailed. My colleague Tyler K. Somes, who has served as Class Counsel throughout this Action, shares this assessment.

46. Plaintiffs Catherine Kueppers and Watanya Brown have taken their responsibilities as class representatives seriously throughout this litigation. Each assisted with my firm's investigation, gathered and produced documents concerning her purchase from Defendant, reviewed and authorized the filing of pleadings and other papers, responded to Defendant's written discovery, traveled to and sat for a lengthy deposition, and remained in regular contact with my colleagues and me. *See* ECF No. 58 ¶ 10; ECF No. 85 at 12. Both Plaintiffs conferred with my firm concerning the proposed Settlement memorialized in the Settlement Agreement, carefully reviewed the Settlement Agreement, and executed it. Each has authorized me to represent to the Court that she believes the Settlement to be fair, reasonable, and adequate and fully supports its approval.

47. The Settlement provides no service or incentive awards to Plaintiffs, and Plaintiffs do not seek any. Plaintiffs will receive Cash Awards calculated in exactly the same manner as every other Class Member's Cash Award: Plaintiff Kueppers, whose order confirmation URL was found in the records of one Third-Party Advertiser (Meta) during the Relevant Time Period and who thus belongs to one Subclass, will receive the same Cash Award as every other Class Member who belongs to one Subclass; and Plaintiff Brown, whose order confirmation URL was found in the records of two Third-Party Advertisers (Pinterest and MNTN) and who thus belongs to two Subclasses, will receive the same Cash Award as every other Class Member who belongs to two Subclasses. *See* ECF No. 66-1 ¶ 6; ECF No. 85 at 19.

## ATTORNEYS' FEES AND EXPENSES

48. As disclosed in the Settlement Agreement and as will be disclosed in the Class Notices, Class Counsel intend to apply for an Attorneys' Fee and Expense Award consisting of attorneys' fees equal to one-third of the Settlement Fund ($900,000) and reimbursement of the $97,350.81 in out-of-pocket litigation expenses that my firm advanced in prosecuting this Action, for a total request of $997,350.81. SA § IV ¶ 71. A chart itemizing the expenses my firm incurred prosecuting this matter is attached hereto as **Exhibit 4**. These expenses consist principally of the

fees of Plaintiffs' expert, Economics & Technology, Inc.; deposition costs; and the costs of serving fifteen third-party subpoenas. My firm advanced those expenses and prosecuted this Action on a wholly contingent basis for nearly two years, with no guarantee of recovery.

49. Through the date of this declaration, the attorneys and staff of Hedin LLP have devoted more than two thousand hours to the investigation and prosecution of this Action—including the pre-suit investigation; the preparation of three complaints; the briefing and argument of Defendant's motion to dismiss and motion for judgment on the pleadings; the written discovery, fifteen third-party subpoenas, and depositions described above; the work with Mr. Weir to analyze the third parties' records and identify every Class Member; the class-certification motion, errata, and reply; the settlement demand, term sheet, and Settlement Agreement; and the selection of the Settlement Administrator and preparation of the Class Notice Program—and my firm will devote substantial additional time to the notice and administration process, the motion for final approval, the Final Approval Hearing, the distribution of the Net Settlement Fund, and the fielding of Class Member inquiries going forward. In my experience, the amount of work required to achieve this result was extraordinary for a case of this size, and the result achieved—the most favorable per-class-member recovery in any VPPA class settlement of which I am aware, paid automatically to every Class Member—is excellent. My firm will provide the Court with detailed summaries of the time expended by our attorneys in connection with the motion for an Attorneys' Fee and Expense Award.

50. Class Counsel's motion for an Attorneys' Fee and Expense Award will be filed no later than twenty-one days before the Opt-Out and Objection Date and will be posted on the Settlement Website within one day of filing, so that Class Members may review it before deciding whether to object or opt out. SA § IV ¶ 71. Defendant has made no commitment concerning fees and has expressly reserved the right to oppose any request Class Counsel may make. *Id.*

**ADDITIONAL DISCLOSURES**

51. Other than the Settlement Agreement itself and the August 28, 2026 term sheet that it supersedes, there are no agreements between the Parties or their counsel made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(3); SA § IX ¶ 106.

52. I am aware of no other pending litigation concerning the claims asserted in this Action that would be affected by the proposed Settlement.

53. Every Class Member is identified by first and last name on the Class List, and Defendant has represented that its records contain at least one e-mail address and one postal address for each Class Member. SA § V ¶ 79. Under the Class Notice Program, Simpluris will send the short-form Class Notice to every Class Member both by e-mail and by first-class postcard, will update postal addresses through the National Change of Address database and re-mail any undeliverable postcards to addresses located through skip-tracing, and will maintain the Settlement

Website and toll-free hotline. SA § V ¶¶ 75, 77, 80, 82. Each Class Member's short-form notice will be individualized to state the number of Subclasses to which he or she belongs and the minimum Cash Award he or she will receive, and the e-mail notice will identify the postal address to which the Class Member's check will be sent unless the Class Member updates that address or elects electronic payment on the Settlement Website. SA § V ¶ 81. The Class Notices were prepared by my firm together with Simpluris.

54. Defendant (directly or with Simpluris acting as its agent) has agreed to serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, on the appropriate federal and state officials within ten days after the filing of the Motion. SA § VII ¶ 89.

55. Prior to departing Hedin LLP to complete a clerkship with a judge of the United States Court of Appeals for the Seventh Circuit, Elliot Jackson, Esq. represented Plaintiffs in this Action and successfully argued Plaintiffs' opposition to Defendant's motion to dismiss, which resulted in a published decision. *Kueppers v. Zumba Fitness, LLC*, 805 F. Supp. 3d 1226 (S.D. Fla. 2025) (ECF No. 23). I would like to acknowledge Mr. Jackson's excellent work on this case and thank him for his efforts on behalf of the Class.

**EXHIBITS**

56. Attached hereto as **Exhibit 1** is a true and correct copy of the Class-Action Settlement Agreement, including Exhibits A (short-form email Class Notice), B (short-form postcard Class Notice), C (long-form Class Notice), D (proposed Final Approval Order and Judgment), and E (proposed Preliminary Approval Order).

57. Attached hereto as **Exhibit 2** is a true and correct copy of the chart of previously approved all-cash, non-reversionary VPPA class settlements described in paragraphs 32 through 34 above.

58. Attached hereto as **Exhibit 3** is a true and correct copy of Hedin LLP's firm résumé.

59. Attached hereto as **Exhibit 4** is a true and correct copy of a chart itemizing the $97,350.81 in out-of-pocket litigation expenses that my firm has advanced in this Action, as described in paragraph 48 above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 14, 2026, in Miami, Florida

*/s/ Frank S. Hedin*
Frank S. Hedin